A. Barry Cappello (SBN 037835)
abc@cappellonoel.com
Leila J. Noël (SBN 114307)
lnoel@cappellonoel.com
Matthew H. Fisher (SBN 229532)
mfisher@cappellonoel.com
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, California 93101
Telephone:   (805) 564-2444
Facsimile:   (805) 965-5950

Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California Corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK AG, a German Company; BARCLAYS BANK PLC, a British Corporation; CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, DBA CALYON, a French Public Limited Company; CAISSE REGIONALE DE CREDIT AGRICOLE DE FRANCHE COMPTE, a French Cooperative Company; COMMERZBANK AKTIENGESELLSCHAFT, a British Corporation; DEUTSCHE BANK LUXEMBOURG SA, a Luxembourger Company; SOCIETE GENERALE, a French Public Limited Company; and DOES 1 through 100, inclusive,,<br><br>        Defendants. | Case No.:  CV11-04932 GW (RZx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY MGA'S FIRST AMENDED COMPLAINT FOR *FORUM NON CONVENIENS*, OR ALTERNATIVELY TO DISMISS FOR IMPROPER VENUE UNDER RULE 12(B)(3), OR ALTERNATIVELY TO STAY THIS ACTION UNDER THE *COLORADO RIVER* DOCTRINE**<br><br>Date:        October 3, 2011<br>Time:        8:30 am<br>Dept:        Courtroom 10 – Spring St.<br><br>The Honorable George H. Wu |

1

# TABLE OF CONTENTS

2

3    I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

4    II.     STATEMENT OF FACTS ........................................................................... 3

5
          A.    Smoby's CEO Contacts MGA And Solicits An Offer To Purchase
6                Securities In California. ................................................................... 3

7          B.    MGA Issues An Offer To Purchase Securities In California .................... 4

8          C.    The Parties Conduct In-Person Negotiations In California and New
9                York. .................................................................................................. 5

10         D.    Post-Acquisition, MGA Funds Smoby And Continues To
11               Negotiate With The Banks From MGA's California Office. ................... 6

12         E.    MGA Is A Target Of Bias And Improper Conduct In The Local
13               French Court. ...................................................................................... 7

14   III.    ARGUMENT ............................................................................................. 9

15         A.    Under *Hall v. Superior Court*, This Case Must Be Heard In
16               California Under California law. ......................................................... 9

17         B.    The Forum Selection Clause And Choice Of Law Clause Relied
18               Upon By Defendants Are Ineffective ................................................ 10

19               1.    The Choice Of Law Clause Is Invalid. ........................................ 11

20               2.    The Forum Selection Clause Is Invalid. ...................................... 11

21                     a.    The Court Must Follow The *Hall* Directive Because
22                           Forum Selection Issues Are "Inextricably Bound"
                           With The Choice Of Law Analysis. .................................... 11
23
                       b.    It Would Violate The Fundamental Policy Of
24                           California To Enforce The Forum Selection Clause. ........... 12

25                     c.    This Case Exceeds The Narrow Scope Of The Forum
26                           Selection Clause, Which Was Not Signed By
27                           Plaintiff. ......................................................................... 12

28

**TABLE OF CONTENTS (cont.)**

d.   Defendants Are Estopped From Enforcing The Forum
Selection Clause. ................................................................ 13

C.   The Federal Venue Statutes Also Compel Denial of Defendants'
Motion. ....................................................................................... 14

1.   Federal Law Imposes A Heavy Presumption That Plaintiff's
Forum Is Appropriate.......................................................... 14

2.   France Does Not Provide An Adequate Forum For
Plaintiff's Claims. ............................................................... 15

3.   The Private Factors Weigh In Favor Of Adjudicating
Plaintiff's Claims In The United States. .............................. 16

a.   The Majority Of Relevant Witness And Documentary
Evidence Is In The United States. ....................................... 16

b.   The Majority Of Key Documents Are In English. ............... 19

c.   Plaintiff Is Able To Join All Necessary Parties To
This Action. ......................................................................... 19

4.   The Public Factors Also Weigh In Favor of Hearing This
Case In The United States.................................................... 20

a.   The Fact That American Law Applies To Plaintiff's
Claims Supports Denial Of Defendants' Motion. ............... 20

b.   California Has A Greater Local Interest In Hearing
This Dispute......................................................................... 21

c.   It Would Not Overburden California To Hear Claims
Of Securities Fraud Perpetrated On Its Own Citizens
Within Its Own Boundaries. ................................................ 21

D.   Defendants' French Lawsuit Against MGA To Recover Smoby
Debt Does Not Justify A Stay Of This Action......................... 22

1

## TABLE OF CONTENTS (cont.)

2

3

4

1.  It Would Prejudice Plaintiff To Stay This Action, Because
    The French Case Concerns Separate Issues And Does Not
    Provide Plaintiff With Adequate Procedures Or Relief. .............. 23

5

6

2.  It Would Not Promote Judicial Efficiency To Hear This
    Case In France. ............................................................ 24

7

8

IV.   CONCLUSION ................................................................. 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3  **Cases**

4  *America Online, Inc. v. Superior Court,*
      90 Cal.App.4th 1, 108 Cal.Rptr.2d 699, 14 (2001) ....................................... 9
5

6  *American Cyanamid Co. v. Picaso-Anstalt,*
      741 F.Supp. 1150 (DNJ 1990) .................................................... 22, 25

7  *Arreguin v. Global Equity Lending, Inc.,*
      2008 U.S. Dist. LEXIS 66732, 10-12 (N.D. Cal. Aug. 29, 2008) ........................... 12
8

9  *Arris Sys. v. Nexploration Co.,*
      2006 U.S. Dist. LEXIS 80207 (E.D. Pa. Nov. 1, 2006) ............................ 23, 24

10 *Ashmore v. Northeast Petroleum Div. of Cargill, Inc.,*
      925 F.Supp. 36, 38 (D. Me. 1996) ............................................... 17
11

12 *Bancomer, S.A. v. Superior Court,*
      44 Cal.App.4th 1450, 1461, 52 Cal.Rptr.2d 435 (1996) .................... 12, 13, 20

13 *Baris v. Sulpicio Lines,*
      932 F.2d 1540, 1549 (5th Cir. 1991) ............................................... 14
14

15 *Baskin v. Bath Twp. Bd. of Zoning Appeals,*
      15 F.3d 569, 572 (6th Cir. 1994) ................................................ 23

16 *Beckley v. Auto Profit Masters, L.L.C.,*
      266 F. Supp. 2d 1001, 1004-1005 (S.D. Iowa 2003) .......................... 12, 13
17

18 *Bhatnagar v. Surrendra Overseas,*
      52 F.3d 1220 (3d Cir. 1995) ...................................................... 16

19 *Brandon Apparel Group v. Quitman Mfg. Co. Inc.)*
      42 F.Supp.2d 821, 834 (N.D. IL 1999.) ............................................ 17
20

21 *Colorado River v. United States,*
      424 U.S. 800, 818 (1976) ....................................................... 22

22 *Derensis v. Coopers & Lybrand Chtd. Accountants,*
      930 F.Supp. 1003, 1011 (DNJ 1996) ............................................. 15
23

24 *Dole Food Co. v. Watts,*
      303 F.3d 1104, 1117 (9th Cir. 2002) ............................................... 14

25 *Eastman Kodak Co. v. Kavlin,*
      978 F.Supp 1078 (S.D. Fla. 1997) ............................................... 16
26

27 *Ford v. Brown*
      (11th Cir. 2003) 319 F.3d 1302 ................................................. 20

28 *Friends for All Children Inc. v. Lockheed Aircraft Corp.,*
      717 F.2d 602, 606-609 (1983) ................................................... 20

iv

**TABLE OF AUTHORITIES (cont.)**

*General Engineering Corp. v. Martin Marietta Alumina, Inc.*
  783 F.2d 352, 356-357 (3rd Cir. 1986) ........................................................ 11

*Gentry v. Wayne County,*
  2010 U.S. Dist. LEXIS 123365 ( E.D. Mich. Nov. 22, 2010) .......................... 23

*Goldhammer v. Dunkin' Donuts, Inc.*
  59 F.Supp.2d 248, 253 (D Mass 1999) ........................................................ 22

