# EXHIBIT 3

**Bruno GRACIANO**  
*Attorney-at-Law at the Appellate Court*

[stamp:] **COPY**

*Firm of MANGIAPAN LEMAÎTRE*  
*Bailiff*  
*39, Grande rue*  
*25000 BESANÇON*  
*TEL.: 03.81.81.51.47*

*DOS No.: 00080547*

## SUMMONS TO ATTEND URGENT PROCEEDINGS

Before the First President of the Appellate Court of Besançon

THE YEAR TWO THOUSAND TEN, DECEMBER SECOND

At the request of

**MGA ENTERTAINMENT INC.**  
A California company  
with headquarters at 16380 Roscoe Boulevard – Van Nuys – CA 91406 USA  
In the person of its legal representatives domiciled for this purpose at said headquarters

Represented by Bruno GRACIANO, Esq., attorney-at-law at the Appellate Court of Besançon, domiciled at 7 rue des Villas Bisontines, Besançon (25 000);

*I, E. MANGIAPAN-LEMAÎTRE, Bailiff and Court Usher at the Appellate Court of BESANÇON, domiciled there at 39, Grande rue, undersigned,*

bailiff, with whom domicile is elected by the plaintiff,

Serves summons to attend urgent proceedings to

**CAISSE RÉGIONALE DE CRÉDIT AGRICOLE MUTUEL DE FRANCHE-COMTÉ**  
With headquarters at 11 Avenue Élisée Cusenier 25000 BESANÇON  
In the person of its legal representatives

Where, present and addressing: *As indicated in the service record*

Before the First President of the Appellate Court of Besançon ruling in urgent proceedings

Exhibit 3 Page 18

| AT THE HEARING OF TUESDAY, DECEMBER 14, 2010 AT 10:00 A.M. |
|---|

At the Palais de Justice, located at 1 rue Mégevand, in Besançon;

⇨ *__Important:__ At this hearing, you must appear in person or be represented by an attorney-at-law at said Appellate Court or a lawyer registered with the Bar Association; otherwise, an order may be rendered against you based solely on the elements provided by the plaintiff, with the specification that the orders of the First President are not subject to appeal.*

## Purpose of the petition:

### MAY IT PLEASE THE PRESIDENT

*THE FACTS*

Groupe Smoby Majorette, number-one French toy manufacturer, faced, at the beginning of 2007, financial difficulties particularly due to the significant bank debt it contracted, which reached approximately €250,000,000.

These difficulties led to the opening, by five judgments of the Commercial Court of Lons-le-Saunier of March 19, 2007, of safeguard proceedings:

- of SAS Smoby Majorette Groupe (holding company held by the Breuil family);

- of its following subsidiaries:
  o SA Smoby
  o SAS Établissements Écoiffier Albert et Fils
  o SAS Majorette Solido
  o SA Groupe Berchet.

On May 18, 2007, MGA Entertainment Inc. acquired the majority of the shares of stock of the Smoby group with a view to presenting safeguard plans of SA Smoby and its subsidiaries.

Presenting such plans required that an agreement be reached with Smoby's banks, whose loans represented the most significant part of Smoby's liabilities.

MGA Entertainment Inc. engaged in such negotiations for that purpose following its acquisition of control, which negotiations finally failed in September 2007 as a result of the banks' uncompromising position.

By four judgments of October 9, 2007, the Commercial Court of Lons le Saunier ordered the conversion into court-ordered receivership of the safeguard proceedings of Smoby, Groupe Berchet, Établissements Écoiffier Albert et Fils, and Majorette Solido.

Then, by judgments of March 3 and 10, 2008, this court drew up the sale plans for said companies, whose judicial liquidation was then ordered by judgments of June 19, 2008.

