MICHAEL LUSKIN (*admitted pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6110
Facsimile: (212) 299-6110
Email: luskin@hugheshubbard.com

RITA M. HAEUSLER, State Bar No. 110574
ALEX E. SPJUTE, State Bar No. 229796
HUGHES HUBBARD & REED LLP
350 South Grand Avenue, 36th Floor
Los Angeles, California 90071-3442
Telephone: (213) 613-2800
Facsimile: (213) 613-2950
Email: haeusler@hugheshubbard.com
Email: spjute@hugheshubbard.com

Attorneys for Defendant
Société Générale

(Additional Defendants and Counsel on Signature Page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California Corporation, | CASE NO. CV11-04932 GW (RZx) |
| Plaintiff, | [Assigned to Hon. George H. Wu] |
| v. | |
| DEUTSCHE BANK AG, a German Company; BARCLAYS BANK PLC, a British Corporation; CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, DBA CALYON, a French Public Limited Company; COMMERZBANK AKTIENGESELLSCHAFT, a German Corporation; and SOCIETE GENERALE, a French Public Limited Company, | **NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FRCP 12(b)(6)) AND FOR FAILURE TO AVER FRAUD WITH PARTICULARITY (FRCP 9(b)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Complaint Filed: March 28, 2011 |
| Defendants. | Hearing: Feb. 23, 2012<br>Time: 8:30 a.m.<br>Courtroom: 10 - Spring Street |

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at the date, time, and place noted above, defendants Société Générale, Deutsche Bank AG, Barclays Bank PLC, Commerzbank Aktiengesellschaft, and Crédit Agricole Corporate and Investment Bank, formerly known as Calyon, will and hereby do move the Court to dismiss MGA Entertainment, Inc.'s ("MGA") Second Amended Complaint ("SAC") because (1) it fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and (2) it fails to aver fraud with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

This motion is made on the grounds that (1) MGA's five causes of action are time-barred because MGA admits it was on notice of the alleged fraudulent conduct of Smoby SA and Jean-Christophe Breuil no later than June 2007 (SAC ¶¶ 80-83), more than three years before it filed this action, which is outside the applicable statute of limitation periods, and (2) all of MGA's causes of action sound in fraud and MGA has failed to plead with sufficient particularity under Rule 9(b).  This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Request for Judicial Notice concurrently filed herewith, and the papers and pleadings filed in this action and concurrently herewith, and such other papers as may be filed with the Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 16, 2011.

2

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6)) AND FOR FAILURE TO AVER FRAUD WITH PARTICULARITY (FRCP 9(b)); MEMO OF POINTS AND AUTHORITIES

1    Filing counsel hereby attests that concurrence in the filing of this document has

2    been obtained from the other signatories of this document.

3

4    Dated:  December 23, 2011

HUGHES HUBBARD & REED LLP

5

6    By: /s/ Rita M. Haeusler
          Rita M. Haeusler
          Attorneys for Defendant

7          Société Générale

8    -and-

9

10   Dated:  December 23, 2011          WEIL, GOTSHAL & MANGES LLP

11

12   By: /s/ Christopher J. Cox
          Christopher J. Cox (Bar No. 151650)
          201 Redwood Shores Parkway

13         Redwood Shores, CA 94065
           Telephone: (650) 802-3000

14         Attorneys for Defendants
           DEUTSCHE BANK AG,

15         BARCLAYS BANK PLC and
           COMMERZBANK

16         AKTIENGESELLSCHAFT

17   -and-

18   Dated:  December 23, 2011          KELLEY DRYE & WARREN LLP

19

20   By: /s/ Lee S. Brenner
          Lee S. Brenner (Bar No. 180235)

21         10100 Santa Monica Blvd., 23rd Flr.
           Los Angeles, CA 90067

22         Telephone: (310) 712-6125
           Facsimile: (310) 712-6199

23         , Attorneys for Defendant
           CRÉDIT AGRICOLE CORPORATE

24         AND INVESTMENT BANK,
           formerly known as Calyon

25

26

27

28
                                   3

# **TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ........................................................................... 1

II.  BACKGROUND ............................................................................................... 2

III.  PROCEDURAL HISTORY ............................................................................... 5

IV.  ARGUMENT ................................................................................................... 6

    A.  Motion To Dismiss Standard Of Review ................................................ 6

    B.  MGA'S Causes Of Action Are Time-Barred .......................................... 7

        1.  MGA's First and Second Causes of Action Are Time-Barred Under Cal. Corp. Code § 25506(b)'s Two-Year "Discovery" Statute of Limitation .................................................................... 7

            (a)  Inquiry Notice Triggers the Accrual of Causes of Action Under §§ 25504 and 25504.1 ................................... 8

            (b)  MGA's Admitted "Storm Warnings" ..................................... 9

            (c)  "Storm Warnings" Put MGA On Notice No Later Than June 2007, Starting the Accrual of the Two-Year Statute of Limitations .................................................................. 10

        2.  MGA's Third, Fourth, and Fifth Causes of Action For Fraud Under California Law Are Time-Barred .................................. 12

            (a)  Inquiry Notice Triggers the Accrual of California Fraud Causes of Action Under Cal. Civ. Proc. Code § 338(d) ....... 12

            (b)  MGA's Admitted "Storm Warnings" Put It On Notice No Later Than June 2007, Starting the Accrual of the Three-Year Statute of Limitations for Its Fraud Claims ....... 13

    C.  MGA Fails To Plead With Sufficient Particularity ........................... 13

        1.  MGA's First Cause of Action (Cal. Corp. Code § 25504) Fails To Establish The Requisite Control ................................. 14

        2.  MGA's Second Cause of Action (Cal. Corp. Code § 25504.1) Fails To Assert "Material Assistance . . . With Intent To Defraud" By Defendants .......................................... 18

            (a)  MGA's Allegations Of Defendants' "Material Assistance" Fail ...................................................... 18

            (b)  MGA's Allegations Of Defendants' "Intent To Defraud" Fail ........................................................... 22

i

         3.    MGA's Fraudulent Nondisclosure Claim Fails ......................... 22

         4.    MGA's Conspiracy Fraud Cause Of Action Fails .................... 24

         5.    MGA's Aiding and Abetting Fraud Claim Fails ...................... 24

V.      CONCLUSION ..................................................................................... 25

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6)) AND FOR FAILURE TO AVER FRAUD WITH PARTICULARITY (FRCP 9(b)); MEMO OF POINTS AND AUTHORITIES

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3    CASES

4
*In re Am. Funds Sec. Litig.,*
5        556 F. Supp. 2d 1100, 1108 (C.D. Cal. 2008)......................................... 12

6
*In re Am. Funds Sec. Litig.,*
7        395 Fed. Appx. 485 (9th Cir. 2010) ....................................................... 12

8
*Ashcroft v. Iqbal,*
9        129 S. Ct. 1937 (2009)............................................................................ 6

10
*Bains v. Moores,*
11        172 Cal. App. 4th 445 (2009)................................................................ 15

12
*Bell Atl. Corp. v. Twombly,*
13        550 U.S. 544 (2007) ............................................................................... 6

14
*Bower v. AT&T Mobility, LLC,*
        196 Cal. App. 4th 1545, 1557 (2011) ..................................................... 2

15
*Bradley v. Chiron Corp.,*
16        136 F.3d 1317 (Fed. Cir. 1998) .............................................................. 3

17
*Burnstein v. Graves,*
18        No. C 92-3623 FMS, 1994 WL 792541 (N.D. Cal. Dec. 20, 1994) ........... 17, 21

19
*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
20        637 F.3d 1047 (9th Cir. 2011)................................................................. 7

21
*Casey v. U.S. Bank Nat'l Ass'n,*
22        127 Cal. App. 4th 1138 (2005)............................................................. 23, 25

23
*Cellular Plus, Inc. v. Superior Court,*
        14 Cal. App. 4th 1224 (1993)................................................................ 24

24
25
*Chazen v. Centennial Bank,*
        61 Cal. App. 4th 532 (1998).................................................................. 19

26
27
*In re Citigroup Inc. Sec. Litig.,*
        753 F. Supp. 2d 206 (S.D.N.Y. 2010)................................................... 23

28

iii

*Conroy v. Regents of Univ. of Cal.,*
   45 Cal. 4th 1244 (2009) ............................................................................ 22

*Daghlian v. DeVry Univ.,*
   461 F. Supp. 2d 1121 (C.D. Cal. 2006) ...................................................... 2

*Das v. Bank of Am., N.A.,*
   186 Cal. App. 4th 727 (2010) ................................................................... 20

*Debro v. L.A. Raiders,*
   92 Cal. App. 4th 940 (2001) ...................................................................... 8

