SARAH L. REID (admitted pro hac vice)
E-Mail: sreid@kelleydrye.com
DANIEL SCHIMMEL (admitted pro hac vice)
E-Mail: dschimmel@kelleydrye.com
MARISA A. LORENZO (admitted pro hac vice)
E-Mail: mlorenzo@kelleydrye.com
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

LEE S. BRENNER (Bar No. 180235)
E-Mail: lbrenner@kelleydrye.com
KELLEY DRYE & WARREN LLP
10100 Santa Monica Boulevard, Suite 2300
Los Angeles, California 90067-4008
Telephone: (310) 712-6100
Facsimile: (310) 712-6199

Attorneys for Defendant Crédit Agricole
Corporate and Investment Bank

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DEUTSCHE BANK AG, a German Company; BARCLAYS BANK PLC, a British Corporation; CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK DBA CALYON, French Public Limited Company CAISSE REGIONALE DE CREDIT AGRICOLE DE FRANCHE COMPETE, a French Cooperative Company; COMMERZBANK AKTIENGESELLSCHAFT, a British Corporation; DEUTSCHE BANK LUXEMBOURG SA, a Luxembourger Company; SOCIETE GENERALE a French Public Limited Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. CV 11-04932 GW (RZx)<br><br>[Assigned to Hon. George H. Wu]<br><br>**DEFENDANT CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK'S SUPPLEMENTAL REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FRCP 12(b)(6)) AND FOR FAILURE TO AVER FRAUD WITH PARTICULARITY (FRCP 9(b))**<br><br>[*Declaration of Christophe Thevenot herewith*]<br><br>Complaint Filed: March 28, 2011<br><br>Date: February 23, 2012<br>Time: 8:30 a.m.<br>Place: Courtroom 10 – Spring Street |

298531.1.doc

SUPPLEMENTAL REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | MGA HAS NOT ALLEGED FACTS SUFFICIENT TO SHOW CRÉDIT AGRICOLE'S POWER TO CONTROL SMOBY AND BREUIL | 2 |
| III. | THE SAC FAILS BECAUSE IT RELIES ON CONCLUSORY ALLEGATIONS OF AGENCY AGAINST CRÉDIT AGRICOLE | 6 |
| IV. | MGA'S CLAIMS ARE BARRED BY JUDICIAL ESTOPPEL | 7 |
| V. | CONCLUSION | 8 |

## TABLE OF AUTHORITIES

Page

**CASES**

Gould v. American-Hawaiian S.S. Co.,
   535 F.2d 761 (3d Cir. 1976).................................................................................7

Guinness PLC v. Ward,
   955 F.2d 875 (4th Cir. 1992)................................................................................7

Hellum v. Beyer,
   194 Cal. App. 4th 1300 (2011).............................................................................2

In re Falstaff Brewing Corp. Antitrust Litig.,
   441 F. Supp. 62 E.D. Mo. 1977)..........................................................................4

In re Proxima Corp. Sec. Litig.,
   No. 93–1139-IEG (LSP), 1994 WL 374306,
   (S.D. Cal. May 3, 1994)........................................................................................3

In re Technical Equities Federal Sec. Litig.,
   No. C-86-20157(A)-WAI,
   1989 U.S. Dist. LEXIS 18405, (N.D. Cal. Aug. 22, 1989)..........................2, 3

In re Toyota Motor Corp.,
   785 F. Supp. 2d 883 (C.D. Cal. 2011).................................................................6

In re ZZZZ Best Sec. Litig.,
   No. 87–3574-RSWL,
   1989 U.S. Dist. LEXIS 8083, n.8 (C.D. Cal. May 19, 1989).............................3

Index Fund, Inc. v. Hagopian,
   609 F. Supp. 499 (S.D.N.Y. 1985).......................................................................3

Mecca v. Gibraltar Corp.,
   746 F. Supp. 338 (S.D.N.Y. 1990).......................................................................4

Miller v. The Woodmoor Corp.,
   No. 74-F-988,
   1976 WL 902 (D. Colo. Apr. 27, 1976)..............................................................4

Milne v. Slesinger,
   No. 2:02-cv-08508-FMC-PLAx,
   2009 WL 3140439, (C.D. Cal. Sept. 25, 2009)..................................................7

New Hampshire v. Maine,
   532 U.S. 742 (2001)..........................................................................................7, 8

Palomares v. Bear Stearns Residential Mortgage Corp.,
   No. 07cv01899 WQH (BLM),
   2008 WL 686683 (S.D. Cal. Mar. 13, 2008).......................................................6

*Paracor Fin., Inc. v. GE Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996).................................................................................4

*Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*,
    350 F. Supp. 2d 369 (S.D.N.Y. 2004)....................................................................8

*Tech. Exch. Corp. of Am., Inc. v. Grant County State Bank*,
    646 F. Supp. 179 (D. Colo. 1986).........................................................................4