*Gould, Inc. v. Pechiney Ugine Kuhlmann,*
  853 F.2d 445, 454 (6th Cir. 1988) .............................................................. 14

*Gschwind v. Cessna Aircraft Co.,*
  161 F.3d 602, 605-606 (10th Cir. 1998) ...................................................... 20

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947) ........................ 14, 20

*Hall v. Superior Court,*
  150 Cal.App.3d 411, 417, 197 Cal.Rptr. 757, (1983) ........................ 9, 11, 12

*Heitmanis v. Austin,*
  899 F.2d 521, 528 (6th Cir. Mich. 1990) ...................................................... 24

*Herbstein v. Bruetman,*
  743 F. Supp. 184, 190 (S.D.N.Y. 1990) ........................................................ 25

*In re Corel Corp., Secs. Litig.,*
  147 F. Supp. 2d 363 (E.D. Pa. 2001) ................................................... 17, 18, 21

*Industrial Inv. Dev. Corp. v. Mitsui & Co.,*
  671 F.2d 876 ............................................................................................. 15

*Ingram Micro, Inc. v. Airoute Cargo Express, Inc.,*
  2001 US Dist LEXIS 2912, *14 (S.D.N.Y. Mar. 21, 2001) ............................ 19

*Interface Partners Int'l Ltd. v. Hananel,*
  575 F.3d 97, 105 (1st Cir. 2009) ................................................................ 18

*Itoba Ld. v. LEP Group PLC,*
  930 F.Supp. (D. Conn 1996) ...................................................................... 17

*Jose Armando Bermudez & Co. v. Bermudez Int'l, Inc.,*
  2000 U.S. Dist. LEXIS 12354 (S.D.N.Y. Aug 28, 2000) ................................ 15

*K&V Scientific Co. v. BMW,*
  314 F.3d 494, 499 (10th Cir. 2002) ............................................................ 14

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC,*
  2002 U.S. Dist. LEXIS 4636 (S.D.N.Y. Mar. 20, 2002.) ................................ 21

*Kuwait Fin. Ctr. v. Stone Pine Inv. Banking, LLC,*
  2007 U.S. Dist. LEXIS 69916, *12-13 (D. Colo. Sept. 19, 2007) .................. 15

v

*Lockman Foundation v. Evangelical Alliance Mission*,
930 F.2d 764, 767 (9th Cir. 1991).............................................14

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1, 15, 92 S.Ct. 1907, 1916; Nutracea (1972) .............................12

*Magellan Real Estate Inv. Trust v. Losch*,
109 F. Supp. 2d 1144, 1149 (D. Ariz. 2000) .............................21

*Manetti-Farrow, Inc. v. Gucci America, Inc.*
858 F.2d 509, 513 (9th Cir. 1988).............................................11

*MBF Trust v. Castaway Mfg.*,
2010 U.S. Dist. LEXIS 118703, 10-11 (N.D. Okla. Nov. 4, 2010).........................20

*Monegro v. Rosa*,
211 F.3d 509, 514 (9th Cir. 2000).............................................14

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 28 (1983) .............................................24

*National Union Fire Ins. Co. v. Kozeny*,
115 F.Supp. 2d 1243 (D. Colo. 2000).............................................22

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal.4th 459, 464-465, 11 Cal.Rptr.2d 330, 334 (1992) .............................11

*New Beckley Mining Corp. v. International Union, United Mine Workers*,
946 F.2d 1072, 1074 (4th Cir. 1991) .............................23

*NutraCea v. Langley Park Invs. PLC*,
2007 U.S. Dist. LEXIS 6438 (E.D. Cal. Jan. 16, 2007) .........................9, 10, 11, 15

*Picketts v. Internationl Playtex, Inc.*,
215 Conn. 490, 509 (1990.) .............................................19

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 256 (1981).............................................14, 21

*Rodriguez Licea v. Curacao Drydock Co., Inc.*,
537 F. Supp. 2d 1270 (S.D. Fla. 2008) .............................18

*Sablic v. Armada Shipping Aps*,
973 F.Supp. 745 (S.D. Tex. 1997) .............................16

*Spring City Corp. v. American Bldgs. Co.*,
193 F.3d 165, 171 (3d Cir. 1999).............................................22

*Textor v. Board of Regents of No. Ill. Univ.*,
711 F.2d 1387, 1392 (7th Cir. 1983).............................................20

*Van Dusen v. Barrack*,
376 U.S. 612, 639, 84 S.Ct. 805, 820-821 (1964) .............................10, 11

*Yavuz v. 61 MM, Ltd.*,
576 F.3d 1166, 1171 (10th Cir. Okla. 2009).............................................21

1

**TABLE OF AUTHORITIES (cont.)**

2

3 **Statutes**

4 28 USCS § 1781 ................................................................................................. 18

5

6 **Rules**

7 FRCP Rule 28(b)(3) ........................................................................................... 18

8 FRCP Rule 4(f)(1) .............................................................................................. 20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS                    CASE NO. CV11-04932 GW (RZX)
10012.003 - 189874.5

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

This case alleges concealment of massive frauds and financial crimes at Smoby SA ("Smoby") in connection with the sale of its securities to California-based MGA Entertainment, Inc. ("MGA").  The multi-year embezzlement scheme took place with the alleged complicity of the defendant Banks, who had long-standing relationships with and control over the Breuil family, Smoby's majority shareholder.

California is the proper venue for this action.  Key misrepresentations giving rise to this suit took place in a series of phone and e-mail communications to, and in-person meetings at, MGA's Van Nuys, California offices.  All of these induced MGA to extend an offer to purchase Smoby's securities.  Unlike other cases that involve only general claims of fraud or breach of contract, this case is subject to California's unique securities laws.  These laws were enacted to protect California citizens from fraud and deception in securities transactions, and provide enhanced redress for misrepresentations and omissions of material fact in connection with an offer to buy or sell a security in the State of California.  (See California Corporation Code section 25008(a)-(b).)  Under these provisions, liability extends both to the securities offeror, and to those who control or aid and abet it.

California securities laws require that such suits be heard in California under California law.  The rationale is that those who solicit securities offerees in this State should be held accountable under California's laws.  Accordingly, defendants' Motion to Dismiss or Stay MGA's First Amended Complaint ("Motion") should be denied.

The federal venue statutes yield the same result.  They provide a "heavy presumption" in favor of the plaintiff's chosen forum.  Contrary to defendants' sweeping claim that "all of the conduct at issue in this litigation occurred in France" (Motion, 2:21), the misrepresentations at issue were disseminated in the state of California as the principals conducted their primary negotiations here.  The offer to acquire Smoby was issued from California; the acceptance letter was delivered to California; and the option to purchase the shares was exercised from California.

In addition, nearly 20 key witnesses and thousands of documents in English concerning the financing, acquisition, operation, merger, and ultimate loss of the acquired asset all reside in California.  Other evidence residing in other foreign countries will be difficult, if not impossible, to obtain in the French proceeding.

Defendants' other arguments also fail.  First, the forum selection clause cited by defendants does not mandate trial of this case in France, for several reasons: Plaintiff was not and is not a party to the agreement containing the clause; the claims at issue fall outside the scope of the clause; and public policy bars its enforcement.

Second, contrary to defendants' suggestion, the French cases are no further along in their process than this case; in fact, they either are stayed or are in their substantive infancy.  Indeed, the cases in France still involve initial procedural matters, and MGA has not filed any brief on the merits at all in France.

Third, the cases in France concern vastly different issues, and sending this case to France would not avoid duplicative litigation.  Over $70 million was wired directly from this State to finance the securities deal.  Losses – including a draw-down on a multi-million dollar standby letter of credit – took place in the United States.  None of those claims are being addressed by the French court.  Even if they were, compelling this case to France would not spare any judicial time or expenditure: Defendants actually seek to conduct this litigation in a *separate* proceeding, and in a totally different province (Paris), from the pending French litigation.

Fourth, France does not provide a convenient and effective location for plaintiff's suit.  It imposes legal elements not required in plaintiff's securities law claims, and does not provide adequate procedural processes for plaintiff's claims.  French law provides for virtually no discovery, live witness testimony, or remedy for MGA's securities fraud allegations.  MGA even has encountered biased conduct from a local court in France.