*<br>* *

The participation of MGA Entertainment Inc. during the Smoby group safeguard proceedings has generated two lawsuits filed against it, first by one of the banks of this group (Crédit Agricole de Franche Comté), then by all its banks (including Crédit Agricole de Franche Comté).

a) <u>Lawsuit between Crédit Agricole de Franche Comté and MGA Entertainment Inc.</u>

This bank maintains that on September 11, 2007, MGA Entertainment Inc. offered it to buy its Smoby loans for the overall price of €2,962,320.17.

Arguing that this offer had been accepted, it maintains the existence of a sale agreement and requests that MGA Entertainment Inc. be ordered to pay said amount of €2,962,320.17, plus legal interest since September 11, 2007.

The parties are opposed on several points and particularly on the scope of the offer of MGA Entertainment Inc., which disputes being committed and argues that its project to acquire bank loans was inseparable from the adoption of safeguard plans for the Smoby group companies, which was not done in this case.

By service of November 5, 2007, Crédit Agricole de Franche Comté summoned MGA Entertainment Inc. before the Commercial Court of Lons le Saunier, requesting that it be ordered to pay the aforementioned amount of €2,962,320.17 plus interest accrued since September 11, 2007.

b) <u>Lawsuit opposing the seven banks of the Smoby group including Crédit Agricole de Franche Comté to MGA Entertainment Inc.</u>

The Smoby banks allege the existence of a commitment by MGA Entertainment Inc. to present safeguard plans for the companies of this group, which would include the payment of 100% of the bank debts.

Maintaining that MGA Entertainment Inc. had not respected this alleged commitment, they request that it be ordered to pay,

3

Exhibit 3 Page 20

as damages, a total amount of €250,933,668.60, to be distributed among them prorated to their loans.

*
* *

By judgment of October 3, 2008, the Commercial Court of Lons le Saunier ordered MGA Entertainment Inc. to pay to Caisse Régionale de Crédit Agricole de Franche Comté the amount of €2,962,320.17 plus legal interest since September 11, 2007.

This court ordered the temporary execution of this decision.

MGA Entertainment Inc. filed an appeal on October 29, 2008; it presented a request in order to summon on a fixed day, October 30, 2008, and was authorized, by order of November 13, 2008 of the First President of the Appellate Court of Besançon, to have Crédit Agricole summoned for the hearing of January 13, 2009 at 9:00 a.m.

The summons was delivered on December 1, 2008 with notice of exhibits.

By request of December 29, 2008, Crédit Agricole, which had not pleaded on the merits, asked the First President to dismiss from the docket the appeal filed by MGA Entertainment Inc., pursuant to article 526 CPC [Code of Civil Procedure].

By order of January 8, 2009, the case was dismissed from the docket of the Court on grounds that the payment obligations pronounced by the judgment of October 3, 2008, with temporary execution, had not been satisfied.

*
* *

Since then, it was found that the Commercial Court of Lons le Saunier did not meet the requirement of impartiality concerning MGA Entertainment Inc.

As part of the lawsuit opposing it at the same time to the Smoby banks, including Crédit Agricole de Franche Comté, MGA Entertainment Inc. learned of public declarations by the President of the Commercial Court of Lons le Saunier, repeated in the press.

This judge had clearly criticized MGA Entertainment Inc. for its role during the safeguard proceeding of the companies of the Smoby group, accusing it of not respecting its commitments.

MGA Entertainment Inc. then filed with the President of the Commercial Court of Lons le Saunier a request based on a well-founded suspicion of bias, which this magistrate rejected on May 11, 2009.

However, by decision of July 2, 2009, the Appellate Court of Besançon declared the request of MGA Entertainment Inc. admissible and well-founded, consequently ordering the referring of the case opposing it to the main banks of the Smoby group to another jurisdiction.

The decision is motivated as follows:

*Whereas, by proceeding with these declarations, said magistrate violated the requirement of impartiality sought from any court; because of his functions, his statements affect the entire commercial court. Whereas, consequently, it is appropriate to approve the request.*

\*
\* \*

1) According to article 524 CPC:

*Where temporary execution has been ordered, it may be stopped, in the event of an appeal, only by the First President who sits in urgent proceedings and in the following cases:*

...