*Deveny v. Entropin, Inc.,*
   139 Cal. App. 4th 408 (2006) .............................................................. 7, 8, 9

*In re Downey Sec. Litig.,*
   No. CV 08-3261-JFW, 2009 WL 736802 (C.D. Cal. March 18, 2009) ............. 15

*Durham v. Kelly,*
   810 F.2d 1500 (9th Cir. 1987) ................................................................. 15

*Ellingson v. Burlington N., Inc.,*
   653 F.2d 1327 (9th Cir. 1981) ................................................................... 3

*Engalla v. Permanente Med. Group, Inc.,*
   15 Cal. 4th 951 (1997) ............................................................................. 22

*In re First Alliance Mortg. Co.,*
   471 F.3d 977 (9th Cir. 2006) ........................................................ 16, 19, 24

*In re Gilead Scis. Sec. Litig.,*
   536 F.3d 1049 (9th Cir. 2008) ................................................................... 6

*Hamilton Materials, Inc. v. Dow Chem. Corp.,*
   494 F.3d 1203 (9th Cir. 2007) ................................................................. 13

*Hellum v. Breyer,*
   194 Cal. App. 4th 1300 (2011) ................................................................. 15

*Howard v. Everex Sys., Inc.,*
   228 F.3d 1057 (9th Cir. 2000) ................................................................. 15

*In re Infonet Servs. Sec. Litig.,*
   310 F. Supp. 2d 1106 (C.D. Cal. 2003) .................................................... 11

iv

*Jennings v. Wash. Mut. Bank*,
No. CIV S-10-2126-FCD-CMK, 2011 WL 775861 (E.D. Cal. Feb. 28, 2011). 25

*Jones v. Bock*,
549 U.S. 199 (2007) ................................................................ 7

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*,
No. C-97-4618 MHP, 1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) .. 15, 18, 22

*Kamen v. Lindly*,
94 Cal. App. 4th 197 (2001) .................................................... 15

*Kane v. Madge Networks N.V.*,
No. C–96–20652–RMW, 2000 WL 33208116 (N.D. Cal. May 26, 2000)........ 23

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................ 22

*Kline v. Turner*,
87 Cal. App. 4th 1369 (2001) ................................................ 13

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ................................................ 9

*Kramas v. Sec. Gas & Oil, Inc.*,
672 F.2d 766 (9th Cir. 1982) .............................................. 8, 11

*Kruse v. Bank of Am.*,
202 Cal. App. 3d 38 (1988) ................................................. 21

*Lubin v. Sybedon Corp.*,
688 F. Supp. 1425 (S.D. Cal. 1988) ........................................ 7

*Metge v. Baehler*,
762 F.2d 621 (8th Cir. 1985) ............................................ 16, 17

*Miller v Bechtel Corp.*,
33 Cal. 3d 868 (1983) .................................................... 12, 13

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ........................................... 13, 20

*In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates*,
636 F. Supp. 1138 (C.D. Cal. 1986) ........................................ 8

v

*Norgart v. Upjohn Co.,*
    21 Cal. 4th 383 (1999).................................................................. 13

*Nymark v. Heart Fed. Sav. & Loan Ass'n,*
    231 Cal. App. 3d 1089 (1991)................................................. 20, 21

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
    96 F.3d 1151 (9th Cir. 1996)........................................................ 17

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir. 1998)......................................................... 9

*Perlas v. GMAC Mortg., LLC,*
    187 Cal. App. 4th 429 (2010)...................................................... 21

*Persson v. Smart Inventions, Inc.,*
    125 Cal. App. 4th 1141 (2005).................................................... 19

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,*
    522 F.3d 1049 (9th Cir. 2008)...................................................... 13

*Price v. Wells Fargo Bank,*
    213 Cal. App. 3d 465 (1989).................................................. 19, 23

*Richard B. LeVine, Inc. v. Higashi,*
    131 Cal. App. 4th 566 (2005)...................................................... 25

*Rubke v. Capitol Bancorp, Ltd.,*
    551 F.3d 1156 (9th Cir. 2009)...................................................... 13

*Rutledge v. Boston Woven House & Rubber Co.,*
    576 F.2d 248 (9th Cir. 1978)........................................................ 23

*Schlifke v. Seafirst Corp.,*
    866 F.2d 935 (7th Cir. 1989)........................................................ 17

*Schneberger v. Wheeler,*
    859 F.2d 1477 (11th Cir. 1988).................................................... 19

*Seattle-First Nat'l Bank v. Carlstedt,*
    678 F. Supp. 1543 (W.D. Okl. 1987)............................................ 19

*Sierra-Bay Fed. Land Bank Ass'n v. Superior Court,*
    227 Cal. App. 3d 318 (1991)................................................... 20, 21

vi

*Stichting Pensionenfonds ABP v. Countrywide Fin. Corp.*,
  No. 10-CV-07275 MRP, 2011 WL 3558173,
  --- F. Supp. 2d ---- (C.D. Cal. Aug. 9, 2011)...............................................11, 12

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ....................................................................20, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..........................................................................................6

*In re Toyota Motor Corp.*,
  785 F.Supp.2d 883 (C.D. Cal. 2011)...............................................................21

*In re U.S. Grant Hotel Assocs., Ltd. Secs. Litig.*,
  740 F. Supp. 1460 (S.D. Cal. 1990) ...............................................................20

*Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*,
  56 Cal. 2d 329 (1961)......................................................................................13

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................................14, 15

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) .............................................................................7

*Wagner v. Benson*,
  101 Cal. App. 3d 27 (1980) ............................................................................17

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
  435 F.3d 989 (9th Cir. 2006) ..........................................................................24

*In re Wash. Mut., Inc. Sec. Litig.*,
  No. 2:08-MD-1919 MJP, 2010 WL 4622514 (W.D. Wash. Nov. 3, 2010).......22

*Bower v. AT&T Mobility, LLC*,
  196 Cal. App. 4th 1545 (2011) .......................................................................24

**STATUTES AND RULES**

15 U.S.C. § 77o.................................................................................................15

Cal. Corp. Code § 25501 ................................................................................14

Fed. R. Civ. Proc. 9(b) ...........................................................................*passim*

Cal. Code Civ. Proc. § 338(d) ............................................................... 12, 13

Cal. Corp. Code § 25401 ...................................................................... 14, 18

Cal. Corp. Code § 25504 ........................................................................ *passim*

Cal. Corp. Code § 25504.1 ..................................................................... *passim*

Cal. Corp. Code § 25506 ........................................................................... 7, 8

Fed. R. Civ. Proc. 8(a) ............................................................................... 6, 7

Fed. R. Civ. Proc. 12(b)(6) ................................................................... 1, 7, 9

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6)) AND FOR FAILURE TO AVER
FRAUD WITH PARTICULARITY (FRCP 9(b)); MEMO OF POINTS AND AUTHORITIES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Société Générale ("Soc Gen"), Deutsche Bank AG ("Deutsche Bank"), Barclays Bank PLC ("Barclays"), Commerzbank Aktiengesellschaft ("Commerzbank"), and Crédit Agricole Corporate and Investment Bank, f/k/a Calyon ("Calyon") (together the "Defendants") respectfully request an order dismissing MGA Entertainment, Inc.'s ("MGA") Second Amended Complaint ("SAC") for failure to state a claim upon which relief may be granted and for failure to aver fraud with sufficient particularity. Fed. R. Civ. Proc. 12(b)(6) & 9(b).

## I.   PRELIMINARY STATEMENT

MGA, a California toy company, knowingly invested in a French toy company on the verge of bankruptcy, Smoby SA ("Smoby"), back in 2007. MGA, however, failed to satisfy its commitment to the French court to submit a safeguard plan for Smoby, resulting in Smoby's liquidation. MGA now seeks to avoid the consequences of its risky purchase by shifting its losses onto third-party lenders. In its third bite at the apple, MGA now asserts five California causes of action against Defendants, all based on the allegation that Defendants hid Smoby's true financial status from MGA so that MGA would purchase Smoby and take over its outstanding debts to Defendants. (SAC.) All of these claims fail.

First, MGA had actual notice of Smoby's true financial condition no later than June 2007 and admits as much in the SAC. (SAC ¶¶ 80-83 (MGA contacted Defendants "**about June 2007**" regarding what it "**had learned [about] Smoby's true financial state**.") (emphasis added).) Such admitted "discovery" of "Smoby's true financial state" started the running of the applicable two- and three-year statutes of limitations no later than June 2007.