*Weinstein v. Saturn Corp.*,
    No. C-07-0348 MMC,
    2007 WL 1342604 (N.D. Cal. May 8, 2007).........................................................6

**STATUTES**

California Code Of Civil Procedure

    § 25504 .................................................................................................................1

    § 25504.1 ..............................................................................................................1

**RULES**

Federal Rules of Civil Procedure

    § 12(b)(6)..............................................................................................................1

# I.

# INTRODUCTION

Crédit Agricole Corporate & Investment Bank ("Crédit Agricole") joins in Société Générale's Reply in Support of the Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (FRCP 12(b)(6)) and for Failure to Aver Fraud With Particularity (FRCP 9(b)) filed concurrently herewith. Crédit Agricole submits this supplemental reply to address specific issues in Plaintiff MGA Entertainment, Inc. ("MGA")'s opposition papers. These issues relate to the topics raised in Crédit Agricole's initial papers. MGA's Opposition here only highlights, once again, the fundamental deficiencies in the Second Amended Complaint ("SAC").

First, MGA's opposition papers have not addressed the defects identified by the Court at the October 24, 2011 hearing, in particular that the First Amended Complaint did not adequately describe the basis of liability of Crédit Agricole and the other lenders under California Code 25504 or 25504.1 and MGA's theory "vis-à-vis the relationship of the banks to MGA such that there would be a duty."[1] Nowhere in its Opposition ("Opp.") does MGA point to a single fact that would permit an inference that Crédit Agricole had the power to exercise control over Smoby and Breuil at the time of the alleged securities violations. Instead, MGA's Opposition amounts to the remarkable legal proposition that, by simple virtue of arms-length commercial lending agreements, Crédit Agricole and Société Générale exercised control. If that was the case, this Court would be overrun with claims against financial institutions every time a company went bankrupt. Similarly, MGA's Opposition is flat out wrong about the Conciliation and Safeguard Proceedings in France, which required a stay of all actions against Smoby such that

---

[1] *See, e.g.*, Motion to Dismiss Hearing Tr. at 4:10-5:15; 9:6-8 (October 24, 2011).

Crédit Agricole and the Banks did not have the power to control the general affairs of Smoby and Breuil.

Second, MGA's Opposition papers incorrectly state that MGA did not need to plead agency with specificity. The SAC expressly alleges, however, that Breuil engaged in fraud as an agent of the Banks and, accordingly, MGA was required to plead agency with specificity. Its conclusory allegations fail to meet the Rule 9(b) requirements.

Third, MGA's Opposition has failed to respond to Crédit Agricole's judicial estoppel argument and does not dispute that its representations to the French courts directly contradict the allegations of the SAC regarding a key issue in this litigation: that MGA acquired control of Smoby based on the Banks' alleged promise to sell the Smoby debt at a significant discount. MGA attempts to downplay the importance of its pleadings in France. In assessing a judicial estoppel claim, this Court may consider a party's representations made to foreign courts, and the SAC should also be dismissed on that basis.

## II.

## MGA HAS NOT ALLEGED FACTS SUFFICIENT TO SHOW CRÉDIT AGRICOLE'S POWER TO CONTROL SMOBY AND BREUIL

In its Opposition, MGA does not dispute that, to adequately plead control, it must allege "facts from which an inference can be drawn that the defendant 'had the power to control the general affairs of the entity primarily liable *at the time the entity violated the securities laws* . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.'" *Hellum v. Beyer*, 194 Cal. App. 4th 1300, 1317 (2011) (alteration in original) (emphasis added). As such, the complaint must allege particularized facts sufficient to show control by Crédit Agricole. *See In re*

*Technical Equities Federal Sec. Litig.*, No. C-86-20157(A)-WAI, 1989 U.S. Dist. LEXIS 18405, at *29 (N.D. Cal. Aug. 22, 1989).[2] The SAC altogether fails to do this. Rather, the SAC simply alleges, in conclusory fashion, that Crédit Agricole was an entity that, "directly or indirectly, controlled Smoby," (SAC ¶ 103), but fails to allege any actual facts from which an inference could be drawn with respect to Crédit Agricole's alleged control.