Fifth, much of the documents and witnesses are in the United States.  While some documents and witnesses are outside the United States, they are distributed across several countries, not just France.  Unlike the United States, this evidence would likely

1    not be presented in a French Court.  Therefore, this Court provides a fairer, more

2    convenient, and more efficient forum for litigation than France.

3         Finally, although much of the documentary evidence is in the United States, some

4    of it is under the control of the Banks.  Because the Banks objected to initial limited

5    discovery, plaintiff is not able to fully oppose the Motion.  Plaintiff therefore requests

6    that it be allowed to take limited discovery and then further oppose the Motion.[1]

7    **II.    STATEMENT OF FACTS**

8         According to defendants, "the United States has **no** connection with the

9    operative facts of this litigation.  **None** of the proof is likely to be located in

10   California, and **none** of the events underlying this action took place in California."

11   (Motion, 18:24-26, emphasis added.)  Each of those statements is blatantly false.  As

12   set forth herein, the United States is where the solicitation and negotiations to

13   purchase the Smoby securities occurred; and defendants themselves claim that much

14   of the documentary proof is located in California.  (Declaration of Matthew Fisher

15   ("Fisher Decl."), ¶ 3, Ex. A, p. 7:24-8:7.)

16        **A.    Smoby's CEO Contacts MGA And Solicits An Offer To Purchase**
             **Securities In California.**
17

18        MGA is a California corporation known primarily for its production of the

19   popular "Bratz" doll brand.  It has been in the toy business since 1979, and its offices

20   are located in Van Nuys, California.  Isaac Larian is the founder and CEO.

21        On or around March 22, 2007, Mr. Larian received a call in MGA's offices from

22   Jean-Christophe Breuil, the CEO of Smoby, a French publicly traded company.  The

23   Breuil family held a majority interest in Smoby.  At the time, Smoby was France's

24   leading toymaker and number three in Europe.  Because Mr. Breuil is proficient in

25

26   _____

27   [1]  Plaintiff submitted an Ex Parte Application for August 23, 2011, which the Court denied on
     August 29, 2011.  For the reasons set for in the Ex Parte Application and supporting papers, of
28   which Plaintiff asks the Court to take judicial notice, Plaintiff requests that it be allowed to conduct
     limited discovery relevant to the Motion, and to file a supplemental Opposition brief incorporating
     that discovery.

English, but Mr. Larian does not speak French, the parties always communicated in English.  (Larian Decl., ¶¶7, 10 and 11.)

Mr. Breuil informed Mr. Larian that Smoby was having difficulty paying all of its debts and was being put into a pre-bankruptcy proceeding under French law known as *procedure de sauvegarde* ("Safeguard Proceeding").  The Safeguard Proceeding was being administered in the Commercial Court of Lons-Le-Saunier under the authority of the President of the Court, Pierre Millet, a local businessman; Receiver Philippe Jeannerot; and Receiver Maurice Picard.  All of these officials had personal relationships with top local officers of Societe Generale and with Mr. Breuil, whose family is prominent in the Jura region of France.  (Larian Decl., ¶8.)

Mr. Breuil represented to Mr. Larian that Smoby's fundamentals and financials were sound, but that it simply was having cash flow problems.  (Larian Decl., ¶9.) Mr. Breuil advised that Smoby had borrowed a large sum (250M EUR + a 26.7M EUR Bridge Note) to acquire rival toy company Berchet, and could not pay the debt service.  (Larian Decl., ¶7.)  Mr. Breuil suggested an acquisition of Smoby by MGA would enhance MGA's growth potential abroad.  (Larian Decl., ¶10.)

### B.  MGA Issues An Offer To Purchase Securities In California.

In the following days, Mr. Larian conducted almost daily negotiations with Mr. Breuil from California by phone and e-mail.  Mr. Larian was assisted in the negotiations by Eric Villete, MGA's Executive Vice-President of Finance and Operations, Ron Brawer, the President of MGA, and several other MGA officers.  They conducted the negotiations primarily in English and from MGA's home offices in California.  (Larian Decl., ¶11.)  In the course of the negotiations, Mr. Breuil touted Smoby's purported worldwide network of distributors as an important selling point that would extend MGA's global reach.  Smoby cash flow forecasts were forwarded to Mr. Brawer and Mr. Larian.  (Declaration of Ron Brawer ("Brawer Decl."), ¶5; Larian Decl., ¶¶14 and 21.)  At no point did Mr. Breuil reveal the truth: The forecasts were based on falsified numbers, and the so-called network of distributors was an elaborate shell organization.

1    Mr. Larian contacted Deutsche Bank, the head of Smoby's lending consortium,

2    about acquiring some portion of Smoby's debt.  Stephane Perchet of Deutsche Bank

3    referred Mr. Larian to Didric Cederholm of EOS Partners, its U.S. partner, to

4    negotiate on behalf of the banking group.  In late March, 2007, Mr. Larian met with

5    Mr. Cederholm in EOS' New York office to discuss a potential acquisition.  Mr.

6    Larian stated he needed to perform due diligence on Smoby prior to an acquisition;

7    Mr. Cederholm responded that the Banks were "optimistic" about working with MGA

8    and would engage him in the flow of information.  (Larian Decl., ¶¶12 and 13.)

9    Despite the Banks' intimate knowledge of, and control over, Smoby's books and

10   operations, they never informed Mr. Larian of any fraudulent conduct at Smoby.

11   On the basis of Mr. Breuil's and the Banks' representations, on April 4, 2007

12   Mr. Larian issued an offer from his Van Nuys, California office for the purchase of

13   Smoby's shares.  The letter offered to acquire the shares held by the Breuil family,

14   representing a majority interest in Smoby.  MGA would commit approximately 80M

15   EUR towards the working capital of Smoby.  Most notably, the offer was that MGA

16   would repay 35% -- not 100% -- of the 250M EUR debt (87M EUR), and 100% of the

17   26.7M EUR bridge, within four years.[2]  The offer was subject to, among other things,

18   a five-week due diligence period.  (Larian Decl., ¶17.)

19   On April 6, 2007, Mr. Breuil sent return correspondence, in English, to MGA's

20   California office accepting the offer.  (Larian Decl., ¶19.)

21   **C.    The Parties Conduct In-Person Negotiations In California and New York.**

22

23   The parties thereupon entered into a five-week exclusive due diligence period.

24   Mr. Larian and other MGA personnel also negotiated in the U.S. with Wachovia and

25   HSBC regarding financing of the Smoby debt, including a $29M EUR HSBC letter of

26   / / /

27

28   [2] Even the Banks admit that MGA's proposal "included an offer to purchase the debt at only 35 cents on the Euro."  (Motion, p. 5, fn. 7.)

1    credit to be secured by Smoby receivables.  The letter of credit was further secured by

2    a Wachovia standby letter of credit.  (Larian Decl., ¶¶22 and 23.)

3         On April 13, 2007, Mr. Larian met with Mr. Breuil in New York to begin to

4    finalize the details of the transaction.  One agreement was reflected in a hand written

5    document signed by the two principals in New York.  (Larian Decl., ¶24.)  Mr. Breuil

6    also sent MGA company financial reports maintained by Ernst & Young.  (Larian

7    Decl., ¶¶14 and 21; Declaration of Eric Villette ("Villette Decl."), ¶4.)  The reports

8    appeared to reflect what Mr. Breuil had represented in negotiations: Smoby had cash

9    flow problems but was fundamentally sound financially.  Ernst & Young forecast a

10   21.5M EUR EBITDA for 2007-2008 based on these records.  (Larian Decl., ¶15.)

11        On April 27, 2007, Mr. Breuil and other Smoby executives came to Los

12   Angeles to further negotiate details of the acquisition and to discuss merger strategies

13   of the distribution lines.  (Larian Decl., ¶26; Brawer Decl, ¶6; Villette Decl., ¶5.)

14        Based on the above, on May 7, 2007, from California, MGA exercised its call

15   option acquiring the Breuil family's shares in Smoby.  (Larian Decl., ¶28.)