*2) If it risks causing obviously excessive consequences;*

In this case, the hostility of the Commercial Court of Lons le Saunier towards MGA Entertainment Inc. is a known fact, legally acknowledged by the decision of the Court of Besançon of July 2, 2009.

It would obviously be excessive to deprive MGA Entertainment Inc. of the suspensive effect of the appeal by forcing it to execute a decision rendered by a court by which it was actually judged that it did not meet the *requirement of impartiality sought from any court.*

On the other hand, according to article 6 paragraph 1 of the CEDH [European Convention on Human Rights]:

*Any person has the right for his case to be fairly heard ... by an independent and impartial court ...*

Because of the hostility against it of the Commercial Court of Lons le Saunier, MGA Entertainment Inc. did not benefit from the right for its case to be fairly heard by an impartial court.

Consequently, it has the right to have access, by means of appeal, to a fair procedure pursuant to article 6 paragraph 1 CEDH, without incurring the effects of the temporary execution that accompanies the judgment of the Commercial Court of Lons le Saunier.

These circumstances justify that the measure so ordered be stopped by the First President.

In addition, the temporary execution would have for MGA Entertainment Inc. obviously excessive consequences in view of its financial situation.

It appears from a statement by its chief financial officer dated November 30, 2010 that MGA Entertainment Inc. had to face heavy exceptional charges related to a lawsuit against Mattel Inc., currently ongoing.

Thus, on October 31, 2010, MGA Entertainment Inc. had a negative cash flow of MUSD 12.3, so that the obligation to comply with the payment ordered by the judgment of the trial court would expose it

5

Exhibit 3 Page 22

to serious financial difficulties and would prevent the normal continuation of its commercial activities.

These circumstances, characterizing obviously excessive consequences, lead MGA Entertainment Inc. to request the First President to stay the temporary execution of the judgment of the Commercial Court of Lons le Saunier of October 3, 2008.

2) According to article 526 CPC:

*When temporary execution ... has been ordered, the First President ... in the event of an appeal, can decide ... to dismiss the case from the docket when the appellant does not prove that it executed the appealed decision ... unless it appears that the execution would be likely to cause manifestly excessive consequences ...*

The dismissal of the appeal was ordered pursuant to this text, on January 8, 2009, while the case was scheduled to be pleaded on the merits before the Court on January 13, 2009.

The lack of impartiality of the Commercial Court of Lons le Saunier, revealed since and established by the decision of July 2, 2009, constitutes an exceptional and serious ground justifying the reinstatement of the case on the docket of the Court.

Pursuant to article 526 CPC, the First President, receiving a request to dismiss from the defendant, has the ability to assess and, therefore, to decide independently whether or not to accept this request.

He also has the power to authorize the reinstatement of the case on the docket.

In this case, it is indisputable that maintaining the dismissal would cause MGA Entertainment Inc. manifestly excessive consequences, depriving it, by the effect of expiration, of the right to be heard, in a fair trial, by an impartial judge, pursuant to article 6 paragraph 1 CEDH.

Thus, if the case remained dismissed from the docket, MGA Entertainment Inc. would be prohibited from presenting its arguments on the merits, before the Appellate Court of Besançon, for the only reason that it would not have satisfied the payment obligations pronounced by a decision coming from a court whose hostility against it and lack of impartiality have been judicially found.

It would be contrary to article 6 paragraph 1 CEDH to subordinate the right of MGA Entertainment Inc. *to have its case heard fairly by an impartial court*, to the execution of a decision coming from a court that does not meet the *requirement of impartiality sought from any court* (see reasons for the decision of July 2, 2009, cited above).

Consequently, MGA Entertainment Inc. requests the President to order the reinstatement on the docket of the Court of Appeals from the judgment of the Commercial Court of Lons le Saunier of October 3, 2008, formalized according to the declaration of October 29, 2008.