Second, MGA's allegations against Defendants rely on conclusory assertions of "control," "knowledge," and a "duty to disclose" that fail to meet the particularity standard mandated under Rule 9(b). These glaring deficiencies in the SAC are too

1

much for MGA to overcome and, given MGA has already amended its complaint twice — most recently at the insistence of the Court — the SAC should be dismissed with prejudice.[1]

## II.   BACKGROUND

According to MGA's SAC,[2] Smoby was plundered by its former CEO, Jean-Christophe Breuil (SAC ¶¶ 19-20, 34-35), and MGA, at Breuil's invitation, stepped into the breach to salvage Smoby from bankruptcy.  (SAC ¶¶ 48, 50.)

MGA alleges that "on or around March 19, 2007, Smoby applied for a 'safeguard procedure' in the French Commercial Court of Lons Le Saunier (the "Commercial Court"), a form of pre-bankruptcy protection under French law."  (SAC ¶ 48.)  Within days of entering bankruptcy, Breuil called MGA's president Isaac Larian "and asked if MGA was interested in acquiring Smoby."  (SAC ¶ 50.)  During this March 22, 2007 conversation, MGA was informed that Smoby was in a "pre-bankruptcy proceeding[]."  (Id.)

After expressing interest, MGA was provided with and reviewed Smoby's financial documents from Breuil, including Smoby's outstanding debts.  (SAC ¶¶ 51, 54.)  MGA was also "provided a cash flow forecast prepared by Ernst and Young," which showed Smoby achieving "an EBITDA of approximately 21.5M EUR in the 2007-2008 year."  (SAC ¶ 55.)  From a review of these materials, MGA concluded that Smoby was still a desirable acquisition, even though MGA knew Smoby "clearly had financial problems and excessive debt."  (SAC ¶ 56.)  Indeed, as early as April 4, 2007, MGA recognized that Smoby's financial distress was serious enough that it

---

[1] Dismissing without leave to amend would not hinder MGA's substantive rights because it is **still** pursuing resolution of the same issues covered by this action in France. (See Docket Entry ("DE") 35 (Forum Non Conveniens ("FNC") Mot.); Defs.' Renewed FNC Mot. (concurrently filed herewith).)

[2] While the Court must accept the well pled factual allegations of the SAC as true, it need not accept as true legal conclusions cast as factual allegations. *Daghlian v. DeVry Univ.*, 461 F. Supp. 2d 1121, 1125 (C.D. Cal. 2006).  Defendants, however, do not admit that any of the alleged facts are true.

2

1  required someone with "proper techniques" to turn Smoby around.  (SAC ¶ 56.)

2  MGA determined that it had those "proper techniques" and submitted a bid to acquire

3  Smoby.  (SAC ¶ 58.)  As part of its offer, MGA "proposed an exclusive five week due

4  diligence period to conduct [a] legal and financial review."  (*Id.*)

5       On April 5, 2007, MGA's French counsel, Jean-Paul Poulain, attended a

6  meeting at the French Interministerial Committee for Industrial Restructuring with

7  Defendants, the alleged holders of Smoby's debt.  (SAC ¶¶ 52, 59.)  While MGA's

8  French counsel was authorized to negotiate with Defendants regarding MGA's

9  acquisition of Smoby's debt, he was not authorized to make any offer in connection

10  with the purchase of Smoby.[3]  (SAC ¶ 59.)  No agreement was reached regarding the

11  acquisition by MGA of Smoby's debt at that time.  (SAC ¶ 59.)

12       MGA further alleges that, on March 27, 2007, Deutsche Bank proposed

13  converting its interest in Smoby's debt to equity and the rest of the Defendants

14  supported this offer.  (SAC ¶ 61.)  Deutsche Bank's offer was rejected, however, after

15  meeting resistance in the French press and from Smoby.  (SAC ¶¶ 61-62.)  Instead,

16  MGA's offer was approved by Smoby's employees and by the Commercial Court, and

17  was ultimately accepted by Breuil on April 6, 2007.  (SAC ¶¶ 62-63.)

18       After its offer to acquire Smoby had been approved, MGA "proceeded with its

19  due diligence."  (SAC ¶ 64.)  As part of its due diligence, MGA received information

20  from and relied upon Ernst and Young as well as the statutory auditors Grant

21  Thornton, which certified Smoby's financial statements for 2005 and 2006 as

22  accurate.  (SAC ¶ 64.)  In April 2007, MGA also had access to and reviewed

23  ---

[3] MGA exhibits a pattern of shifting the alleged role and competence of its French
24  counsel to suit its current pleadings.  For example, MGA has praised its French
counsel as "highly regarded" (Request for Judicial Notice ("RJN") Ex. 1 (Original
25  Compl.) ¶ 46), only to subsequently excoriate him as being less than a quality
advocate (DE 1, Ex. A (FAC) ¶ 46 ("MGA was unable to secure a quality law firm")).
26  The Court may properly discount such inconsistent pleadings of facts.  *Ellingson v.
Burlington N., Inc.*, 653 F.2d 1327, 1329-30 (9th Cir. 1981); *Bradley v. Chiron Corp.*,
27  136 F.3d 1317, 1324 (Fed. Cir. 1998) (Court may strike the changed allegations as
"false and sham").

28

3

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6)) AND FOR FAILURE TO AVER
FRAUD WITH PARTICULARITY (FRCP 9(b)); MEMO OF POINTS AND AUTHORITIES

financials for Smoby's subsidiaries. (SAC ¶ 65.) MGA alleges, however, that these due diligence materials were false because they "omitted the existence . . . [of] offshore companies, and the improper diversions of money."[4] (SAC ¶ 66.)

Nevertheless, MGA exercised its call option and purchased the Smoby shares on May 7, 2007 from Breuil and a trust held by Breuil; the shares were <u>not</u> purchased from, nor sold by, Defendants. (SAC ¶ 76.) In its May 7, 2007 letter exercising its call option, MGA specifically waived its prior purchase condition requiring approval of a safeguard plan for Smoby, noting instead Defendants preferred MGA first complete its purchase of Smoby's shares. (*Id.*) Smoby's shares — and control of Smoby — were transferred to MGA on May 11, 2007. (SAC ¶ 77.)

MGA's nominees to Smoby's Board of Directors were in place and oversaw Smoby's day-to-day operations by August 2007. (SAC ¶ 78.) "**After the acquisition [on May 11, 2007,] MGA soon began to realize that the true financial situation of Smoby differed wildly from the materials . . . provided to it pre-acquisition**." (SAC ¶ 80 (emphasis added).) In fact, MGA reassessed Smoby's financial forecast for 2007-2008 from an EBITDA of 21.5M EUR to a loss of 20-30M EUR. (*Id.*) According to MGA, "[i]t eventually emerged that the sales of Smoby's international subsidiaries had been materially misrepresented to MGA" and that "Smoby was in dire financial circumstances as a result of the prior fraudulent activities." (SAC ¶¶ 80-81.) No later than June 2007, MGA contacted Defendants' alleged representatives, including Constance Verroust of Soc Gen and Mark Askew of Commerzbank, "regarding what [it] had learned, and offered proposals with them . . . that were reasonable in the face of Smoby's true financial state." (SAC ¶ 83.) By September

---

[4] MGA also asserts that Defendants, "[a]s lenders" to Smoby, "had access to Smoby's true financial information" and withheld this information from MGA. (SAC ¶¶ 73-74.) According to MGA, Defendants allegedly "encouraged MGA to close the deal, assuring MGA that no formal safeguarding procedure would be necessary and they would accept a substantial discount on their loans." (SAC ¶ 75.)

27, 2007, however, Defendants allegedly "disavowed their promise to discount [Smoby's] debt."  (SAC ¶ 85.)

In October 2007, reports appeared in the French press detailing an investigation by French authorities into allegations of Breuil funneling money away from Smoby and into foreign front companies.  (RJN Exs. 2, 3.)  At the same time, the Commercial Court ordered Smoby into bankruptcy ("redressement judicaire") and in March 2008, Smoby was put into judicial liquidation with liquidation orders issued March 3 and 10, 2008.  (SAC ¶¶ 87, 90; RJN Exs. 4-5 (French Court Orders referring to March 3 and 10, 2008 orders approving sale of Smoby's assets).)

### III.   **PROCEDURAL HISTORY**

In July 2008, Defendants filed an action in France against MGA — as Smoby's successor — for the 250M+ EUR debt owed them by Smoby.  (SAC ¶ 92.)  MGA has actively availed itself of the French courts, pursuing all available remedies, including in the French Supreme Court.  Prior to this action, MGA also instigated its own litigations in France against a court-appointed administrator of Smoby, alleging he had committed a tort directed at MGA in California (collectively the "French Litigation").  (*See* DE 35 (FNC Mot.); Defs.' Renewed FNC Mot.)