To overcome its difficulties with respect to making out control, MGA has discussed three cases involving allegations of control by *non-lenders*. MGA's reliance on these cases is misplaced. The first two of the three cases that MGA cites, *In re Proxima Corp. Sec. Litig.*, No. 93–1139-IEG (LSP), 1994 WL 374306, at * 14 (S.D. Cal. May 3, 1994) and *Index Fund, Inc. v. Hagopian*, 609 F. Supp. 499, 511 (S.D.N.Y. 1985), involved outside directors or a trustee alleged to have held control through significant stock ownership, rather than by virtue of the commercial lending agreements at issue here. Similarly, *In re ZZZZ Best Sec. Litig.*, No. 87–3574-RSWL, 1989 U.S. Dist. LEXIS 8083, *19-20 & n.8 (C.D. Cal. May 19, 1989) involved a defendant who acquired a significant amount of stock and another defendant, a law firm, which, among other things, allegedly was the principal drafter of a misleading registration statement. The issuer subsequently filed for bankruptcy. *Id.* The court in that case held that numerous additional factors including stock ownership, threats, active involvement in the drafting of a Prospectus, participation in a wide variety of irregular as well as regular activities, and the "relative[] young age" of the manager precluded the dismissal of plaintiffs' security law claims on control grounds. *Id.* In short, not a single one of these

---

[2] While MGA has criticized *In re Technical Equities*, the case is good law and MGA has failed to identify any cases suggesting that it is not required to plead particularized allegations of control.

decisions involved control by a lender, and the SAC does not (and cannot) allege that Crédit Agricole owned any shares of Smoby stock.

The four cases that MGA's Opposition discusses regarding alleged control by lenders are inapplicable and inapposite because they are based on involvement by lenders in the day-to-day activities of a company. None of them was decided by a California court. These decisions were issued between 22 and 36 years ago. None of them involved a borrower in a safeguard proceeding, which imposed a stay of all actions against it. Instead, the cases cited by MGA involved lenders who exercised day-to-day control over the borrower's affairs. *See In re Falstaff Brewing Corp. Antitrust Litig.*, 441 F. Supp. 62, 64-65 (E.D. Mo. 1977) (borrower had longstanding relationship with lenders, who exercised day-to-day control over it); *Mecca v. Gibraltar Corp.*, 746 F. Supp. 338, 341-42 (S.D.N.Y. 1990); *Tech. Exch. Corp. of Am., Inc. v. Grant County State Bank*, 646 F. Supp. 179, 181 (D. Colo. 1986); *Miller v. The Woodmoor Corp.*, No. 74-F-988, 1976 WL 902, at *4 (D. Colo. Apr. 27, 1976). Moreover, and in any event, the Ninth Circuit has clearly stated that courts are "very reluctant to treat lenders as controlling persons of their borrowers." *See Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996) (collecting cites).

The SAC and the opposition papers do not allege that Crédit Agricole had a longstanding banking relationship with Smoby or Breuil, or the power to exercise the type of day-to-day control at stake in *Falstaff, Mecca, Technology Exchange*, or *Miller*. Rather, MGA has alleged that Crédit Agricole had the power to control Smoby because of certain covenants in the 2005 Granting of Credit Agreement, Credit Agricole's membership in the lending syndicate that extended a bridge loan to Smoby, in October 2006, and Smoby's and Breuil's undertaking to seek an equity investor. (SAC ¶¶ 103(d)-(m)). Since these covenants did not grant any specific

control to Crédit Agricole, MGA has failed to satisfy its obligation to make particularized allegations of control.[3] (CA Suppl. Br. at 8-9). Under Article 23 of the Granting of Credit Agreement and particularly Article 23.1, Credit Agricole acted as the agent of the banks participating in the loan to Smoby. As such it could only act on the direction of the lending banks and did not have control over the lenders, let alone control over Smoby. (Exs. A&B to the SAC, Article 23). In its opposition papers, MGA seeks to minimize the role of the Commercial Court that ratified the Bridge Loan extended by the members of the lending syndicate to Smoby in October 2006. (Opp. at 29-30). However, as described in the expert opinion of Christophe Thevenot, the former President of the Association of all Court-Appointed Receivers in France, a Commercial Court only ratifies an agreement reached by a debtor and its creditors in a conciliation proceeding if the court is persuaded that this agreement will enable the debtor to continue to operate. (Thevenot Decl. ¶ 4). Accordingly, when the Commercial Court ratified the agreement between Smoby and its lenders, requiring Breuil to locate a new equity investor in consideration for the 2006 Bridge Loan, the court concluded, following an examination of the agreement, that it would allow Smoby to continue to operate. (Thevenot Decl. ¶¶ 5-6).

MGA also misleadingly argues that "the safeguarding procedure imposed only minimal supervision over Smoby." (Opp. at 28; Laude Decl. ¶14.) This is incorrect. (Thevenot Decl. ¶¶ 7-12). As described in the Thevenot Declaration attaching the official translation of the French statute, when the Commercial Court issued a judgment opening a safeguard proceeding, it imposed a stay of all

---

[3]   In addition, the SAC expressly alleges that, by the time MGA acquired control of Smoby, a majority of the Smoby debt had been assigned to other lenders. (SAC ¶¶ 10, 44, 52).