16   **D.   Post-Acquisition, MGA Funds Smoby And Continues To Negotiate
          With The Banks From MGA's California Office.**

17

18        Post-acquisition, Eric Villette was nominated to Smoby's Board of Directors

19   and oversaw Smoby operations in France.  Ron Brawer assisted in the management of

20   Smoby.  (Larian Decl., ¶29.)  MGA began to fund operations by direct wire transfers

21   from MGA to Smoby, including 2M EUR on June 18, 2007; 5M EUR on June 30,

22   2007; 4M EUR on July 18, 2007; 1.5M EUR on August 1, 2007.  (Larian Decl., ¶31.)

23        As the true facts about Smoby began to emerge post-acquisition, however, its

24   projected EBITA plunged from an expected 21M EUR to a 20-30M EUR loss.

25   (Larian Decl., ¶30.)  Despite this, MGA continued to negotiate with the Banks in an

26   effort to save Smoby.  Some of these negotiations took place in France with MGA's

27   French representatives.  Other negotiations, however, took place in the United States

28   / / /

1   between Mr. Larian and the Bank's U.S. representatives, EOS Partners (based in New

2   York) and Redwood Capital (based in New Jersey).  (Larian Decl., ¶¶31 and 32.)

3       The Banks ultimately rejected all of MGA's offers.  (Larian Decl., ¶33.)  As a

4   result, on October 9, 2007, the Commercial Court of Lons-le Saunier converted the

5   Safeguard Proceeding into a bankruptcy proceeding ("redressment judicaire").

6   (Larian Decl., ¶35, 38.)  Smoby eventually was liquidated, resulting in a total loss of

7   MGA's more than 53M EUR investment.  (Larian Decl., ¶41.)

8       **E.     MGA Is A Target Of Bias And Improper Conduct In The Local French Court.**

9

10      Even though MGA repeatedly informed the Banks, from the beginning, that it

11  would repay only a portion of the Smoby debt (including only 35% on the Syndicated

12  Loan), the Banks claim that MGA promised it would pay back 100% of all of

13  Smoby's loans.[3]  The Banks instituted suit against MGA on July 4, 2008 in the

14  Commercial Court of Lons-le-Saunier, seeking the full amount of the loans.  Notably,

15  the Banks did not file in Paris, the venue they now claim is appropriate; rather, they

16  filed in the local court in which Mr. Millet was the judge.  (Larian Decl., ¶42.)

17      MGA was denied a fair hearing in that court.  The local officials made no secret

18  that they considered MGA an American outsider, against who bias and improper

19  conduct was deemed acceptable.

20      For example, in 2007 the President of the local Commercial Court, Mr. Millet,

21  attempted to obtain certain Smoby assets at an extremely reduced price in exchange

22  for a favorable ruling from his Court.  Mr. Larian was appalled and refused.  (Larian

23  Decl., ¶34.)  Around the same time, Mr. Breuil bragged that Mr. Larian would not be

24  able to obtain redress in the Commercial Court due to Mr. Breuil's "inside track" with

25  Mr. Picard, the Receiver.  (Larian Decl., ¶37.)

26  / / /

27

28  _____

[3] Indeed, when Smoby's true financial condition came to light after the acquisition, MGA reduced its offer to 25% of the Syndicated Loan given the Banks' complicity in the securities frauds.

7

1       Later that year, MGA learned that the Receiver, Mr. Jeanerrot, had secretly

2  instructed HSBC not to collect Smoby receivables on its 29M EUR letter of credit.

3  As a result, MGA became exposed on its standby letter of credit with Wachovia.  On

4  October 21, 2007, HSBC drew down on its letter of credit, causing a total loss of this

5  amount to MGA.  (Larian Decl., ¶¶39 and 40; Brawer Decl., ¶12.)

6       Finally, following the October 2, 2007 petition to convert to a bankruptcy

7  proceeding, Mr. Millet and Mr. Jeanerrot informed MGA that they would not liquidate

8  Smoby if MGA contributed additional funds into Smoby.  In reliance on these

9  statements, MGA made the requested 11.7M EUR contribution.  Despite the

10  additional cash injection, and despite the fact that Smoby could have continued

11  operations for a year as a result of MGA's cash infusions, *within two days* of the

12  payment the court put Smoby into bankruptcy.  (Larian Decl., ¶36; Brawer Decl., ¶¶10

13  and 11.)

14       In July, 2009, the Court of Appeals in Bensacon recognized that Mr. Millet was

15  biased against MGA.  It removed the case to the Court of Appeal in Strasbourg, on the

16  reasonable suspicion that MGA would not receive a fair trial in Lons-le-Saunier.

17  (Declaration of Olivier Laude ("Laude Decl."), ¶21.)  But the damage had been

18  done.  A writ of attachment issued by the biased court in Lons-Le-Saunier, freezing

19  payment of Smoby's debt to MGA, remains in effect to this day.  (Laude Decl., ¶15.)

20       In 2009, the facts surrounding the frauds that occurred at Smoby prior to

21  MGA's involvement finally began to come to light.  Criminal proceedings were

22  instituted against Mr. Breuil and several of his business associates.  (See FAC, ¶¶56-

23  60; Larian Decl., ¶44.)  Despite this, and despite the fact that Smoby incurred the

24  alleged debts prior to any involvement of MGA, the Banks studiously have avoided

25  suing Mr. Breuil or his associates for any of the alleged outstanding debt.

26  / / /

27  / / /

28  / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   ARGUMENT

### A.   Under *Hall v. Superior Court*, This Case Must Be Heard In California Under California law.

The instant case asserts, among other causes of action, "control" and "aiding and abetting" liability against defendants under California's state securities laws. (See, FAC pp. 11-14.)  The purpose of these laws "is to protect the public from fraud and deception in securities transactions."  (See *Hall v. Superior Court*, 150 Cal.App.3d 411, 417, 197 Cal.Rptr. 757, (1983).)  A forum selection clause mandating litigation in a foreign jurisdiction is against public policy and therefore ineffective as to a securities action affecting California residents.  (*Id.* at 418.)  The same is true of a choice of law provision purporting to apply foreign law to such a transaction.  (*Ibid.*)  Such a case must be heard in California under California law.

For example, in *Hall*, the Court held that an otherwise valid Nevada mandatory forum selection clause and choice of law provision in a security interest was ineffective as against a California limited partnership, even though the deal was finally negotiated and entered into in Nevada.  The securities laws broadly apply in any case which involves an offer in California.  (*Hall, supra*, 150 Cal.App.3d. at 418 and fn 3.) Corporation Code section 25701 "renders void any provision purporting to waive or evade the Corporate Securities Law ... and *compels* denial of [its] enforcement."  (*Id.* at 418, emphasis added.)  The reason is simple: The choice of law and forum selection questions are "inextricably bound."  Only a California court can be relied upon to interpret and enforce California statutory law and public policy.  (*Id.* at 418.)  Following its analysis, the court in *Hall* denied enforcement of the forum selection clause as unreasonable.  (*Id.* at 418; see also *America Online, Inc. v. Superior Court,* 90 Cal.App.4th 1, 108 Cal.Rptr.2d 699, 14 (2001).)

Federal courts follow *Hall*.  For example, *NutraCea v. Langley Park Invs. PLC*, 2007 U.S. Dist. LEXIS 6438 (E.D. Cal. Jan. 16, 2007) concerned a defendant's similar attempt to move a corporation's California securities action to New York on

1   the basis of a New York forum selection and choice of law provision.  The *NutraCea*

2   court declined to enforce the clause, finding that California had "remove[d] any

3   discretion" in enforcing such clauses.  (*Id.* at *6.)

4          Further, the court found that New York did not provide an adequate remedy to

5   California consumers, because it provided only for a common law fraud action.  (*Id.* at

6   *6.)  California, on the other hand, provides an enhanced cause of action removing the

7   requirements of reliance and causation, something that is not available under either the

8   common law or federal securities law.  (*Id.* at *5 and fn. 2.)  Again noting that choice

9   of law and forum selection questions were "inextricably bound," the *NutraCea* court

10  ruled that New York did not provide an adequate forum for these claims.  (*Id.* at fn 4.)

11  Like New York, France also provides only a common law fraud action, which requires

12  a showing of reliance and causation to recover damages.  (Laude Decl., ¶10.)