## ON THESE GROUNDS

Pursuant to articles 524, 526 CPC and 6 paragraph 1 of the European Convention on Human Rights,

- To admit the requests of MGA Entertainment Inc.; to declare them well-founded.

- To order the stay of the temporary execution of the payment obligations pronounced by the judgment of the Commercial Court of Lons le Saunier of October 3, 2008.

- To order the reinstatement on the docket of the Appellate Court of the appeal requested by MGA Entertainment Inc. from this judgment.

- To sentence Caisse Régionale de Crédit Agricole de Franche Comté to pay to MGA Entertainment Inc. the amount of €10,000 pursuant to article 700 CPC.

- To sentence Caisse Régionale de Crédit Agricole de Franche Comté to pay full costs, with distribution to Atty. Graciano, attorney-at-law, pursuant to article 699 CPC.

## WITH ALL RESERVATIONS

## LIST OF EXHIBITS

1) extract K bis of SAS Smoby Majorette Groupe
2) extract K bis of SA Smoby
3) extract K bis of SAS Établissements Écoiffier Albert et Fils
4) extract K bis of SAS Majorette Solido
5) extract K bis of SA Groupe Berchet
6) summons delivered by CAFC to MGA on November 5, 2007
7) summons delivered by the banks of Smoby to MGA
8) judgment of the Commercial Court of Lons le Saunier of October 3, 2008
9) declaration of appeal of October 29, 2008
10) request to summon on a fixed day
11) order of the First President of the Appellate Court of Besançon of November 13, 2008
12) order of the First President of the Appellate Court of Besançon of January 8, 2009
13) decision of the Appellate Court of Besançon of July 2, 2009
14) declaration of Mr. Dennis Jolicœur and sworn translation

[signature]

**Bruno GRACIANO**
*Avoué près la Cour d'appel*

COPIE

*Etude MANGIAPAN LEMAITRE*
*Huissier de Justice*
*39, Grande rue*
*25000 BESANCON*
*TEL : 03.81.81.51.47*

N° DOS : 00080547

## ASSIGNATION EN REFERE

Devant le Premier Président de la Cour d'appel de Besançon

L'AN DEUX MILLE DIX et le DEUX DECEMBRE

A la demande de

**SOCIETE MGA ENTERTAINMENT INC.**
Société de droit californien
dont le siège social est 16380 Roscoe Boulevard - Van Nuys – CA 91406 USA
Prise en la personne de ses représentants légaux domiciliés pour ce audit siège

Ayant pour avoué constitué Maître Bruno GRACIANO, avoué prés la Cour d'appel de Besançon, demeurant 7 rue des Villas Bisontines, Besançon (25 000) ;

*Je, Me MANGIAPAN-LEMAITRE E., Huissier de Justice audiencier près la Cour d'Appel de BESANCON, y demeurant, 39, Grande rue, soussignée,*

huissier, chez qui domicile est élu par le demandeur,

Donné assignation en référé à

**CAISSE REGIONALE DE CREDIT AGRICOLE MUTUEL DE FRANCHE-COMTE**
Dont le siège social est 11 Avenue Elisée Cusenier 25000 BESANCON
Prise en la personne de ses représentants légaux

Où étant et parlant à : *Comme il est dit au procès verbal de signification*

Devant Monsieur le Premier Président de la Cour d'appel de Besançon statuant en référé

Exhibit 3 Page 25

> A L'AUDIENCE DU MARDI **14** DECEMBRE **2010** A **10** HEURES

Au Palais de Justice, sis 1 rue Mégevand, à Besançon ;

⇒ *Important* : *A cette audience, vous devez vous présenter en personne ou vous faire représenter par un avoué près ladite Cour d'appel ou un avocat régulièrement inscrit au Barreau, sinon une ordonnance pourra être rendue à votre encontre sur les seuls éléments fournis par le demandeur, étant précisé que les ordonnances du Premier Président ne sont pas susceptibles d'opposition.*

## Objet de la demande :

### PLAISE A MONSIEUR LE PRESIDENT

**LES FAITS**

Le Groupe Smoby Majorette, premier constructeur français de jouets, s'est trouvé confronté, au début de l'année 2007, à des difficultés financières en raison notamment de l'important endettement bancaire qu'il avait contracté et qui s'élevait à environ 250.000.000 €.