Dissatisfied with the progress of the French Litigation, MGA filed this action in California Superior Court on March 28, 2011 and a subsequent First Amended Complaint ("FAC") on May 9, 2011.  (RJN Ex. 1 (Original Compl.); DE 1, Ex. A (FAC).)  Defendants then removed the case to federal court and filed a motion to dismiss for forum non conveniens.  (DE 1 (Removal Notice) & 35 (FNC Mot.).)  The Court denied the motion without prejudice, noting that the FAC was too vague to allow the Court to even reach the merits of the motion.  (*See* DE 67 & 69, RJN Ex. 6 (Oct. 24, 2011 Hr'g Tr.) at 3:24-4:7.)  Consequently, the parties stipulated to, and MGA has since filed, the SAC.  (DE 71 (Joint Stip); DE 75 (SAC).)

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6)) AND FOR FAILURE TO AVER FRAUD WITH PARTICULARITY (FRCP 9(b)); MEMO OF POINTS AND AUTHORITIES

In its SAC, MGA asserts five causes of action:  (1) First Cause of Action for liability of management principals under Cal. Corp. Code § 25504 against Soc Gen and Calyon; (2) Second Cause of Action for liability of materially assisting persons under Cal. Corp. Code § 25504.1 against all Defendants; (3) Third Cause of Action for fraudulent nondisclosure against all Defendants; (4) Fourth Cause of Action for conspiracy to defraud against all Defendants; and (5) Fifth Cause of Action for aiding and abetting fraud against all Defendants.

## IV.    ARGUMENT

In its SAC, and with an eye at avoiding dismissal for forum non conveniens, MGA attempts to anchor its claims against Defendants — all foreign entities — in California law.  MGA fails, however, to articulate a claim on which relief may be granted because (1) MGA's causes of action are time-barred and (2) MGA's causes of action sound in fraud but are not pled with sufficient particularity.

### A.    Motion To Dismiss Standard Of Review

When determining the sufficiency of a complaint under Rule 8(a), the court must determine whether or not the factual allegations in the complaint suffice to move the claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-52 (2009).  Merely asserting facts consistent with a defendant's liability or a "formulaic recitation of the elements of a cause of action" is patently insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Iqbal*, 129 S. Ct. at 1949.  Instead, the complaint must state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Twombly*, 550 U.S. at 556.  A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Where fraud claims are alleged, however, such allegations must also meet the heightened pleading requirements of Rule 9(b). *Tellabs, Inc. v. Makor Issues &*

6

1  *Rights, Ltd.*, 551 U.S. 308, 319 (2007) ("Rule 9(b) applies to all averments of fraud or

2  mistake"); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d

3  1047, 1055 (9th Cir. 2011) ("Because Rule 8(a) requires the pleading of a plausible

4  claim, . . . we hold that claims of fraud or mistake . . . must, in addition to pleading

5  with particularity, also plead plausible allegations.") (internal citations omitted).

6  **B.   MGA'S Causes Of Action Are Time-Barred**

7       "A complaint is subject to dismissal for failure to state a claim if the allegations,

8  taken as true, show the plaintiff is not entitled to relief.  If the allegations, for example,

9  show that relief is barred by the applicable statute of limitations, the complaint is

10 subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 214

11 (2007); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969

12 (9th Cir. 2010) (dismissal under Rule 12(b)(6) appropriate where claim is barred by

13 the applicable statute of limitations).  Here, the allegations of the SAC and the

14 judicially noticeable public record leave no doubt that MGA's causes of action are

15 time-barred because MGA was on notice of the alleged financial fraud at Smoby no

16 later than June 2007, more than three years prior to MGA filing this action.

17       **1.   MGA's First and Second Causes of Action Are Time-Barred Under**

18            **Cal. Corp. Code § 25506(b)'s Two-Year "Discovery" Statute of**

19            **Limitation**

20       MGA's First and Second Causes of Action must be brought within "two years

21 after the discovery by the plaintiff of the facts constituting the violation" and no more

22 than "five years after the act or transaction constituting the violation."  Cal. Corp.

23 Code § 25506(b) (statute of limitations applicable to, *inter alia*, "liability created

24 under . . . Section 25504 or Section 25504.1"); *Deveny v. Entropin, Inc.*, 139 Cal.

25 App. 4th 408, 419 (2006); *see also Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1452

26 (S.D. Cal. 1988).  These claims are based on MGA's contention that Defendants hid

27 Smoby's true financial status from MGA so that MGA would purchase Smoby and

28

7

1  take over its outstanding debts owed Defendants.  Therefore, MGA's claims must

2  have been brought within two years of "discovery" of Smoby's true financial status.

3           **(a)**     **Inquiry Notice Triggers the Accrual of Causes of Action Under**

4              **§§ 25504 and 25504.1**

5        The two-year statute of limitation for Cal. Corp. Code §§ 25504 and 25504.1

6  begins to run once the plaintiff has been put on inquiry notice of the facts constituting

7  the violation of which the plaintiff complains.  *See, e.g., Deveny*, 139 Cal. App. 4th at

8  423 ("We conclude that inquiry notice is sufficient to trigger the running of the

9  limitations period under section 25506."); *see also Kramas v. Sec. Gas & Oil Inc.*, 672

10  F.2d 766, 770 (9th Cir. 1982) (inquiry notice sufficient under Cal. Corp. Code

11  § 25506); *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates*, 636 F. Supp.

12  1138, 1170 (C.D. Cal. 1986).

13        "Inquiry notice arises in a securities action when circumstances suggest to an

14  investor of ordinary intelligence the possibility that he has been defrauded." *Deveny*,

15  139 Cal. App. 4th at 428; *see also Debro v. L.A. Raiders*, 92 Cal. App. 4th 940, 950

16  (2001) ("inquiry notice" is triggered when the aggrieved party learns of "facts that

17  would lead a reasonably prudent person to suspect fraud").  Often, such circumstances

18  are referred to as "storm warnings." *Deveny*, 139 Cal. App. 4th at 428.  "Storm

19  warnings may be found whenever there are any financial, legal, or other data, such as

20  public disclosures in the media about the financial condition of the corporation that

21  would tend to alert a reasonable person to the likelihood of fraud." *Id.*

22        The appearance of "storm warnings" gives rise to a duty of inquiry on the part

23  of a plaintiff. *Id.*  If no inquiry is made, knowledge is imputed to the plaintiff as of the

24  date of the "storm warnings." *Id.*  If, however, the plaintiff makes some inquiry,

25  knowledge is imputed when the exercise of reasonable diligence would have revealed

26  the fraud. *Id.*  While a defendant bears the burden to demonstrate when "storm

27

28

                  8

warnings" appeared, the burden shifts to the plaintiff to demonstrate reasonable inquiry or what reasonable inquiry would have revealed. *Id.* at 429.

### (b)   MGA's Admitted "Storm Warnings"

MGA's **allegations in the SAC confirm that MGA had actual notice of the alleged fraud** — and at a minimum inquiry notice of facts that would lead a reasonably prudent person to suspect fraud — **by June 2007.**

MGA states unequivocally that by June 2007 "it became clear that Smoby was in dire financial circumstances **as a result of the prior fraudulent activities**" and MGA contacted Defendants "**regarding what it had learned . . . in the face of Smoby's true financial state**." (SAC ¶¶ 82-83 (emphasis added).)  Such an admission establishes categorically that MGA was on actual notice no later than June 2007 of the alleged fraudulent activities at Smoby, and this actual notice triggered the statute of limitations. *See Deveny*, 139 Cal. App. 4th at 423.

Moreover, the public record and MGA's own allegations demonstrate that sufficient "storm warnings" existed between 2007 and 2008 to put MGA on at least inquiry notice.  These "storm warnings" included, *inter alia*:

- March 19, 2007:  Smoby was placed into a French "safeguarding procedure" (pre-bankruptcy procedure).  (SAC ¶ 48.)

- April 4, 2007:  MGA acknowledged it was "aware of the Smoby Group's precarious financial position." (SAC ¶ 58; RJN Ex. 7 (April 4, 2007 Letter).)[5]

- September 2007:  After acquiring Smoby, MGA received reports of Smoby's operations indicating losses "staggeringly larger than represented in the financial statements," indicating "the true financial situation of Smoby differed wildly from the materials . . . provided to [MGA] pre-acquisition." (SAC ¶ 80.)  "MGA learned about, among other things, the improper withdrawals of monies by Messrs. Breuil and Bondier, and the improper accounting at Smoby Espana and Eurotoys." (*Id.*)  **Even if the earlier financials MGA reviewed were fraudulent and not "storm warnings,"**

---

[5] Documents referenced in a complaint but not attached may be attached to a Rule 12(b)(6) motion to show the documents do not support a plaintiff's claim. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 & n.4 (9th Cir. 1998) (incorporation by reference doctrine also includes documents deliberately not mentioned in the complaint).