proceedings against Smoby. (Thevenot Decl. at ¶ 12). Smoby no longer had any obligations to pay its debts to the lending syndicate. *Id.* If creditors' committees are formed (banks committee and suppliers committee), they are consulted by the Court-Appointed Receiver and the debtor on the proposed safeguard plan. These committees are only consulted once the Court-Appointed Receiver has prepared a safeguard plan in order to determine whether to vote in favor of that plan; such a committee has no power to impose any management decisions nor any plan. Except for discussions in this limited context, the management of the debtor has no obligation to communicate with lenders during the safeguard proceeding. (Thevenot Decl. at ¶ 12). In light of the stay of proceedings and these additional protections against the lenders, MGA cannot plausibly allege that Crédit Agricole or the other members of the lending syndicate had the power to exercise control over Smoby and Breuil at the time the alleged securities violations occurred. (Thevenot Decl. at ¶ 12).

Accordingly, the Opposition fails to address the lack of cognizable control allegations.

### III.
### THE SAC FAILS BECAUSE IT RELIES ON CONCLUSORY ALLEGATIONS OF AGENCY AGAINST CRÉDIT AGRICOLE

In its opposition papers, MGA argues that it was not required to plead agency with specificity. (Opp. at 22-24). MGA's argument misses the mark by ignoring that its fraud claims against Crédit Agricole and the other Banks are based on a theory of agency. (SAC ¶¶ 44-45, 52-53, 57). Here, MGA's conclusory allegations fail to satisfy the requirements of Rule 9(b). *See, e.g.,* CA Suppl. Br. at 3-6; *Palomares v. Bear Stearns Residential Mortgage Corp.*, No. 07cv01899 WQH (BLM), 2008 WL 686683, at *4-5 (S.D. Cal. Mar. 13, 2008); *Weinstein v. Saturn Corp.*, No. C-07-0348 MMC, 2007 WL 1342604 at *1 (N.D. Cal. May 8, 2007); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918-19 (C.D. Cal. 2011).

1  The Court should reject MGA's conclusory allegations of agency for the
2  additional reason that, according to the case cited by MGA itself in the opposition
3  papers, secondary liability in securities violation cases "cannot be upheld on the
4  agency theory." *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 778-779 (3d
5  Cir. 1976). MGA has not attributed any misstatements to Crédit Agricole. The
6  *Gould* case does not change the rule that when a plaintiff alleges that a defendant is
7  liable for fraud under an agency theory, Rule 9(b) requires that the plaintiff allege
8  with particularity facts that support the existence of an agency relationship. (CA
9  Suppl. Br. at 4).

10  Accordingly, the SAC fails because MGA has failed to meet the requirements
11  of Rule 9(b).

## IV.

## MGA'S CLAIMS ARE BARRED BY JUDICIAL ESTOPPEL

MGA's claims should also be dismissed under the independent principle of judicial estoppel. In its opposition papers, MGA admits (as it must) that it has expressly represented to the French courts that, until September 2007, each member of the lending syndicate was entitled to decide "freely and individually" whether to sell its share of the debt. (Opp. at 41). In the French litigation, MGA has expressly told the courts that its negotiations with Smoby's lenders commenced *following its acquisition of control* of Smoby. (CA Suppl. Br. at 13). MGA does not dispute that its representations to the French courts directly contradict its allegations in the SAC, or that the French courts accepted these arguments of MGA. (*Compare* SAC ¶¶ 15, 76, 87, *with* CA Suppl. Br. at 12-13). Accordingly, MGA should not be allowed to gain an advantage by asserting clearly contradictory positions in the United States and France. *See Milne v. Slesinger*, No. 2:02-cv-08508-FMC-PLAx, 2009 WL 3140439, at *5 (C.D. Cal. Sept. 25, 2009). Not only is judicial estoppel appropriate on a motion to dismiss, but the Court may apply judicial estoppel principles based on statements made or actions taken in foreign courts. *See New Hampshire v.*

*Maine*, 532 U.S. 742, 749-51, 755 (2001), *Guinness PLC v. Ward*, 955 F.2d 875, 899-900 (4th Cir. 1992); *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F. Supp. 2d 369, 373-75 (S.D.N.Y. 2004).[4] In short, MGA's SAC should be dismissed based on well-established judicial estoppel.

## V.

## CONCLUSION

For all the foregoing reasons, Crédit Agricole respectfully requests that MGA's Second Amended Complaint be dismissed with prejudice.

DATED: February 13, 2012

KELLEY DRYE & WARREN LLP
Lee S. Brenner
Sarah L. Reid
Daniel Schimmel

/s/ Lee S. Brenner
By  Lee S. Brenner
Attorneys for Defendant Crédit Agricole
Corporate and Investment Bank

---

[4] MGA has conceded that judicial estoppel can apply in this action. Specifically, in its opposition papers, MGA argues that "Calyon is judicially estopped from repudiating its participation in these transactions" based on its representations to the French courts. (Opp. at 29).