13         California's securities laws should be applied.  Defendants came into this forum

14  to aid and abet in the solicitation of plaintiff to purchase securities.  Statements were

15  made in negotiations and meetings in California, which induced an offer to purchase

16  securities from this State.  Based on applicable law, the case must be heard in California

17  under California's laws in order to protect plaintiff's statutory rights.

18         **B.     The Forum Selection Clause And Choice Of Law Clause Relied Upon
                    By Defendants Are Ineffective.**

19

20         Despite the above, defendants contend that case must be heard in France under

21  French law because it is subject to a purportedly valid forum selection and choice of

22  law clause compelling hearing the case in France.  They point to Paragraph 31 in a

23  2005 Loan entered into between Smoby and The Banks which provides as follows:

24  "The Contract will be governed and interpreted in accordance with French law.  The

25  parties accept that all differences between them as to interpretation or execution will

26  be brought before the Tribunal de Commerce in Paris."  (Motion, Ex. 1.)  As

27  discussed below, neither of these clauses is effective to compel this case to France.

28  / / /

OPPOSITION TO MOTION TO DISMISS                                      CASE NO. CV11-04932 GW (RZX)
10012.003 - 189874.5

### 1.   The Choice Of Law Clause Is Invalid.

The choice of law clause is invalid, for two reasons.  First, federal courts sitting in diversity jurisdiction are required to follow state choice of law rules.  (*Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820-821 (1964).)  Under *Hall*, it has been the law in California for almost 30 years that the Court *must* invalidate the choice of law clause and compel application of California law to a securities transaction.

Second, California law also applies to plaintiff's other claims for fraud, negligence, and breach of contract.  This is because all of those claims arise from the same core securities laws claims.  Under these facts, there is a "fundamental public policy" that California law also be applied to these claims.  (See FAC, ¶¶ 75(a), 79(b), 86(a), 95(b)-(d), 103(a)-(b); *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 464-465, 11 Cal.Rptr.2d 330, 334 (1992).)

### 2.   The Forum Selection Clause Is Invalid.

The forum selection clause also is invalid to compel this case to France.

#### a.   The Court Must Follow The *Hall* Directive Because Forum Selection Issues Are "Inextricably Bound" With The Choice Of Law Analysis.

First, as detailed above, *Hall* mandates invalidation of foreign forum selection clauses as well as foreign choice of law clauses.  There is a split in authority among federal courts as to whether federal or state standards control enforcement of a forum selection clause in a diversity action.  (Compare *Manetti-Farrow, Inc. v. Gucci America, Inc.* 858 F.2d 509, 513 (9th Cir. 1988) with *General Engineering Corp. v. Martin Marietta Alumina, Inc.* 783 F.2d 352, 356-357 (3rd Cir. 1986).)  In this case, the state standard should control because California substantive law must be applied to the transaction.  Because application of California substantive law and the location of the case are "inextricably bound," California rules should control enforcement of the clause.  (See *NutraCea*, *supra*, 2007 U.S. Dist. LEXIS 6438, at *7, fn. 4.)

/ / /

/ / /

---

11

1

2

**b.      It Would Violate The Fundamental Policy Of California To Enforce The Forum Selection Clause.**

3      Second, even if *Hall* is not binding on this Court, the Court still should exercise its

4  discretion under the federal venue statutes to deny enforcement of the clause.  Federal

5  courts have discretion not to enforce forum selection clauses where it will violate the

6  fundamental public policy of the chosen forum by statute or judicial holding.  (*M/S*

7  *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916; Nutracea (1972))

8  Under the *Hall* case, California clearly established by judicial decision a fundamental

9  public policy of hearing securities actions in this State.

10

11

**c.      This Case Exceeds The Narrow Scope Of The Forum Selection Clause, Which Was Not Signed By Plaintiff.**

12      Third, the narrow forum selection clause at issue simply does not apply to the

13  issues in this case.  The subject clause states that all disputes in connection with the

14  "interpretation and execution" of the contract shall be brought in the "Tribunal de

15  Commerce in Paris."  This narrow phrase has been interpreted to cover only disputes

16  about the explicit written terms of the contract.  It does not encompass statutory claims,

17  fraud claims, fraud in the inducement claims, disputes over other aspects of the parties'

18  relationship, or claims arising prior to the signing of the contract.  (See *Bancomer, S.A.*

19  *v. Superior Court,* 44 Cal.App.4th 1450, 1461, 52 Cal.Rptr.2d 435 (1996)  [A clause

20  requiring litigation in Mexico of any dispute arising "regarding the interpretation or

21  fulfillment of this contract" did not apply to claims of fraudulent inducement to enter

22  into the contract]; *Arreguin v. Global Equity Lending, Inc.,* 2008 U.S. Dist. LEXIS

23  66732, 10-12 (N.D. Cal. Aug. 29, 2008) [choice of law and venue clause governing

24  enforcement of employment contract did not encompass Labor Code violation, because

25  statutory claims do not require construction or interpretation of contractual clauses];

26  *Beckley v. Auto Profit Masters, L.L.C.,* 266 F. Supp. 2d 1001, 1004-1005 (S.D. Iowa

27  2003) [forum selection clause did not encompass fraud in the inducement claim, which

28  was independent of the contract].

1    Here, plaintiff was not a party to the 2005 lending agreement.  It did not even

2  acquire Smoby until May 11, 2007.  Plaintiff's claims for securities fraud, common law

3  fraud, and negligence arise out of events occurring *before* the acquisition, and are not

4  encompassed by the narrow scope of the forum selection clause.  None of plaintiff's

5  claims concern the execution of the contract or require interpretation of its written

6  terms.  Rather, they assert material omissions of fact by defendants regarding prior

7  frauds and crimes at Smoby which induced plaintiff to acquire Smoby.  (FAC, ¶¶63-

8  66.)  These acts predated any interest of MGA in the lending agreement, and rest on

9  factual grounds independent of the parties' subsequent relationship.

10    Contrary to defendants' contention, even plaintiffs' contract claim is not subject

11  to the clause since it does not require interpretation of the contract's written terms.

12  Rather, the primary thrust of that claim is that defendants acted in violation of the

13  covenant of good faith and fair dealing by continuing to conceal the existence of prior

14  frauds at Smoby.  (FAC, ¶¶ 74-75.)  Even assuming a small portion of the breach of

15  contract claim implicates the form selection clause, that is not grounds for dismissing

16  the breach of contract claim, let alone the entire action.  (See *Bancomer, supra*, 44

17  Cal.App.4th at 1462 [noting that it would be "unreasonable and illogical" to submit a

18  party to two forums, merely because one aspect of the breach of contract was arguably

19  subject to a form selection clause]; *Beckley, supra,* 266 F.Supp.2d at 1005 [declining

20  to dismiss action on the basis of a form selection clause, given that six out of seven

21  claims were not subject to the form selection clause].)

**d.     Defendants Are Estopped From Enforcing The Forum Selection Clause.**

24    Finally, defendants are estopped from enforcing the forum selection clause

25  because they have declined to abide by it themselves.  Defendants argue that this case

26  is "parallel" to defendants' actions in France, which purportedly concern "the

27  principal issue of whether MGA is liable to the Defendants for the Syndicated and

28  Bridge Loans." (Motion, 22:10-12.)  The Syndicated Loan contains the forum

selection clause relied upon by defendants.  But defendants did not sue plaintiff in the Tribunal de Commerce in Paris as reflected in the clause.  Rather, defendants sued plaintiff in a wholly different province, in the Commercial Court of Lons-le Saunier.

Given that defendants waived the forum selection provision by failing to comply with it themselves, they should be estopped from enforcing it against plaintiff. Alternatively, their conduct shows that the forum selection clause is only "permissive" in nature, and is entitled to little weight in the *forum non conveniens* analysis.  (*K&V Scientific Co. v. BMW*, 314 F.3d 494, 499 (10th Cir. 2002).)

## C.   The Federal Venue Statutes Also Compel Denial of Defendants' Motion.

### 1.   Federal Law Imposes A Heavy Presumption That Plaintiff's Forum Is Appropriate.

Under the federal analysis, defendants bear the burden of showing that there is an adequate alternative forum, and that the balance of the private and public interest factors favors dismissal.  (*Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002).)  A plaintiff who is a U.S. citizen should not be deprived of his choice of forum except when the trial would prove oppressive and vexatious to the defendant, out of all proportion to the convenience to the plaintiff.  (*Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).)