Ces difficultés ont conduit à l'ouverture, par cinq jugements du Tribunal de

Commerce de Lons-le-Saunier du 19 mars 2007, de procédures de sauvegarde :

- de la SAS Smoby Majorette Groupe (holding de contrôle détenue par la famille Breuil) ;
- de ses filiales suivantes :
  . la SA Smoby
  . la SAS Établissements Ecoiffier Albert et Fils
  . la SAS Majorette Solido
  . la SA Groupe Berchet.

Le 18 mai 2007, la société MGA Entertainment Inc. a acquis la majorité du capital du groupe Smoby dans l'objectif de présenter des plans de sauvegarde de la SA Smoby et de ses filiales.

La présentation de tels plans nécessitait qu'un accord soit trouvé avec les banques de Smoby dont les créances constituaient la part la plus importante du passif.

2

Exhibit 3 Page 26

Les négociations entamées à cette fin par MGA Entertainment Inc. après sa prise de participation majoritaire, échouaient définitivement en septembre 2007 en raison de l'intransigeance des banques.

Par quatre jugements du 9 octobre 2007, le Tribunal de Commerce de Lons le Saunier ordonnait la conversion en redressements judiciaires des procédures de sauvegarde des sociétés Smoby, Groupe Berchet, Etablissements Ecoiffier Albert et Fils, et Majorette Solido.

Puis, par jugements des 3 et 10 mars 2008, ce tribunal arrêtait les plans de cession desdites sociétés dont la liquidation judiciaire était ensuite ordonnée par jugements du 19 juin 2008.

*<br>*  *

L'intervention de MGA Entertainment Inc. dans le déroulement des procédures de sauvegarde du groupe Smoby, a généré deux contentieux initiés contre elle, tout d'abord par l'une des banques de ce groupe (le Crédit Agricole de Franche Comté), puis par toutes ses banques (parmi lesquelles le Crédit Agricole de Franche Comté).

a) <u>Contentieux opposant le Crédit Agricole de Franche Compté à MGA Entertainment Inc.</u>

Cette banque soutient que MGA Entertainment Inc. lui a offert, le 11 septembre 2007, d'acquérir ses créances sur Smoby au prix global de 2.962.320,17 €.

Arguant d'une acceptation de cette offre, elle soutient l'existence d'un accord de cession et demande la condamnation de MGA Entertainment Inc. au paiement de ladite somme de 2.962.320,17 € majorée des intérêts légaux depuis le 11 septembre 2007.

Les parties s'opposent sur plusieurs points et notamment sur la portée de l'offre de MGA Entertainment Inc. qui conteste être engagée et fait valoir que son projet d'acquisition des créances bancaires était indissociable de l'adoption de plans de sauvegarde des sociétés du groupe Smoby, non réalisée en l'espèce.

Le Crédit Agricole de Franche Comté, par exploit du 5 novembre 2007, a fait assigner MGA Entertainment Inc. devant le Tribunal de Commerce de Lons le Saunier, sollicitant sa condamnation au paiement de la somme sus visée de 2.962.320,17 € majorée des intérêts courus depuis le 11 septembre 2007.

b) <u>Contentieux opposant les sept banques du groupe Smoby dont le Crédit Agricole de Franche Comté à MGA Entertainment Inc.</u>

Les banques de Smoby allèguent l'existence d'un engagement de MGA Entertainment Inc. de présenter des plans de sauvegarde des sociétés de ce groupe, prévoyant le paiement des dettes bancaires à 100 %.