**these later ones, with their "staggering" and "wildly differing results," certainly were.** Any reasonable person would have suspected fraud at this point, if not sooner.

- September 2007: Smoby's forecasted performance plummeted from a previous forecast from Ernst and Young of a 21.5M EUR profit (SAC ¶ 55), to a 20-30M EUR loss. (SAC ¶ 80.)

- October 2007: Articles in French press detailed the criminal investigation of Breuil, including allegations that he had funneled money from Smoby through foreign front companies. (RJN Exs. 2, 3 (Oct. 19, 2007 *Jura Libertaire* & Oct. 22, 2007 *Boursier* articles).)

- October 2007: Smoby was ordered into bankruptcy. (SAC ¶ 87.)

- March 2008: The Commercial Court issued liquidation orders for Smoby on March 3 and 10, 2008. (SAC ¶ 90; RJN Exs. 4, 5.)

All this occurred more than two years before MGA filed its Original Complaint.

> **(c)** **"Storm Warnings" Put MGA On Notice No Later Than June 2007, Starting the Accrual of the Two-Year Statute of Limitations**

The allegations in the SAC make it indisputable that MGA had actual notice of Smoby's alleged "prior fraudulent activities" no later than June 2007. (SAC ¶ 82.) Shortly after acquiring Smoby in May 2007, MGA acknowledges it (1) received reports showing "staggering" losses not in line with its prior projections, (2) learned of improper withdrawals of cash by Messrs. Breuil and Bondier, (3) learned of improper accounting at subsidiary units, (4) learned that "[m]illions of dollars in turnover indentified as 'final sales' were intercompany transfers made at cost or even a loss," (5) learned that "millions in debt owed by subsidiaries . . . had not been reported," and (6) realized by June 2007 "that Smoby was in dire financial circumstances *as a result of the prior fraudulent activities*." (SAC ¶¶ 80-83 (emphasis added).) MGA concedes that once it had acquired Smoby and was in "control" of Smoby's records and day-to-day operations by August 2007 (SAC ¶¶ 78, 80), it discovered "that the true financial situation of Smoby differed wildly from the materials . . . provided to it pre-acquisition." (SAC ¶ 80.) These admissions go directly to when MGA "discovered" the misrepresentations on which it bases its

10

claims against Defendants and triggers the statute of limitations clock.[6]  *See, e.g., In re Infonet Servs. Sec. Litig.*, 310 F. Supp. 2d 1106 (C.D. Cal. 2003) (granting with prejudice motion to dismiss where "storm warnings" provided plaintiffs with inquiry notice triggering the running of the statute of limitations before plaintiffs filed their claim); (SAC ¶¶ 80-83).  MGA therefore only had two years in which to bring an action under Cal. Corp. Code § 25504 or 25504.1, making the time-bar date for any such claim June 2009.  MGA failed to file the instant action until March 28, 2011.

Furthermore, the numerous "storm warnings" listed *supra* clearly establish MGA had at least inquiry notice of the alleged fraudulent activities and thereby had a duty, as the acquirer of Smoby, to investigate Smoby's true financial state.  *See In re Infonet Servs. Sec. Litig.*, 310 F. Supp. 2d 1106.  Indeed, from March 2007 through October 2007, MGA was always aware that Smoby was in bankruptcy, was in debt, and that its financial position was deteriorating rapidly.  By October 2007, the French press was broadcasting the investigation by French authorities into Breuil's alleged misappropriation and diversion of funds from Smoby.  (RJN Exs. 2, 3.)  Any one of these "storm warnings," let alone all of them, would place a prudent person on notice that Smoby was financially in trouble, probably due to internal fraud, triggering a duty to investigate.  *See, e.g., Stichting Pensionenfonds ABP v. Countrywide Fin. Corp.*, No. 10-CV-07275 MRP (MANx), 2011 WL 3558173 at *7-9, --- F. Supp. 2d ---- (C.D. Cal. Aug. 9, 2011).

Nor may MGA avoid the consequences of its allegations in the SAC by asserting that, even though it had access to and control over all of Smoby's records as of the date it acquired Smoby — May 11, 2007 (SAC ¶ 77), it should not be credited with "discovery" of the alleged fraud until a much later date.  Such a position is

---

[6] MGA also cannot avoid the "storm warnings" of the Commercial Court ordering Smoby's liquidation on March 3 and 10, 2008.  (SAC ¶ 90; RJN Exs. 4, 5.)  It strains credulity that a prudent person would not be put on notice that an acquisition was possibly fraudulently induced where the acquisition is forced into liquidation within mere months of being acquired.  *See Kramas*, 672 F.2d at 771.

1   contrary to MGA's explicit admissions of discovery by June 2007 (SAC ¶¶ 80-83),

2   and is contrary to MGA's allegations that "access to Smoby's true financial

3   information" is enough to provide someone with knowledge about "Smoby's financial

4   situation." (*See, e.g.*, SAC ¶ 73.)

5       MGA therefore had sufficient notice by June 2007 to start the accrual of its

6   claims against Defendants under Cal. Corp. Code §§ 25504 and 25504.1, rendering its

7   First and Second Causes of Action time-barred.  These causes of action should,

8   accordingly, be dismissed for failing to state a claim.  *See, e.g.*, *Stichting*

9   *Pensionenfonds ABP*, 2011 WL 3558173, at *7 ("A motion to dismiss is appropriate

10  where the complaint, documents referred to therein, and public press reports yield no

11  other plausible inference than that a reasonably diligent plaintiff should have

12  discovered facts sufficient to state a claim more than two years before suit was

13  actually filed."); *see also In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d 1100, 1108

14  (C.D. Cal. 2008) (vacated and remanded on other grounds by *In re Am. Funds Sec.*

15  *Litig.*, 395 Fed. Appx. 485 (9th Cir. 2010)).

16          **2.   MGA's Third, Fourth, and Fifth Causes of Action For Fraud**

17                 **Under California Law Are Time-Barred**

18      MGA's Third, Fourth, and Fifth Causes of Action for fraud, conspiracy to

19  defraud, and aiding and abetting fraud are subject to a three-year statute of limitations.

20  Cal. Code Civ. Proc. § 338(d); *Miller v Bechtel Corp.*, 33 Cal. 3d 868, 873-74 (1983).

21  These fraud claims are also based upon MGA's allegation that Defendants

22  purposefully withheld Smoby's true financial status from MGA.

23          **(a)   Inquiry Notice Triggers the Accrual of California Fraud**

24                 **Causes of Action Under Cal. Civ. Proc. Code § 338(d)**

25      California fraud claims must be brought no later than three years from the date

26  of discovery.  Cal. Civ. Proc. Code § 338(d).  Courts interpret discovery in the context

27  of fraud "to mean not when the plaintiff became aware of the specific wrong alleged,

28                                            12

1  but when the plaintiff suspected or should have suspected that an injury was caused by

2  wrongdoing.  The statute of limitations begins to run when the plaintiff has

3  information which would put a reasonable person on inquiry." *Kline v. Turner*, 87

4  Cal. App. 4th 1369, 1374 (2001); *see Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98

5  (1999); *Miller*, 33 Cal. 3d at 874-75; *Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 56

6  Cal. 2d 329, 343 (1961).

7  　　The Ninth Circuit also applies this inquiry notice to California fraud causes of

8  action.  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir.

9  2008) ("So long as there is a reasonable ground for suspicion, the plaintiff must go out

10  and find the facts; she cannot wait for the facts to find her."); *Hamilton Materials, Inc.

11  v. Dow Chem. Corp.*, 494 F.3d 1203, 1206-07 (9th Cir. 2007).

12  　　　　**(b)**　　**MGA's Admitted "Storm Warnings" Put It On Notice No**

13  　　　　　　　**Later Than June 2007, Starting the Accrual of the Three-Year**

14  　　　　　　　**Statute of Limitations for Its Fraud Claims**

15  　　As set forth above, MGA admits in the SAC it was on actual notice — and at a

16  minimum inquiry notice — no later than June 2007.  (SAC ¶¶ 80-83.)  The statute of

17  limitations for MGA's Third, Fourth, and Fifth Causes of Action for fraud therefore

18  expired three years later in June 2010.  MGA, however, did not file this action until

19  March 28, 2011, rendering these three causes of action time-barred.[7]

20  **C.**　　**MGA Fails To Plead With Sufficient Particularity**

21  　　Under Rule 9(b), "a party must state with particularity the circumstances

22  constituting fraud."  Fed. R. Civ. Proc. 9(b); *see also Rubke v. Capitol Bancorp Ltd.*,

23  551 F.3d 1156, 1161 (9th Cir. 2009) ("the complaint must set forth what is false and

24  misleading about a statement, and why it is false"); *Moore v. Kayport Package*

25

26  [7] Even if the later dates of Smoby's ordered liquidations are used as the date of accrual
for MGA's fraud causes of action (SAC ¶ 90; RJN Exs. 4, 5), MGA's fraud claims

27  would still be time-barred, having been filed eighteen days after the expiry of the
applicable three-year statute of limitations. Cal. Code Civ. Proc. § 338(d).