While defendants cite extensively to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) in urging dismissal, that case does not state the correct standard because it concerned a *foreign plaintiff*.  (*Id.* at 256 [a foreign plaintiff's choice deserves less deference].)  The Banks' burden is much heavier in this case because the granting of the motion will deny a U.S. citizen access to courts in its own country.  (*Baris v. Sulpicio Lines*, 932 F.2d 1540, 1549 (5th Cir. 1991); *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 (1981); see also *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947) (unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should "rarely be disturbed"); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 454 (6th Cir. 1988).)

1   Here, not only have the Banks failed to meet their burden, the factors present in

2   this case strongly favor a California forum.

3   **2.  France Does Not Provide An Adequate Forum For Plaintiff's Claims.**

4

5   Defendants claim that France provides an alternative available forum for

6   plaintiff's claims because of its "evolved and fair judicial system."  (Motion at p.

7   8:12-14)  This is untrue.

8   First, since interpretation of California's securities laws and the forum in which

9   they are heard are "inextricably bound," the alternative forum must provide the same

10  relief as California to be an adequate alternative for these claims.  (See, *NutraCea*,

11  *supra* at *6 [New York not an adequate forum to hear California securities claims

12  because its common law fraud remedies impose additional requirements of justifiable

13  reliance and causation].)

14  While defendants provide a declaration by Prof. George Bermann stating that

15  fraud and breach of contract actions exist in France, they notably do not address the

16  availability of a private securities fraud action.  This is because no such cause of

17  action exists in France.  (Laude Decl., ¶10.)  This renders France an inadequate forum.

18  (See, e.g., *Kuwait Fin. Ctr. v. Stone Pine Inv. Banking, LLC*, 2007 U.S. Dist. LEXIS

19  69916, *12-13 (D. Colo. Sept. 19, 2007) [England did not provide adequate forum for

20  Colorado state law securities claims]; *Industrial Inv. Dev. Corp. v. Mitsui & Co.,* 671

21  F.2d 876 [antitrust claims not subject to *forum non conveniens* dismissal]; *Jose

22  Armando Bermudez & Co. v. Bermudez Int'l, Inc.*, 2000 U.S. Dist. LEXIS 12354

23  (S.D.N.Y. Aug 28, 2000) [declining to dismiss on *forum non conveniens* grounds

24  where plaintiff asserted trademark and copyright infringement claims]; *Derensis v.

25  Coopers & Lybrand Chtd. Accountants*, 930 F.Supp. 1003, 1011 (DNJ 1996) [Canada

26  not adequate alternative forum for securities class action suit where US "has a strong

27  public policy of protecting the integrity of its securities markets"].)

28  / / /

1   France does not provide a procedurally comparable remedy to California's

2   securities laws.  Like New York, the French causes of action require proof of reliance

3   and causation.  (Laude Decl., ¶10.)  Nor does it provide for punitive damages.  (Laude

4   Decl., ¶11.)  Also, France provides for virtually no discovery or live witness testimony

5   in a civil case.  (Laude Decl., ¶7.)  Instead, the case depends almost entirely on

6   affidavits without the opportunity for cross-examination.  (Laude Decl., ¶13.) These

7   procedural deficiencies are another reason why France is not an adequate forum for

8   plaintiff's claims.  (See *Sablic v. Armada Shipping Aps*, 973 F.Supp. 745 (S.D. Tex.

9   1997); *Bhatnagar v. Surrendra Overseas,* 52 F.3d 1220 (3d Cir. 1995).)

10   Second, regardless of adequacy of France's legal system in the abstract, this

11   plaintiff cannot obtain basic justice in France because of local bias personally affecting

12   it.  (See *Eastman Kodak Co. v. Kavlin*, 978 F.Supp 1078 (S.D. Fla. 1997) [corruption in

13   the foreign legal system is a ground for denying *forum non conveniens* motion]; Larian

14   Decl., ¶34-43.)  While the case has been removed to a second French forum, plaintiff

15   remains subject to a preliminary writ of attachment ruling issued by the biased tribunal.

16   **3.    The Private Factors Weigh In Favor Of Adjudicating Plaintiff's Claims In The United States.**

17

18   **a.    The Majority Of Relevant Witness And Documentary Evidence Is In The United States.**

19   Defendants selectively cite to the complaint for the proposition that MGA's

20   claims "all arise from alleged conduct by the Defendants in France."  (Motion, 9:21.)

21   On that false premise, they conclude that all significant witnesses and documents exist

22   in France, and it will be more convenient and fair to try the case there.  This is false.

23   First, a large number of relevant documents and witnesses reside in the United

24   States.  The core of this case has nothing to do with events in France, but with the

25   California-based financing, negotiation, acquisition, and post-acquisition operation of

26   Smoby.  The vast majority of these communications took place in the United States in

27   English.  Nearly 20 witnesses to these events, including MGA current and former

28   staff, MGA's advisors and financiers, U.S. based hedge funds, and the Smoby

OPPOSITION TO MOTION TO DISMISS                    CASE NO. CV11-04932 GW (RZX)

1   management team post-acquisition, reside in the United States.  (Larian Decl., ¶48-

2   50.)  Many thousands of documents that reflect these events are located on MGA's

3   database in California, as well as the Banks' agents' offices in New York.  (Larian

4   Decl., ¶47.)  While the Banks now contend this information is immaterial, the French

5   government – in its investigation of Mr. Breuil and his associates – believed the

6   information so important that it took the extraordinary action of having the SEC

7   subpoena information from MGA in America.  (Larian Decl., ¶45.)

8          Second, the most *material* evidence is located in America.  As previously

9   stated, the heart of plaintiff's complaint is false representations made to plaintiff in the

10  United States that induced it to purchase Smoby.  As noted above, evidence regarding

11  these statements exist largely in the United States.  Highly material information is

12  entitled to greater weight in the *forum non conveniens* analysis.  (*Brandon Apparel*

13  *Group v. Quitman Mfg. Co. Inc.*) 42 F.Supp.2d 821, 834 (N.D. IL 1999.)

14  Third, to the extent that there are documents and witnesses in France, they can be

15  compelled with relative ease.  The Banks have identified at least 16 witnesses residing

16  abroad who are current employees of the Banks and who therefore can be compelled

17  to testify in this forum.   (See, e.g.,  Declaration of Marie-Laurie Tuffal-Quidet, ¶5,

18  Declaration of Jean-Paul Palmade ("Palmade Decl."), ¶¶7(i), 7(ii)(B)-(C); Declaration

19  of Nicholas Verle, ¶3(a); *Ashmore v. Northeast Petroleum Div. of Cargill, Inc.*, 925

20  F.Supp. 36, 38 (D. Me. 1996) [current employees of a party defendant residing in

21  foreign countries are considered subject to process for purposes of a *forum non*

22  *conveniens* motion].)  These witnesses would not be seriously inconvenienced by

23  being deposed in their place of residence.  The witnesses can be deposed by video

24  conferencing and other similar means.  (*In re Corel Corp., Secs. Litig.*, 147 F. Supp.

25  2d 363 (E.D. Pa. 2001); see also *Itoba Ld. v. LEP Group PLC*, 930 F.Supp. (D. Conn

26  1996).)

27          Fourth, it would not seriously inconvenience the Banks to litigate this case in

28  America.  The Banks commonly litigate in this country with American counsel.  They

have a significant presence in the United States, generate substantial revenues here, and maintain permanent branches here.  (*In re Corel Corp., supra,* 147 F. Supp. 2d at 366.)  Deutsche Bank even is listed on the US stock exchange.  (Fisher Decl., ¶ 10.)  The Banks acknowledge that they have access to relevant documents on their servers.  (Palmade Decl., ¶8; Declaration of John Benson, ¶4; Declaration of Justin Cicero, ¶5.)  In today's electronic age, such information easily can be produced in the United States by sophisticated, multi-national parties with significant American contacts.  (*In re Corel Corp., supra,* 147 F. Supp. 2d at 366; *Rodriguez Licea v. Curacao Drydock Co., Inc.,* 537 F. Supp. 2d 1270 (S.D. Fla. 2008).)