Soutenant que MGA Entertainment Inc. n'aurait pas respecté cet engagement prétendu, elles sollicitent sa condamnation au paiement, à titre de dommages et

intérêts, d'une somme totale de 250.933.668,60 € à répartir entre elles au prorata de leurs créances.

*
* *

Par jugement du 3 octobre 2008, le Tribunal de Commerce de Lons le Saunier a condamné MGA Entertainment Inc. à payer à la Caisse Régionale de Crédit Agricole de Franche Comté la somme de 2.962.320,17 € outre intérêts légaux à compter du 11 septembre 2007.

Cette décision a été assortie de l'exécution provisoire.

MGA Entertainment Inc. en a interjeté appel le 29 octobre 2008 ; elle a présenté une requête à fin d'assigner à jour fixe le 30 octobre 2008 et a été autorisée, par ordonnance du 13 novembre 2008 de M. le Premier Président de la Cour d'Appel de Besançon, à faire assigner le Crédit Agricole pour l'audience du 13 janvier 2009 à 9 heures.

L'assignation a été délivrée le 1er décembre 2008 avec dénonciation des pièces.

Par requête du 29 décembre 2008, le Crédit Agricole, qui n'avait pas conclu au fond, a sollicité de M. le Premier Président la radiation du rôle de l'appel interjeté par MGA Entertainment Inc. au visa de l'article 526 du CPC.

Par ordonnance du 8 janvier 2009, l'affaire a été radiée du rôle de la Cour au motif que les condamnations prononcées par le jugement du 3 octobre 2008, assorti de l'exécution provisoire, n'avaient pas été payées.

*
* *

Depuis lors, il a été révélé que le Tribunal de Commerce de Lons le Saunier ne répondait pas, s'agissant de MGA Entertainment Inc., à l'exigence d'impartialité.

Dans le cadre du procès l'opposant parallèlement aux banques de Smoby, parmi lesquelles le Crédit Agricole de Franche Comté, MGA Entertainment Inc. a eu la révélation de déclarations faites publiquement par le Président du Tribunal de Commerce de Lons le Saunier et reprises dans la presse.

Ce magistrat a clairement reproché à MGA Entertainment Inc. son rôle dans le déroulement de la procédure de sauvegarde des sociétés du groupe Smoby, lui faisant grief de ne pas respecter ses engagements.

MGA Entertainment Inc. a donc déposé devant le Président du Tribunal de Commerce de Lons le Saunier une requête en suspicion légitime que ce magistrat a rejetée le 11 mai 2009.

Cependant, par arrêt du 2 juillet 2009, la Cour d'Appel de Besançon a déclaré recevable et bien fondée la requête de MGA Entertainment Inc., ordonnant, en conséquence, le renvoi de l'affaire l'opposant aux principales banques du groupe Smoby devant une autre juridiction.

4

Exhibit 3 Page 28

L'arrêt est ainsi motivé :

*Attendu qu'en procédant à ces déclarations, ledit magistrat a porté atteinte à l'exigence d'impartialité requise de toute juridiction ; qu'en raison de ses fonctions, ses déclarations atteignent l'ensemble de la juridiction consulaire.*
*Attendu en conséquence qu'il convient de faire droit à la requête.*

\*
\* \*

**1)** Selon l'article 524 du CPC :

*Lorsque l'exécution provisoire a été ordonnée, elle ne peut être arrêtée en cas d'appel que par le Premier Président statuant en référé et dans les cas suivants :*
*...*
*2°) Si elle risque d'entraîner des conséquences manifestement excessives.*

En l'espèce, l'hostilité du Tribunal de Commerce de Lons le Saunier à l'égard de MGA Entertainment Inc. est un fait avéré, judiciairement constaté par l'arrêt de la Cour de Besançon du 2 juillet 2009.