28  　　　　　　　　　　　　　　　　　　13

1   *Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("Rule 9(b) requires that the pleader

2   state the time, place, and specific content of the false representations as well as the

3   identities of the parties to the misrepresentation.").

4        Here, MGA's five causes of action are either rooted in fraud (Second - Fifth

5   Causes of Action (SAC ¶¶ 108-161)), or sound in fraud (First Cause of Action (SAC

6   ¶¶ 98-107)), and are therefore subject to Rule 9(b)'s heightened pleading standard.

7   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ("[T]he

8   plaintiff may allege a unified course of fraudulent conduct and rely entirely on that

9   course of conduct as the basis of a claim.  In that event, the claim is said to be

10  'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole

11  must satisfy the particularity requirement of Rule 9(b)."). The fact that MGA only

12  asserts state law causes of action is of no consequence, because Rule 9(b) applies

13  equally to state law causes of action. *Id.* at 1103 ("Rule 9(b)'s particularity

14  requirement applies to state-law causes of action.").  Each is addressed *seriatim*.

15               **1.   MGA's First Cause of Action (Cal. Corp. Code § 25504) Fails**

16                      **To Establish The Requisite Control**

17       MGA only asserts its First Cause of Action for control-person liability under

18  Cal. Corp. Code § 25504 against defendants Soc Gen and Calyon.  (SAC ¶¶ 98-107.)

19  Section 25504 creates joint and several liability for "[e]very person who directly or

20  indirectly controls a person liable under Section 25501 . . . unless the other person

21  who is so liable had no knowledge of or reasonable grounds to believe in the existence

22  of the facts by reason of which the liability is alleged to exist."  Cal. Corp. Code

23  § 25504.  Section 25501 creates individual liability for anyone who violates Cal.

24  Corp. Code § 25401, which makes it unlawful "for any person to offer or sell a

25  security" in California "by means of any written or oral communication which

26  includes an untrue statement of a material fact or omits to state a material fact

27

28

14

1   necessary in order to make the statements made . . . not misleading." Cal. Corp. Code

2   §§ 25401, 25501.

3        MGA must therefore plead (1) that Soc Gen and Calyon each separately

4   "controlled" Smoby (and Breuil), (2) that a material misrepresentation was directed to

5   MGA in California by Smoby in conjunction with offering to sell shares in Smoby,

6   and (3) that Soc Gen and Calyon each separately had reasonable grounds to know of

7   the material misrepresentation. *See Bains v. Moores*, 172 Cal. App. 4th 445, 476-79

8   (2009).  MGA fails in pleading these elements with requisite particularity.[8]

9        MGA must plead facts with particularity "from which an inference can be

10  drawn that the defendant had the power to control the general affairs of the entity

11  primarily liable at the time the entity violated the securities laws . . . [and] had the

12  requisite power to directly or indirectly control or influence the specific corporate

13  policy which resulted in the primary liability." *Hellum v. Breyer*, 194 Cal. App. 4th

14  1300, 1317 (2011) ; *see also Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th

15  Cir. 2000) ("Control" requires pleading allegations concerning "the defendant's

16  participation in the day-to-day affairs of the [primary violator] and the defendant's

17  power to control [the primary violator's] corporate actions.").[9]  Indeed, MGA must

18  plead facts showing "the times, dates, and places that such control allegedly

19  occurred." *In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL 736802,

20  at *15 (C.D. Cal. March 18, 2009).

---

21  [8] It is irrelevant that fraud is not a required element under Cal. Corp. Code § 25504
22  because MGA specifically incorporates by reference its common allegations of fraud
    asserted throughout the SAC, implicating Rule 9(b)'s heightened particularity
    standard.  (SAC ¶ 98); *see Vess*, 317 F.3d at 1103 ("In cases where fraud is not a
23  necessary element of a claim, a plaintiff may choose nonetheless to allege in the
    complaint that the defendant has engaged in fraudulent conduct. . . .  In that event, the
24  claim is said to be 'grounded in fraud . . . .'"); *see also Kainos Labs., Inc. v. Beacon
    Diagnostics, Inc.*, No. C-97-4618 MHP, 1998 WL 2016634, at *16 (N.D. Cal. Sept.
25  14, 1998).

26  [9] In expounding the requirements for "control" under § 25504, the Court may properly
    look towards analogous federal control-person liability statutes. *Durham v. Kelly*, 810
27  F.2d 1500, 1505 (9th Cir. 1987); *see also Kamen v. Lindly*, 94 Cal. App. 4th 197, 203
    (2001).

28

15

Here, MGA's allegations of "control" never reach the threshold of establishing that Soc Gen and Calyon each "had the power to control the general affairs" and the particular corporate policy of Smoby (or Breuil, let alone any involvement in the actual sale of Smoby shares to MGA). Rather, the SAC only demonstrates that Soc Gen and Calyon had routine, commercial borrower-lender relationships with Smoby. MGA's inadequate "control" allegations include:

- Soc Gen had a longstanding banking relationship with the Breuil family. (SAC ¶ 103(a).)
- Soc Gen had a 10.3% equity stake in Smoby and 6.6% of its voting rights through a subsidiary. (SAC ¶ 103(b).)
- Soc Gen "orchestrat[ed]" Smoby's 2005 takeover of a rival company, Berchet, in which Soc Gen held debt. (SAC ¶¶ 18, 23-24, 103(c).)
- Soc Gen and Calyon's rights as lenders and requirements under the September 6, 2005 Granting of Credit Agreement and the October 30, 2006 Bridge Loan (the "Loan Agreements"). (SAC ¶¶ 31, 39-41, 66, 103(d)-(j), 103(l)-(m).)
- Soc Gen and Calyon's extension of credit to Smoby despite its overly indebted and insolvent state. (SAC ¶ 103(k).)
- Soc Gen and Calyon allowing Breuil to hold them out as "partners" in an October 19, 2006 press statement. (SAC ¶ 103(n).)

<u>First</u>, conclusory allegations about a prior banking relationship are insufficient. MGA never asserts specific facts to establish Soc Gen had power over Smoby's day-to-day general affairs and never asserts who, what, when, where, or how Soc Gen's and Breuil's alleged "longstanding" relationship provided Soc Gen "control."

<u>Second</u>, mere allegations of ownership of a minority stake or minority share of voting rights does not establish control. Indeed, courts have held lenders with even larger equity stakes and voting rights than what is alleged here not to be "controlling persons." *See, e.g.*, *Metge v. Baehler*, 762 F.2d 621, 630-32 (8th Cir. 1985) (lender to primary violator held not to be a "controlling person" despite the fact that it was the primary lender, had the ability to foreclose on the loans, held 17-18% of the borrower's stock, and held a controlling block of its subsidiaries' stock). Nor are

16

1   there detailed allegations about what votes took place, when, and where that would

2   have granted Soc Gen or Calyon power to direct Smoby's operations.

3      Third, the terms and conditions MGA points to in the Loan Agreements are

4   ubiquitous lender requirements found in typical loan agreements.  The plain intent

5   (and limit) of such requirements is to safeguard the lender's investment and debt

6   position, not to provide the lender with power over the general or day-to-day affairs of

7   the borrower — nor was such power conveyed here.  *See, e.g., Wagner v. Benson*, 101

8   Cal. App. 3d 27, 35 (1980) ("Normal supervision of the enterprise by the lender for

9   the protection of its security interest in loan collateral is not 'active participation'" and

10  does not take the lender beyond its usual domain.).  Indeed, more than a lender-

11  borrower relationship must be established for the lender to be treated as a controlling

12  person of the borrower.  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151,

13  1162-63 (9th Cir. 1996); *see also Metge*, 762 F.2d 621; *Schlifke v. Seafirst Corp.*, 866

14  F.2d 935, 948-50 (7th Cir. 1989) (bank that was lender to primary violator was not a

15  "controlling person" despite fact it had made extensive loans to the borrower and had

16  directed the borrower to sell certain assets to meet its loan obligations).