In contrast, the Banks ignore the inconvenience to plaintiff and the numerous U.S. witnesses if the case were conducted in France.  Nearly 20 key non-party witnesses residing in the United States (including 6 former MGA employees) almost certainly will not be heard if this case is litigated in France.  (Laude Decl., ¶13.)

Fifth, the ability to compel live witness testimony adds to the United States being the superior forum.  (See *Interface Partners Int'l Ltd. v. Hananel,* 575 F.3d 97, 105 (1st Cir. 2009)  [noting that the availability of compulsory process is particularly important when allegations of fraud are at issue].)  The Banks identify multiple former employees residing in the United Kingdom who are material witnesses.  It would be virtually impossible to obtain testimony of any kind from these witnesses unless the case proceeds here.  (Laude Decl., ¶13.)

The Banks' contention that the case will not get a fair hearing in the United States because several witnesses are former employees who cannot be compelled to testify is without merit.  Since France and England are signatories to the Hague Convention, these former employees can be deposed in this action by means of letters rogatory.  (See, e.g., FRCP Rule 28(b)(3); 28 USCS § 1781 [providing for use of letters rogatory to take depositions of foreign nationals]; 28 USCS § 1781 [England and France are signatories to the Hague Convention].)  In contrast, France allows for virtually no live witness testimony in civil actions, even from its own citizens.  (Laude Decl., ¶13.)  Moreover,

1   the Banks fail to identify the persons purportedly beyond United States process, and

2   therefore have failed to meet their burden to show that material testimony cannot be

3   obtained.  (*Picketts v. Internationl Playtex, Inc.,* 215 Conn. 490, 509 (1990.)

4        Based on the above, it would be more convenient to try this case in the United

5   States.  At most, the Banks have shown only that some evidence exists outside the

6   United States.  This is insufficient to meet defendants' heavy burden of showing that

7   they would suffer inconvenience "all out of proportion" to plaintiff.

8        **b.**    **The Majority Of Key Documents Are In English.**

9        Defendants argue that the majority of the documents in their possession are in

10  French, which would require translation into English.  However, as described above,

11  MGA's documents are virtually entirely in English, and would have to be translated

12  into French if the action were heard there.  The numerous witnesses identified by

13  MGA as residing in United States speak English.  Additionally, defendants identify

14  several current and former employees who are British nationals residing in England.

15  Their testimony also would require translation in a French proceeding.

16       Additionally, the most significant evidence, and that which will require the

17  most syntactic scrutiny, is the misrepresentations to plaintiff in English.  This

18  evidence is best presented in the United States without translation.

19       The most the Banks establish is that there would need to be some translation, no

20  matter where the matter is heard.  This is not sufficient to send the case to France.

21  (See, e.g., *Ingram Micro, Inc. v. Airoute Cargo Express, Inc.,* 2001 US Dist LEXIS

22  2912, *14 (S.D.N.Y. Mar. 21, 2001) [need for translation of documents alone is not a

23  hardship of sufficient magnitude to justify dismissal].)

24       **c.**    **Plaintiff Is Able To Join All Necessary Parties To This Action.**

25

26       Defendants urge dismissal because plaintiff "arguably" cannot implead other

27  allegedly culpable foreign parties into the jurisdiction of this Court.  (Motion, 13:13-

28  14:6.)  Defendants fail to support this assertion, and it is manifestly untrue.  All of the

1    entities listed are citizens of countries belonging to the Hague Convention, and thus

2    are subject to service of process of this Court.  (FRCP Rule 4(f)(1).)  This Court has

3    jurisdiction over all defendants who participate in misrepresentations to U.S. citizens

4    in the State of California.  (*Textor v. Board of Regents of No. Ill. Univ.*, 711 F.2d

5    1387, 1392 (7th Cir. 1983).

6          **4.   The Public Factors Also Weigh In Favor of Hearing This Case In The United States.**

7

8          Since the private factors weigh in favor of a California forum, this Court need

9    not look to the public factors.  (*Friends for All Children Inc. v. Lockheed Aircraft*

10   *Corp.*, 717 F.2d 602, 606-609 (1983).)  However, public factors also favor California.

11          Public factors relevant to a foreign convenience motion include local interest in

12   the lawsuit, familiarity with governing law and avoidance of unnecessary problems in

13   conflicts of law or application of foreign law.  (*Gulf Oil Corp. v. Gilbert, supra*, 330

14   U.S. at 508-509, 67 S.Ct. at 843; *DTEX, LLC v. BBVA Bancomer, S.A.* 508 F.3d 785,

15   802 (5th Cir. 2007); *Ford v. Brown* (11th Cir. 2003) 319 F.3d 1302, 1309 [noting

16   international comity concerns, and burden on local courts and juries].)  All of these

17   factors steer decisively in favor of hearing the case in California.

18          **a.   The Fact That American Law Applies To Plaintiff's Claims Supports Denial Of Defendants' Motion.**

19

20          As discussed, this Court must apply California law to plaintiff's claims under

21   California's choice of law analysis.  This factor weighs heavily in plaintiff's favor.

22   Indeed, many federal courts consider this "threshold" issue to <u>mandate</u> denial of the

23   *forum non conveniens* motion without consideration of any other public or private

24   factors.  (See, e.g. *MBF Trust v. Castaway Mfg.*, 2010 U.S. Dist. LEXIS 118703, 10-

25   11 (N.D. Okla. Nov. 4, 2010) [denying motion to dismiss on grounds of *forum non*

26   *conveniens* because American law controlled]; *Gschwind v. Cessna Aircraft Co.,* 161

27   F.3d 602, 605-606 (10th Cir. 1998) [choice of law is a "threshold" issue; if American

28   law applies, there is no need to conduct the rest of the *forum non conveniens* analysis];

1    see also *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1171 (10th Cir. Okla. 2009); *Magellan*

2    *Real Estate Inv. Trust v. Losch*, 109 F. Supp. 2d 1144, 1149 (D. Ariz. 2000).)

3         Given California's special interest in seeing its securities laws fairly applied,

4    the Court should follow the above authority and deny the Motion.

5         **b.    California Has A Greater Local Interest In Hearing This Dispute.**

6

7         The United States has a strong interest in protecting its citizens from securities

8    fraud.  (*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, 2002 U.S. Dist. LEXIS 4636

9    (S.D.N.Y. Mar. 20, 2002.)  That is even truer where the allegedly false statements

10   were disseminated in the United States, or in meetings conducted inside the United

11   States.  (*Kingdom, supra,* 2002 U.S. Dist. LEXIS 4636, 39-40*; In re Corel Corp.,*

12   *supra,* 147 F. Supp. 2d 363, 367 (E.D. Pa. 2001).

13        In this case, plaintiff was solicited to purchase securities while in-state, based

14   on representations made during meetings and other negotiations conducted in

15   California and New York.  Most of the events giving rise to these claims occurred in

16   the United States and in English.  Defendants studiously ignore that plaintiff sustained

17   massive in-state damages of over $70 million in the form of cash transfers and draw

18   down on its letter of credit due to defendants' frauds.  California certainly has a

19   compelling interest in adjudicating the withdrawal of huge sums of money out of its

20   economy into the hands of foreign fraudsters.

21        France, meanwhile, has no comparable interest in providing redress to

22   American citizens based on statements made in the United States.  To the extent that

23   French citizens seek redress on different claims, they already are conducting an action

24   in France.  Accordingly, California has a greater local interest in hearing this dispute.

25        **c.    It Would Not Overburden California To Hear Claims Of Securities Fraud Perpetrated On Its Own Citizens Within Its Own Boundaries.**

26

27        Defendants contend that it would overburden California to hear this case, but

28   the case law they cite is inapposite.  Defendants rely on *Piper Aircraft*, *supra*, which

21

1   declined to hear a complex case brought by *foreign plaintiffs* involving events in

2   *Germany*.  (Motion, 18:7-22.)  *Piper* is not relevant.  Contrary to defendants' claim,

3   hearing this case in California would not open American courts to the world's

4   grievances.  This case rests on actions committed in California, harming a California

5   citizen.  It is not an undue burden for a California court to hear it, merely because the

6   perpetrators – who do business in the United States – reside in foreign countries.