Il serait manifestement excessif de priver MGA Entertainment Inc. de l'effet suspensif de l'appel en la contraignant à exécuter une décision rendue par un tribunal dont il a été par ailleurs jugé qu'il ne répondait pas à *l'exigence d'impartialité requise de toute juridiction.*

D'autre part, selon l'article 6 1°) de la CEDH :

*Toute personne a droit à ce que sa cause soit entendue équitablement ... par un tribunal indépendant et impartial ...*

MGA Entertainment Inc. n'a pas bénéficié, en raison de l'hostilité à son égard du Tribunal de Commerce de Lons le Saunier, du droit à ce que sa cause soit entendue équitablement par un tribunal impartial.

Elle est donc en droit d'avoir accès, par la voie de l'appel, à un procès équitable au sens de l'article 6 1°) de la CEDH, sans subir les effets de l'exécution provisoire assortissant le jugement du Tribunal de Commerce de Lons le Saunier.

Ces circonstances justifient que la mesure ainsi ordonnée soit arrêtée par M. le Premier Président.

De surcroît, l'exécution provisoire aurait pour MGA Entertainment Inc. des conséquences manifestement excessives au regard de sa situation financière.

Il résulte d'une attestation de son directeur financier en date du 30 novembre 2010, que MGA Entertainment Inc. a dû faire face à de lourdes charges exceptionnelles, liées à un contentieux l'opposant à la société Mattel Inc., actuellement en cours.

Ainsi, le 31 octobre 2010, MGA Entertainment Inc. avait un cash-flow négatif de 12,3 MUSD, de sorte que l'obligation pour elle de s'acquitter du règlement des condamnations prononcées en première instance par le jugement entrepris l'exposeraient

5

Exhibit 3 Page 29

à de sérieuses difficultés financières et empêcheraient la poursuite normale de ses activités commerciales.

Ces circonstances, caractérisant les conséquences manifestement excessives, conduisent MGA Entertainment Inc. à solliciter de M. le Premier Président l'arrêt de l'exécution provisoire assortissant le jugement du Tribunal de Commerce de Lons le Saunier du 3 octobre 2008.

2)  Selon l'article 526 du CPC :

*Lorsque l'exécution provisoire ... a été ordonnée, le Premier Président ... peut, en cas d'appel, décider ... la radiation du rôle de l'affaire lorsque l'appelant ne justifie pas avoir exécuté la décision frappée d'appel ... à moins qu'il lui apparaisse que l'exécution serait de nature à entrainer des conséquences manifestement excessives ...*

La radiation de l'appel a été ordonnée au visa de ce texte, le 8 janvier 2009, alors que l'affaire était fixée pour être plaidée au fond devant la Cour le 13 janvier 2009.

Le manque d'impartialité du Tribunal de Commerce de Lons le Saunier, révélé depuis et constaté par l'arrêt du 2 juillet 2009, constitue un motif exceptionnel et grave justifiant la réinscription de l'affaire au rôle de la Cour.

Selon l'article 526 du CPC, le Premier Président, saisi d'une demande de radiation de la part de l'intimé, dispose d'une faculté d'appréciation et peut donc souverainement décider d'accéder ou non à cette demande.

Il dispose également de la faculté d'autoriser la réinscription de l'affaire au rôle.

En l'espèce, il est indiscutable que le maintien de la radiation entrainerait pour MGA Entertainment Inc. des conséquences manifestement excessives, en la privant, par l'effet de la péremption, du droit à être entendue, dans le cadre d'un procès équitable, par un juge impartial, au sens de l'article 6 1°) de la CEDH.

Ainsi, si l'affaire restait radiée du rôle, MGA Entertainment Inc. se trouverait interdite de faire valoir ses moyens au fond, devant la Cour d'Appel de Besançon, au seul motif qu'elle n'aurait pas réglé les condamnations prononcées par une décision émanant d'une juridiction dont l'hostilité à son égard et le manque d'impartialité ont été judiciairement constatés.