17     Moreover, MGA relies solely on the provisions of the Loan Agreements to

18  establish Soc Gen and Calyon's supposed "control" over Smoby.  Mere access to

19  financial records and statements, without allegations of involvement in the preparation

20  of those materials, is not sufficient to establish control.  *See Paracor Fin., Inc.*, 96

21  F.3d at 1163-64.; *see also Burnstein v. Graves*, No. C 92-3623 FMS, 1994 WL

22  792541, at *5 (N.D. Cal. Dec. 20, 1994) ("The claim that outside professionals control

23  primary violations by participating in the disclosure process has been uniformly

24  rejected.").  While MGA alleges Soc Gen and Calyon had "access" to Smoby's

25  financials under the terms of the Loan Agreements, it never alleges with particularity

26  the who, what, when, where, or how this access was used, or how simple access

27  equated to active participation in directing the alleged "cooking" of Smoby's books.

28                                              17

<u>Fourth</u>, MGA offers no particular factual allegations about how the extension of credit to Smoby, even if in an insolvent state, provided Soc Gen or Calyon with power over Smoby's corporate policies and day-to-day decisions.  Indeed, MGA acknowledges there was only an extension of credit, not a conversion of credit into equity ownership.  In fact, the agreement between Smoby and its lending syndicate to extend a bridge loan to Smoby was ratified by the Commercial Court.  (RJN Ex. 8.) Nor does MGA provide facts supporting the existence of a "partnership" between Soc Gen, Calyon, and Smoby other than a bald assertion made in a press statement.  No details of when, where, or how, the alleged "partnership" was formed are offered.

### 2. **MGA's Second Cause of Action (Cal. Corp. Code § 25504.1) Fails To Assert "Material Assistance . . . With Intent To Defraud" By Defendants**

MGA's Second Cause of Action is brought against all Defendants and asserts an "aiding and abetting" claim under Cal. Corp. Code § 25504.1.  Under § 25504.1, any person who "materially assists" in the violation of § 25401 "with intent to deceive or defraud," may be held liable.  Cal. Corp. Code § 25504.1.  Because this claim is rooted in fraud, it too must be pled with particularity.  *See Kainos Labs.*, 1998 WL 2016634, at *16.

#### (a) **MGA's Allegations Of Defendants' "Material Assistance" Fail**

MGA repeats the same ineffective allegations regarding "control" for its claim of "material assistance" (SAC ¶ 113 (a), (c)-(d)), in addition to a few additional (but still ineffective) allegations against all Defendants.  The additional "material assistance" allegations are:

- All Defendants failed to disclose to MGA (or the governmental authorities) their alleged knowledge of Smoby's fraud.  (SAC ¶ 113(b).)
- Defendants Deutsche Bank, Commerzbank, and Barclay's acquired Smoby's debt at cents on the dollar with the intent of dumping Smoby on an investor. (SAC ¶ 113(e).)

18

- Defendants (and their alleged representative, EOS Partners) represented falsely that they would work with MGA in acquiring Smoby and would discount Smoby's debt.  (SAC ¶ 113(f)-(h).)

- Defendants' pursuit of payment of Smoby's debt.  (SAC ¶ 113(i).)

MGA's assertions, however, fail to establish "material assistance."

First, MGA's allegation that Defendants failed to disclose information to MGA is wrong as a matter of law and is without factual support.  Under California law, a duty to disclose is a fiduciary duty that only arises from a "fiduciary" or "confidential relationship." *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1160-62 (2005).[10]  A lender is not a fiduciary of, nor is it in a confidential relationship with, its borrowers, and therefore has no duty to disclose.  *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (1989) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such."); *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998) (no fiduciary relationship between bank-lender and depositor-borrower and bank is not liable for misappropriation of trust funds by trustee).

Here, MGA was not even in privity with Defendants as borrower, but was one-step removed as a potential (and actual) arms-length acquirer of the lenders' borrower, further straining the imposition of an alleged duty to disclose.  *See Persson*, 125 Cal. App. 4th at 1162 ("In the absence of evidence of any similar vulnerability or incapacity, we decline to extend the scope of fiduciary obligations to an arms-length negotiation for the sale of shares in a corporate enterprise."); *see also Schneberger v. Wheeler*, 859 F.2d 1477, 1480-81 (11th Cir. 1988) (bank had no duty to disclose precarious financial condition of oil and gas limited partnership); *Seattle-First Nat'l Bank v. Carlstedt*, 678 F. Supp. 1543, 1550 (W.D. Okla. 1987) ("Under the federal securities laws, a lender owes no fiduciary or other duty to borrowers or other parties who invest in securities.").

---

[10] A "confidential relationship" requires a vulnerable party be in the power of a stronger party, and that empowerment was solicited or accepted by the stronger party and prevents the vulnerable party from protecting itself. *Persson*, 125 Cal. App. 4th at 1161.

19

Nor does the SAC allege facts that would infer the creation of a fiduciary or confidential relationship between Defendants and MGA. *See Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 740 (2010) ("[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."); *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 n.6 (1991) ("[A] financial institution engaged in its conventional role as a lender of money is not liable to a third party for any financial failure of that which is financed."); *Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal. App. 3d 318, 334 (1991) ("A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower.").

Additionally, MGA never alleges Defendants were involved in preparing Smoby's allegedly fraudulent financial statements, only that Defendants had "access" to them, which MGA did as well, and which is insufficient as a matter of law. *In re U.S. Grant Hotel Assocs., Ltd. Secs. Litig.*, 740 F. Supp. 1460, 1465-66 (S.D. Cal. 1990) ("mere receipt and review" of documents does not constitute "material assist[ance]"). As described above, MGA had actual notice of fraud at the time but failed to act until the statute of limitations had run.

Second, allegations that Defendants represented they would discount Smoby's debt are not pled with sufficient detail for each Defendant.[11] *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."); *Moore*, 885

---

[11] MGA's allegations regarding its belief that Smoby's debt would be discounted by Defendants is refuted by the public record in France, where MGA represented to the AMF (the French SEC) that it had not reached an agreement with Defendants to discount Smoby's debts as late as May 25, 2007 — which was after MGA had acquired Smoby. (RJN Ex. 9 (May 25, 2007 AMF public securities notification).)

F.2d at 541-42 (must allege the specific time, place, and defendant who made each alleged misrepresentation with particularity).  Here, MGA fails to separately link each Defendant with a specific misrepresentation, including the date, location, presenter, and method of communication, other than the conclusory assertion that Defendants would work with MGA and would consider discounting Smoby's outstanding debt — all allegedly made by Defendants' "common" representative, EOS Partners (SAC ¶ 53), for which no facts establishing the representative relationship are pled.[12]  *See Swartz*, 476 F.3d at 764-65; *see also Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 59 n.15 (1988) ("assurances to work things out amount to no more than promises to continue negotiations looking to a future agreement").

Third, Defendants' actions to enforce their loan agreements with Smoby <u>after</u> MGA acquired Smoby cannot be evidence of "materially assisting" Smoby in selling itself to MGA because such enforcement post-dates the acquisition at issue and is completely appropriate. *See Nymark*, 231 Cal. App. 3d at 1093 n.1 ("A commercial lender is entitled to pursue its own economic interests in a loan transaction."); *Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 436 (2010) ("A commercial lender pursues its own economic interests in lending money."); *Sierra-Bay Fed. Land Bank Ass'n*, 227 Cal. App. 3d at 334-35 ("[A] commercial lender is privileged to pursue its own economic interests and may properly assert its contractual rights.").  Because MGA does not allege facts establishing Defendants' "material assistance," its § 25504.1 claim fails. *See Burnstein*, 1994 WL 792541, at *6-7.

---

[12] Indeed, MGA pleads no facts demonstrating how EOS Partners, the alleged "agent" of Defendants who allegedly "oversaw the provision of false financial material to MGA," was ever in a legally cognizable agency relationship with Soc Gen. (SAC ¶¶ 44-45, 52-53, 57.)  Such conclusory allegations of agency in a fraud-based claim are inadequate. *See Swartz*, 476 F.3d at 764-65; *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911 (C.D. Cal. 2011) ("Plaintiffs may not rest on legal conclusions regarding agency that are cast as factual allegations.").

21

1

**(b)** **MGA's Allegations Of Defendants' "Intent To Defraud" Fail**

2   Allegations of intent to defraud must be pled with particularity under Rule 9(b).

3   *Kainos Labs Inc.*, 1998 WL 2016634, at *16; *In re Wash. Mut., Inc. Sec. Litig.*, No.

4   2:08-MD-1919 MJP, 2010 WL 4622514, at *6 (W.D. Wash. Nov. 3, 2010).  MGA

5   fails to meet its pleading burden, offering only the conclusory allegation that

6   Defendants "undertook these acts with intent to deceive or defraud" (SAC ¶ 115), and

7   offering as support the bald assertions that Defendants were looking for an investor on

8   which to dump Smoby's debt.  No detailed facts supporting this inference, however,

9   are alleged.