7          This case has stronger ties to California than France under the facts and under

8   controlling public policy considerations.  It is not the "rare case" where plaintiff's

9   forum should be disturbed.  The Motion should be denied.

10      **D.      Defendants' French Lawsuit Against MGA To Recover Smoby Debt
             Does Not Justify A Stay Of This Action.**

11

12      Defendants argue that their existing lawsuit against plaintiff in France compels

13   a stay of this proceeding.  In the alternative, they raise this as an alternative ground of

14   granting the *forum non conveniens* motion.  The two issues generally are analyzed

15   together.  (*American Cyanamid Co. v. Picaso-Anstalt*, 741 F.Supp. 1150 (DNJ 1990).)

16          The relevant factors for a motion to stay based on parallel proceedings is set out

17   in *Colorado River v. United States*, 424 U.S. 800, 818 (1976), and interpreting case

18   law in the lower federal courts.  The factors include (1) similarity of parties and

19   issues; (2) judicial efficiency; (3) adequacy of available relief; (4) fairness to

20   inconvenience of witnesses; (5) prejudice to parties; and (6) sequence of filing.  (See

21   *Goldhammer v. Dunkin' Donuts, Inc.* 59 F.Supp.2d 248, 253 (D Mass 1999); *National*

22   *Union Fire Ins. Co. v. Kozeny*, 115 F.Supp. 2d 1243 (D. Colo. 2000).)  Only

23   "exceptional circumstances" warrant abstention under this doctrine.  (See *Spring City*

24   *Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999).)  This is because

25   federal courts have a "virtually unflagging obligation" to exercise jurisdiction over

26   matters before them.  (*Id*.)

27          As detailed below, these factors do not weigh towards staying this action, let

28   alone constitute "exceptional circumstances" permitting such a stay.

OPPOSITION TO MOTION TO DISMISS                                      CASE NO. CV11-04932 GW (RZX)
10012.003 - 189874.5

1          **1.   It Would Prejudice Plaintiff To Stay This Action, Because The**
2               **French Case Concerns Separate Issues And Does Not Provide**
                **Plaintiff With Adequate Procedures Or Relief.**

3      Defendants contend that the French and American cases are sufficiently parallel

4  to justify a stay, because they both involve "the principal issue of whether MGA is

5  liable to the Defendants for the Syndicated and Bridge Loans."  (Motion, 22:10-12.)

6  They also contend that if the French court determines MGA is not required to repay

7  the loans, the US action is unnecessary.  (*Id*. at 22:12-15.)  Both statements are untrue.

8      Two actions are parallel only if they contain "nearly identical allegations and

9  issues."  *Arris Sys. v. Nexploration Co.*, 2006 U.S. Dist. LEXIS 80207 (E.D. Pa. Nov.

10  1, 2006).)  "Some factual overlap does not dictate that proceedings are parallel"

11  particularly where the issues raised are different.  (*New Beckley Mining Corp. v.*

12  *International Union, United Mine Workers,* 946 F.2d 1072, 1074 (4th Cir. 1991);

13  *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994) [two

14  proceedings were not parallel although they arose out of the same basic facts because

15  each contested different aspects of a zoning variance and sought different relief];

16  *Gentry v. Wayne County*, 2010 U.S. Dist. LEXIS 123365 ( E.D. Mich. Nov. 22, 2010),

17  at *6-11 [cases were not parallel where federal case raised federal civil rights claims

18  and state case raised state tort claims].)

19      Here, while the French and American actions may have some factual overlap,

20  they are predicated on entirely different issues and claims.  MGA's case has nothing

21  to do with whether it is "liable" under the terms of the Bank loans to Smoby.  Rather,

22  the case depends on conduct that *predated* its acquisition of Smoby – the concealment

23  of frauds and crimes at Smoby that induced MGA to purchase the securities.

24      Plaintiff's case will not be "resolved" if MGA is adjudicated non-liable in the

25  French proceeding.  On the contrary, plaintiff alleges that it was induced to invest over

26  $70 million in Smoby on the basis of defendants' fraudulent misrepresentations.

27  Plaintiff has a claim for this amount regardless of the outcome of the French action.

28  / / /

1    Moreover, the French action provides no redress for plaintiff's California

2    securities fraud claims.  Where the subject federal case raises important issues of

3    public policy (such as constitutional issues) which are not addressed in the parallel

4    proceeding, it would be a serious abuse of discretion to grant the stay.  (*Moses H.*

5    *Cone Memorial Hosp. v. Mercury Constr.* Corp., 460 U.S. 1, 28 (1983); *Heitmanis v.*

6    *Austin,* 899 F.2d 521, 528 (6th Cir. Mich. 1990); *Arris Sys., supra,* 2006 U.S. Dist.

7    LEXIS 80207 [although the case involved the same parties, and the proceedings were

8    contemporaneous, the cases were not the same because the federal case contained

9    claims not addressable in the other forum].)

10   It is the fundamental public policy of California to have cases like this heard in

11   California.  Defendants cannot rob plaintiff of its securities claims simply by filing

12   suit in France first.  Defendants' attempts to enforce a debt obtained by fraud is itself

13   evidence of bad faith.  The claims should not be stayed.

14            **2.      It Would Not Promote Judicial Efficiency To Hear This Case
                         In France.**

15

16   Defendants contend that a stay is necessary to prevent duplication of efforts and

17   inconsistent results.  Neither would occur.

18   First, defendants do not seek to have "the case" heard in one proceeding.  The

19   current French case is pending in the Commercial Court of *Strasbourg*.  (Laude Decl.,

20   ¶21.)  Defendants now seek to transfer the case, not to Strasbourg, but to the

21   Commercial Court of *Paris*, based on the forum selection clause they claim governs

22   this action.  (Motion, 2:9.)  Therefore, if the case is stayed or dismissed, it would not

23   reduce duplication of legal efforts.  Rather two separate cases would proceed in

24   France, resulting in the same purported duplication of effort.

25   Second, it is untrue that a duplication of effort would occur.  As noted above,

26   these cases involve separate issues.  In addition, as noted, France provides for no

27   discovery and almost no live witness trial testimony.  Therefore, the question is not

28   whether key testimony will be heard twice, but rather whether it will be heard at all.

1   Providing a California plaintiff a hearing in American courts is the fairest and most

2   effective way to resolve this matter.

3          Third, the mere fact that defendants filed suit against plaintiff first is entitled to

4   little weight.  (See *American Cyanamid, supra,* 741 F.Supp. at 1159.)  The more

5   important question is how far the cases have proceeded.  Where the parallel case is

6   still in its beginning stages, it is not a compelling reason to stay the federal action.

7   (*Herbstein v. Bruetman,* 743 F. Supp. 184, 190 (S.D.N.Y. 1990).)

8          Here, while the French action has been pending for three years, it is still in its

9   infancy on the merits.  (Laude Decl., ¶¶20-21.)  The French case was stayed during

10  initial procedural matters, pending MGA's appeals challenging the jurisdiction of the

11  court and its ability to provide MGA with a fair trial.  Aside from the single

12  preliminary ruling by the Lons-le-Saunier Court preventing MGA from collecting

13  debts from Smoby, ***no briefing or argument on the merits of the French case has***

14  ***occurred***.  (Laude Decl., ¶20-21.)  Not only is that single decision irrelevant to

15  plaintiff's claims in this action, as noted above, it is tainted by bias.

16         Proceeding with this action in California will not affect or conflict with the

17  French action.  Accordingly, the case should continue in the United States.  No

18  exceptional circumstances exist that would justify a stay of this action.

19  **IV.   CONCLUSION**

20         For all of the above reasons, plaintiff respectfully requests that the Court deny

21  defendants' Motion to dismiss or stay this action.  In the alternative, plaintiff

22  respectfully requests that the Court grant limited discovery so that plaintiff may more

23  completely oppose the Motion.

24  DATED:  August 31, 2011                 CAPPELLO & NOËL LLP

25

26                                          By:   */s/ Leila J. Noël*
                                                 A. Barry Cappello
27                                               Leila J. Noël
                                                 Matthew H. Fisher
28                                               Attorneys for Plaintiff
                                                 MGA ENTERTAINMENT. INC..