Il serait d'évidence contraire à l'article 6 1°) de la CEDH de subordonner le droit de MGA Entertainment Inc. *à ce que sa cause soit entendue de manière équitable par un tribunal impartial,* à l'exécution d'une décision émanant d'une juridiction ne répondant pas *à l'exigence d'impartialité requise de toute juridiction* (cf. motifs de l'arrêt du 2 juillet 2009 précité).

MGA Entertainment Inc. sollicite donc de M. le Président qu'il veuille bien ordonner la réinscription au rôle de la Cour de l'appel du jugement du Tribunal de Commerce de Lons le Saunier du 3 octobre 2008, régularisé suivant déclaration du 29 octobre 2008.

6

Exhibit 3 Page 30

**PAR CES MOTIFS**

Vu les articles 524, 526 du CPC et 6 1°) de la Convention Européenne des Droits de l'Homme,

o   Recevoir MGA Entertainment Inc. en ses demandes ; l'en dire bien fondée.

o   Ordonner l'arrêt de l'exécution provisoire assortissant les condamnations prononcées par le jugement du Tribunal de Commerce de Lons le Saunier du 3 octobre 2008.

o   Ordonner la réinscription au rôle de la Cour de l'appel interjeté par MGA Entertainment Inc. de ce jugement.

o   Condamner la Caisse Régionale de Crédit Agricole de Franche Comté à payer à MGA Entertainment Inc. la somme de 10.000 € par application de l'article 700 du CPC.

o   Condamner la Caisse Régionale de Crédit Agricole de Franche Comté aux entiers dépens dont distraction au profit de Me Graciano, avoué, conformément aux dispositions de l'article 699 du CPC.

**SOUS TOUTES RESERVES**

**LISTE DES PIECES**

1) extrait K Bis de la SAS Smoby Majorette Groupe
2) extrait K Bis de la SA Smoby
3) extrait K Bis de la SAS Etablissements Ecoiffier Albert et Fils
4) extrait K Bis de la SAS Majorette Solido
5) extrait K Bis de la SA Groupe Berchet
6) assignation délivrée par le CAFC à MGA le 5 novembre 2007
7) assignation délivrée par les banques de Smoby à MGA
8) jugement du Tribunal de Commerce de Lons le Saunier du 3 octobre 2008
9) déclaration d'appel du 29 octobre 2008
10) requête afin d'assigner à jour fixe
11) ordonnance de M. le Premier Président de la Cour d'Appel de Besançon du 13 novembre 2008
12) ordonnance de M. le Premier Président de la Cour d'Appel de Besançon du 8 janvier 2009
13) arrêt de la Cour d'Appel de Besançon du 2 juillet 2009
14) déclaration de M. Dennis Jolicoeur et traduction jurée

7

Exhibit 3 Page 31



**TRANSPERFECT**

AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOGOTÁ
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
CLEVELAND
COLUMBUS
DALLAS
DENVER
DUBAI
DUBLIN
DÜSSELDORF
FRANKFURT
GENEVA
HONG KONG
HOUSTON
LONDON
LOS ANGELES
LYON
MEXICO CITY
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SEOUL
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TEL AVIV
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC
ZURICH

City of New York, State of New York, County of New York

I, Andrew Kinney, hereby certify that the document entitled "Summons to Attend Urgent Proceedings" is, to the best of my knowledge and belief, a true and accurate translation from French into English.

Andrew Kinney
Project Coordinator
Sworn to before me this
Monday, December 19, 2011

Signature, Notary Public

SARAH E MULLEN
Notary Public - State of New York
No. 01MU6245919
Qualified in New York County
Commission Expires Aug 08, 2015

Stamp, Notary Public

THREE PARK AVENUE, NEW YORK, NY 10016  T 212.689.5555  F 212.689.1059  WWW.TRANSPERFECT.COM

Exhibit 3 Page 32