10   **3.** **MGA's Fraudulent Nondisclosure Claim Fails**

11   To state a claim for fraudulent nondisclosure under California law, MGA must

12   allege:  "(1) a misrepresentation [or nondisclosure], (2) with knowledge of its falsity

13   [or scienter], (3) with the intent to induce another's reliance on the misrepresentation,

14   (4) justifiable reliance, and (5) resulting damage."  *Conroy v. Regents of Univ. of Cal.*,

15   45 Cal. 4th 1244, 1255 (2009); *see Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th

16   951, 974 (1997); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir.

17   2009).

18   Here, MGA raises the same conclusory assertions discussed above that

19   Defendants had knowledge of Breuil's fraud at Smoby and purposefully did not

20   disclose this knowledge to MGA with the intent for MGA to purchase Smoby.  (*E.g.*,

21   SAC ¶ 38 ("On information and belief, the Original Lenders were provided definitive

22   confirmation that Smoby's financial data . . . was fraudulent.").)  MGA never

23   establishes the link, however, between its allegations of Breuil's embezzlement at

24   Smoby with each named Defendant gaining specific knowledge of these alleged acts.

25   Rather, MGA relies on broad allegations of "[a] longstanding banking relationship,"

26   the offering of loans in general, and typical lender provisions in the Loan Agreements

27   that protect lenders in order to infer Defendants' alleged knowledge.  (SAC ¶ 123(a)-

28

22

1   (j).)[13]  The shortcomings of such generic allegations have been addressed *supra*, and

2   these allegations do not support the inference of actual knowledge.

3          Moreover, as part of its fraud by nondisclosure claim, MGA must also plead

4   facts with particularity that establish that Defendants each owed MGA an affirmative

5   duty to disclose in the first place.  *See Rutledge v. Boston Woven House & Rubber*

6   *Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (fraud based on passive conduct or a failure to

7   disclose requires allegations that a defendant owed an affirmative duty to disclose to

8   the plaintiff).  Defendants, as lenders, typically owe no such duty to their borrowers.

9   *E.g.*, *Price*, 213 Cal. App. 3d at 476.  Here, when the alleged failure to disclose

10   occurred, MGA was not a borrower of Defendants nor were Defendants a party to the

11   agreement between MGA and Smoby.  (SAC ¶¶ 75-76 (acknowledging MGA

12   completed its acquisition of Smoby without finalizing an agreement with Defendants

13   regarding Smoby's debt).)  MGA therefore fails to allege facts sufficient to establish

14   that each named Defendant owed it a duty to disclose anything suspicious about

15   Smoby's financials, and without such a duty, no cause of action exists.  *See Casey v.*

16   *U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1152 (2005) ("[T]he complaint must

17   allege the defendant's actual knowledge of the specific breach of fiduciary duty for

18   which it seeks to hold the defendant liable.  The [plaintiff's] general allegation the

19   banks knew the [depositors] were involved in 'wrongful or illegal conduct' does not

20   constitute sufficient pleading that the banks had actual knowledge [of the specific

21   underlying fraudulent act].");  *see also Rutledge*, 576 F.2d 248 (affirming dismissal);

22   *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 245-46 (S.D.N.Y. 2010) (fraud

23   claim dismissed for failure to allege "facts demonstrating [defendant] had a duty to

24   disclose more detailed information"); *Kane v. Madge Networks N.V.*, No. C–96–

25   20652–RMW, 2000 WL 33208116, at *8-9 (N.D. Cal. May 26, 2000) (Fraud claim

26

27   [13] MGA asserts the loans provided Smoby violated California, U.S., and French law, (SAC ¶¶ 37, 123(g)), but offers no factual or legal support for this conclusory charge.

28

23

1  dismissed where "plaintiffs fail[ed] to plead any facts that would give rise to a duty to
2  disclose material nonpublic information.").

3      Nor does the SAC allege reasonable reliance with sufficient particularity. *See,*
4  *e.g., Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (2011).

5      ## 4.    MGA's Conspiracy Fraud Cause Of Action Fails

6      Under California law, "[t]o state a cause of action for conspiracy, the complaint
7  must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or
8  acts done pursuant thereto, and (3) the damage resulting from such act or acts."
9  *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1236 (1993).  Where the
10 alleged wrongful act or acts of the conspiracy are based in fraud, the elements of the
11 wrongful fraudulent acts as well as the existence of the conspiracy must be pled with
12 particularity.  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 990 (9th
13 Cir. 2006).

14     Here, MGA's allegations fail to establish a conspiratorial agreement to commit
15 fraud, or the fraud itself as explained above, with particularity.  Nowhere in the SAC
16 does MGA assert facts regarding the what, when, where, or how the alleged
17 conspiracy agreement between Defendants was formed.  Instead, the SAC offers
18 sweeping conclusory statements that Defendants "participate[ed] in a scheme," that
19 they "developed a plan," and that there was a "conspiracy" amongst Defendants.
20 (SAC ¶¶ 14, 39, 139.)  Such bald allegations are patently deficient to establish "the
21 formation and operation of the conspiracy" to defraud.  *Cellular Plus, Inc.*, 14 Cal.
22 App. 4th at 1236; *Wasco Prods., Inc.*, 435 F.3d at 990.

23     ## 5.    MGA's Aiding and Abetting Fraud Claim Fails

24     In California, to plead a claim for aiding and abetting fraud, MGA must allege
25 (a) an underlying fraud; (b) "actual knowledge" of that fraud; and (c) that Defendants
26 provided "substantial assistance" or encouragement to another in accomplishing the
27 fraud.  *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 992-95 (9th Cir. 2006); *see*

28                                    24

1   also *Casey*, 127 Cal. App. 4th at 1145 ("[A]iding and abetting depends on proof the

2   defendant had actual knowledge of the specific primary wrong the defendant

3   substantially assisted."). MGA's aiding and abetting fraud claim is therefore merely a

4   derivative claim that fails along with MGA's primary claim for fraud. *Richard B.*

5   *LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574 (2005); *see also Jennings v.*

6   *Wash. Mut. Bank*, No. CIV S-10-2126-FCD-CMK, 2011 WL 775861, at *4 (E.D. Cal.

7   Feb. 28, 2011).

8          In addition, MGA fails to plead "actual knowledge," relying instead on its

9   conclusory allegations of "access" to Smoby's financials, which are based entirely on

10   the Loan Agreement provisions. Indeed, MGA fails to specify, <u>for each named</u>

11   <u>Defendant</u>, (i) the date each Defendant learned of the alleged fraud perpetrated by

12   Breuil, (ii) which specific financial record was reviewed by each Defendant that

13   provided them this actual knowledge, and (iii) how each Defendant's review of a

14   specific document or other specific act imputed actual knowledge of fraud, when

15   MGA's own lengthy review of all of Smoby's financial records during its due

16   diligence period did not. MGA fails to articulate facts in support of its inference that

17   Defendants knew of Breuil's alleged looting of Smoby and therefore fails to plead

18   "actual knowledge." *Casey*, 127 Cal. App. 4th at 1152.

19          Moreover, the Fifth Cause of Action parrots the Second Cause of Action, as

20   both rely on the same allegations to establish "material" or "substantial" assistance,

21   (*compare* SAC ¶¶ 108-116, *with* SAC ¶¶ 149-158), and fails for the same reasons.

22                                    **V.    CONCLUSION**

23          For these reasons, and because MGA has already amended its complaint twice,

24   the SAC should be dismissed with prejudice and without leave to amend.

25

26

27

28

1

2

3

Filing counsel hereby attests that concurrence in the filing of this document has been obtained from the other signatories of this document.

4

5

Dated:  December 23, 2011

HUGHES HUBBARD & REED LLP

6

7

8

By:  /s/ Rita M. Haeusler
        Rita M. Haeusler
        Attorneys for Defendant
        Société Générale

9

-and-

10

Dated:  December 23, 2011

WEIL, GOTSHAL & MANGES LLP

11

12

13

14

15

16

By:  /s/ Christopher J. Cox
        Christopher J. Cox (Bar No. 151650)
        201 Redwood Shores Parkway
        Redwood Shores, CA 94065
        Telephone: (650) 802-3000
        Attorneys for Defendants
        DEUTSCHE BANK AG,
        BARCLAYS BANK PLC and
        COMMERZBANK
        AKTIENGESELLSCHAFT

17

-and-

18

19

Dated:  December 23, 2011

KELLEY DRYE & WARREN LLP

20

21

22

23

24

25

By:  /s/ Lee S. Brenner
        Lee S. Brenner (Bar No. 180235)
        10100 Santa Monica Blvd, 23rd Flr.
        Los Angeles, CA 90067
        Telephone: (310) 712-6125
        Facsimile: (310) 712-6199
        ,  Attorneys for Defendant
        CRÉDIT AGRICOLE CORPORATE
        AND INVESTMENT BANK,
        formerly known as Calyon

26

27

28