CHRISTOPHER J. COX (Bar No. 151650)
Email: chris.cox@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

T. RAY GUY (*Admitted Pro Hac Vice*)
Email: ray.guy@weil.com
YVETTE OSTOLAZA (*Admitted Pro Hac Vice*)
Email: yvette.ostolaza@weil.com
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, TX  75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

Attorneys for Defendants
Deutsche Bank AG, Barclays Bank PLC
and Commerzbank Aktiengesellschaft

(Additional Defendants and Counsel on Signature Page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California Corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>DEUTSCHE BANK AG, a German Company; BARCLAYS BANK PLC, a British Corporation; CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, DBA CALYON, a French Public Limited Company; COMMERZBANK AKTIENGESELLSCHAFT, a German Company; SOCIETE GENERALE, a French Public Limited Company; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No. CV11-04932 GW (RZx)<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR STAY MGA'S SECOND AMENDED COMPLAINT FOR *FORUM NON CONVENIENS*, OR ALTERNATIVELY TO DISMISS FOR IMPROPER VENUE UNDER RULE 12(B)(3), OR ALTERNATIVELY TO STAY THIS ACTION UNDER THE *COLORADO RIVER* DOCTRINE**<br><br>Hearing:    February 23, 2012<br>Time:       8:30 am<br>Place:      Courtroom 10-Spring St.<br>Before:     Hon. George H. Wu |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .................................................................. 1

II.  PLAINTIFF'S CLAIMS SHOULD BE STAYED OR DISMISSED FOR FORUM NON CONVENIENS, AS FRANCE IS THE PROPER FORUM TO RESOLVE THIS DISPUTE .......................................... 2

    A.  PIPER SETS FORTH THE APPROPRIATE LEGAL STANDARD .................................................................................... 2

    B.  FRANCE PROVIDES AN ADEQUATE ALTERNATIVE FORUM FOR RESOLUTION OF PLAINTIFF'S CLAIMS .............. 4

    C.  PRIVATE AND PUBLIC FACTORS WEIGH HEAVILY IN FAVOR OF ADJUDICATING PLAINTIFF'S CLAIMS IN FRANCE ................................................................................... 8

        1.  Relevant Witnesses and Documents Are Located in France or Other Parts of Europe ...................................... 8

        2.  The Existence of a Parallel Action in France also Supports Dismissal ........................................................ 10

        3.  France Has the Greater Interest in Resolving this Dispute ...... 12

        4.  California Should Not Be Unduly Burdened with Adjudicating this Matter ................................................. 13

III.  PLAINTIFF'S CLAIMS SHOULD ALSO BE DISMISSED UNDER RULE 12(b)(3) BECAUSE a VALID FORUM SELECTION CLAUSE REQUIRES THAT CLAIMS ARISING UNDER THE CONTRACT BE BROUGHT IN FRANCE ................................. 13

IV.  ALTERNATIVELY, PLAINTIFF'S CLAIMS SHOULD BE STAYED UNDER THE COLORADO RIVER DOCTRINE, AS DOING SO WILL SERVE THE INTERESTS OF WISE JUDICIAL ADMINISTRATION ................................................................... 15

    A.  THE FRENCH TORT ACTION AND THIS ACTION ARE SUFFICIENTLY SIMILAR TO JUSTIFY STAYING THIS ACTION ................................................................................. 15

    B.  THE COLORADO RIVER FACTORS WEIGH IN FAVOR OF STAYING OR DISMISSING THIS ACTION IN FAVOR OF THE FRENCH TORT ACTION .............................................. 15

V.  CONCLUSION AND REQUESTED RELIEF ............................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alfadda v. Fenn*,
   159 F.3d 41 (2d Cir. 1998) ........................................................................... 6, 7, 9

*Argoquest Holdings, LLC v. Israel Discount Bank Ltd.*,
   No. CV 04-10292 GAF, 2005 WL 6070168 (C.D. Cal. Apr. 8, 2005) ............... 3

*BCCI Holdings (Luxembourg), Societe Anonyme v. Mahfouz*,
   828 F. Supp. 92 (D.D.C. 1993) ....................................................................... 11

*Brack v. Omni Loan Co. Ltd.*
   164 Cal. App. 4th 1312 (2008) ......................................................................... 4

*Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*,
   812 F. Supp. 1041 (N.D. Cal. 1993) ............................................................... 12

*Carijano v. Occidental Petroleum Corp.*,
   643 F.3d 1216 (9th Cir. 2011) .......................................................................... 6

*Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.*,
   61 F.3d 696 (9th Cir. 1995) ............................................................................ 12

*Dattner v. Conagra Foods, Inc.*,
   91 F. Appx. 179 (2d Cir. 2004) ........................................................................ 7

*Delta Air Lines, Inc. v. Chimet, S.p.A.*,
   619 F.3d 288 (3d Cir. 2010) ............................................................................. 3

*Derensis v. Coopers & Lybrand Chtd. Accountants*,
   930 F. Supp. 1003 (D.N.J. 1996) .................................................................... 6, 7

*DTEX, LLC v. BBVA Bancomer, S.A.*,
   508 F.3d 785 (5th Cir. 2007) ............................................................................ 3

*EFCO Corp. v. Aluma Sys. USA, Inc.*,
   145 F. Supp. 2d 1040 (S.D. Iowa 2000) ............................................................ 3

*Equitable Bank v. Finn*,
   671 F. Supp. 374 (D. Md. 1987) ..................................................................... 4, 6

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Ernst v. Ernst*,
722 F. Supp. 61 (S.D.N.Y.1989) ................................................................. 7

*Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA.*,
623 F.3d 147 (3d Cir. 2010) ....................................................................... 7

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*,
150 F.3d 1088 (9th Cir. 1998) .................................................................. 12

*Gschwind v. Cessna Aircraft Co.*,
161 F.3d 602 (10th Cir. 1998) .................................................................... 7

*Hall v. Superior Court*
150 Cal. App. 3d 411 (1983) ............................................................... passim

*Harris v. France Telecom, S.A.*,
No. 11 CV 357, 2011 WL 3705078 (N.D. Ill. Aug. 22, 2011) ...................... 3, 6

*Howe v. Goldcorp Investments, Ltd.*,
946 F.2d 944 (1st Cir. 1991) ...................................................................... 3

*Huffington v. T.C. Group, LLC.*,
685 F. Supp. 2d 239 (D. Mass. 2010) .......................................................... 5

*In re European Aeronautic Defence & Space Co. Secs. Litig.*,
703 F. Supp. 2d 348 (S.D.N.Y. 2010) .......................................................... 3

*In re Washington Mut., Inc.*
No. 08-1229, 2010 WL 2545415 (W.D. Wash., Dec. 20, 2011) ...................... 5

*Magnin v. Teledyne Cont'l Motors*,
91 F.3d 1424 (11th Cir. 1996) ................................................................... 7

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ................................................................... 14

*Mediterranean Golf, Inc. v. Hirsh*,
783 F. Supp. 835 (D.N.J. 1991) ................................................................ 12

*Miles v. Paribas*,
No. 94-56768, 1995 WL 501357 (9th Cir. Aug. 23, 1995) ............................. 7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Otor S.A., v. Credit Lyonnais, S.A.*
No. 04 CV 6978 (RO), 2006 WL 2613775, at *4 (S.D.N.Y. Sept. 11, 2006) ............................................................................................. 6

*Piper Aircraft Co. v. Reyno*
454 U.S. 235 (1981) .......................................................... 2, 3, 6, 10

*Pong v. Am. Capital Holdings, Inc.*
No. Civ. S-06-2527 LKK/DAD, 2007 WL 657790, at *7 (E.D. Cal. Feb. 28, 2007) ........................................................................................... 5

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) .......................................................... 5, 13

*Roby v. Corporation of Lloyd's*,
996 F.2d 1353 (2d Cir. 1993) ............................................................. 5

*Rodriguez de Quijas v. Shearson/American Exp., Inc.*
490 U.S. 477 (1989) ........................................................................... 5

*Schmerzler v. Intercont'l Hotels Group Res., Inc.*,
No. 3:11-cv-120 (CFD), 2011 WL 3652174 (D. Conn. Aug. 18, 2011) ............. 7

*Scholes v. Tomlinson*
145 F.R.D. 485 (N.D. Ill. 1992) ......................................................... 5

*Sussman v. Bank of Israel*,
801 F. Supp. 1068 (S.D.N.Y. 1992) .................................................... 3

*Textor v. Board of Regents of No. Ill. Univ.*,
711 F.2d 1387 (7th Cir. 1983) ............................................................ 8

*Topiwala v. Wessell*
No. WDQ-11-0543, 2012 WL 122411 (D. Md. Jan. 12, 2012) .................... 5

*Wilko v. Swan*
346 U.S. 427 (1953) ....................................................................... 1, 5

*Zions First Nat. Bank v. Allen*,
688 F. Supp. 1495 (D. Utah 1988) .................................................... 4, 5

1

# TABLE OF AUTHORITIES
### (continued)

2
**Page(s)**

3
STATUTES

4
28 U.S.C. § 1782...........................................................................................9

5
California Corporations Code § 25701....................................................4

6

7
Federal Securities Act § 14.....................................................................5

8
OTHER AUTHORITIES

9
Fed.R. Civ. P. 12(b)(3) ..........................................................13, 15, 16

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## PRELIMINARY STATEMENT

Plaintiff contends that "California securities laws require that [this action] be heard in California under California law." *See* Opp. at 1. Yet, Plaintiff's Opposition fails to cite a single federal case in which the court refused to dismiss an action on *forum non conveniens* grounds because the action included a California securities law claim. Indeed, none of the cases cited by Plaintiff support this claim. There is simply nothing inequitable about requiring MGA to litigate in France, where MGA voluntarily engaged in the securities transaction it now disputes, where it voluntarily participated in the target's (Smoby's) bankruptcy proceedings, where it is subject to the jurisdiction of the French courts, and where it is already a party in actions – filed three years before MGA filed this action – which will resolve the very issues Plaintiff seeks to resolve in this case and will provide a forum for Plaintiff to raise those issues. Plaintiff's Opposition arguments to the contrary are either baseless or irrelevant for the following reasons:

- Plaintiff complains that France is an inadequate forum because it does not provide the "***same relief***" as California law. *See* Opp. at 15. However, under settled Supreme Court and Ninth Circuit law, a plaintiff may not defeat dismissal merely by showing that the substantive law which would be applied in the alternative forum is less favorable. Indeed, here, French law provides adequate remedies to Plaintiff.

- The limited holding of *Hall v. Superior Court*, 150 Cal. App. 3d 411; 197 Cal. Rptr. 757 (Cal. Ct. App. 1983) with respect to enforcement of contractual forum selection provisions in a contract for the sale of securities is inapposite in the context of a motion to dismiss on *forum non conveniens* grounds. *Hall* simply does not apply here. Indeed, none of the Defendants is even a signatory to the contract for MGA's purchase of its stake in Smoby. Further, *Hall* relied extensively on the Supreme Court case of *Wilko v. Swan*,

346 U.S. 427, 434-35; 74 S. Ct. 182, 186-187; 98 L. Ed. 168 (1953), which has since been overturned.  Subsequent cases have declined to follow *Hall*, and hold that foreign jurisdictions may hear securities fraud cases, despite anti-waiver statutes.

- Plaintiff's Second Amended Complaint (the "SAC") and Opposition are rife with allegations of wrongdoing by Mr. Breuil, Smoby's former CEO, who is not a party to this case and is currently subject to criminal proceedings in France arising from his alleged conduct with respect to Smoby.  The only place where the Court will have jurisdiction over Mr. Breuil is in France.  It would be inequitable to force the Defendants to answer for his conduct in a forum that cannot exercise control over Mr. Breuil.

- Plaintiff's Opposition fails to identify a single act in the United States by any of the Defendants.  All of the alleged wrongful conduct allegedly directed to the United States was by third parties who are not named in this action.

- Plaintiff concedes (*see* Opp. at 11) that federal courts in the Ninth Circuit apply federal law – not state law – in determining the enforceability of a forum selection clause.  Under settled federal law, this Court should enforce the forum selection provision in the Loan Agreement, which requires Plaintiff's contract claims to be brought in France.

Plaintiff's Opposition only underscores the fact that the locus of the dispute between the parties is in France.  Accordingly, this Court should grant this Motion and dismiss this action because France is the proper forum for this dispute.

## II.

### PLAINTIFF'S CLAIMS SHOULD BE STAYED OR DISMISSED FOR FORUM NON CONVENIENS, AS FRANCE IS THE PROPER FORUM TO RESOLVE THIS DISPUTE

### A.   PIPER SETS FORTH THE APPROPRIATE LEGAL STANDARD

As discussed in Defendants' moving papers, *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235; 102 S. Ct. 252; 70 L. Ed. 2d 419 (1981) sets the standard for determining whether to dismiss an action on *forum non conveniens* grounds. Specifically, a court considers: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal. *Id*. at 254 n.22. Plaintiff contends in its Opposition that *Piper* does not state the "correct standard" because it concerned a foreign plaintiff, while MGA is a U.S. corporation. *See* Opp. at 14. Plaintiff is wrong. *Piper* states that, where the plaintiff is a U.S. citizen, the plaintiff's choice of forum can be overcome when the private and public interest factors clearly point toward trial in the alternative forum. *Piper*, 454 U.S. at 255. *Piper* is controlling authority on the *forum non conveniens* doctrine, and has been cited in numerous cases where the plaintiff is a U.S. citizen.[1] Additionally, although Plaintiff argues that the Court should defer to Plaintiff's chosen forum because it is a California corporation, this Court and others have held that where plaintiff is a U.S. corporation suing for securities violations stemming from the purchase of a foreign corporation's stock, deference to the plaintiff's choice of forum is lessened.[2]

---

[1] *See, e.g.*, *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 945 (1st Cir. 1991) (American shareholder brought private securities law action against Canadian corporation and its Canadian officers, investment advisors, and lawyers in Massachusetts); *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 291 (3d Cir. 2010) (American carrier brought declaratory judgment action against foreign shipper); *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 788 (5th Cir. 2007) (American textile equipment trader brought action against Mexican banking corporation seeking damages for bank's alleged tortious interference with trader's rights to textile equipment purchased in Mexico); *EFCO Corp. v. Aluma Sys. USA, Inc.*, 145 F. Supp. 2d 1040, 1041-42 (S.D. Iowa 2000) (Plaintiffs, which included Iowa corporation, brought suit alleging theft of trade secrets against defendants, which included Canadian corporation).

[2] *See Argoquest Holdings, LLC v. Israel Discount Bank Ltd.*, No. CV 04-10292 GAF, 2005 WL 6070168, at *3 (C.D. Cal. Apr. 8, 2005) ("Where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished."); *see also Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992) (same); *Harris v. France Telecom, S.A.*, No. 11 CV 357, 2011 WL 3705078, at *3 (N.D. Ill. Aug. 22, 2011) (same); *In re European Aeronautic Defence & Space Co. Secs. Litig.*, 703 F. Supp. 2d 348, 361 (S.D.N.Y. 2010) (same).

1

**B.      FRANCE PROVIDES AN ADEQUATE ALTERNATIVE FORUM FOR RESOLUTION OF PLAINTIFF'S CLAIMS**

2

3        MGA incorrectly asserts that "California securities laws require that

4   [this action] be heard in California under California law."[3]  *See* Opp. at 1, 9.  MGA

5   cites *Hall v. Superior Court*, 150 Cal. App. 3d 411 (1983) in support of its

6   assertion.  However, MGA overreaches in its interpretation of *Hall*.  In *Hall*, the

7   court held that a choice-of-law provision in a share purchase agreement, which

8   designated Nevada as the law governing the transaction, violated California

9   Corporations Code § 25701.  That section states "*[a]ny condition, stipulation or*

10  *provision* purporting to bind any person acquiring any security to waive compliance

11  with any provision of this law or any rule or order hereunder is void."  Cal. Corp.

12  Code § 25701 (emphasis added).  *Hall* merely held that § 25701 and California

13  public policy prevented enforcement of the choice-of-law and forum-selection

14  clauses in contracts for the sale of securities.  *See, e.g.*, *Brack v. Omni Loan Co.*

15  *Ltd.*, 164 Cal. App. 4th 1312, 1323; 80 Cal. Rptr. 3d 275, 282 (Cal. Ct. App. 2008)

16  (citing *Hall* for the proposition that "the express anti-waiver provisions in the

17  Corporate Securities Law of 1968 prevented enforcement of choice-of-law and

18  forum-selection clauses in a contract for the sale of securities").  Defendants could

19  not find – and MGA fails to cite – a single federal case where *Hall's* limited

20  holding was extended to eviscerate a court's discretion to dismiss an action on

21  *forum non conveniens* grounds.

22        Here, MGA does not seek enforcement of a choice of law provision or

23  forum-selection clause contained in a contract for the sale of securities.  Defendants

24  are not even parties to the agreements between MGA and Smoby for MGA's

25  acquisition of its stake in Smoby.  They are lenders.  The contracts relevant to the

26  ---
[3]  S*ee Zions First Nat. Bank v. Allen*, 688 F. Supp. 1495, 1501 (D. Utah 1988) (rejecting

27  defendant's arguments that because the action is based on California securities law, it should be tried in California); *see also Equitable Bank v. Finn*, 671 F. Supp. 374, 380 (D. Md. 1987)

28  (rejecting defendant's request to transfer case involving alleged violations of California securities law to California).

1  named Defendants and which contain a choice-of-law provision—the Loan

2  Agreement—is not a contract for the sale of securities. Plaintiff does not cite a

3  single case which expands the holding in *Hall* to cover non-parties to the sale of

4  securities and eviscerate forum-selection clauses in third party contracts.

5          Notably, *Hall* relied extensively on *Wilko*. In *Wilko*, the Supreme

6  Court held that a prohibition on the contractual waiver of rights under section 14 of

7  the Federal Securities Act prohibited enforcement of arbitration provisions in

8  securities transactions. 346 U.S. at 438. However, *Wilko* was subsequently

9  overturned and is no longer good law. *See Rodriguez de Quijas v.*

10  *Shearson/American Exp., Inc.*, 490 U.S. 477, 479; 109 S. Ct. 1917, 1919; 104 L.

11  Ed. 2d 526 (1989). Since *Wilko* was overturned, some courts have refrained from

12  following *Hall*,[4] and the majority of circuits – including the Ninth Circuit – instead

13  hold that anti-contractual waiver provisions in federal securities statutes do not

14  invalidate foreign forum-selection or choice-of-law provisions. *See Richards v.*

15  *Lloyd's of London*, 135 F.3d 1289, 1295 (9th Cir. 1998) (enforcing forum selection

16  clause specifying English forum for dispute arising from securities agreement

17  because "[t]he Court's treatment of *Wilko* leaves little doubt that the choice clauses

18  in this case are enforceable").[5] Courts in other jurisdictions have also routinely

19  heard and resolved cases involving California securities law claims.[6]

20  _____

21  [4] *See, e.g.*, *Huffington v. T.C. Group, LLC.*, 685 F. Supp. 2d 239, 244 (D. Mass. 2010).

[5] *Accord Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993); *see also Pong v. Am.*
22  *Capital Holdings, Inc.*, No. Civ. S-06-2527 LKK/DAD, 2007 WL 657790, at *7 (E.D. Cal.
Feb. 28, 2007) (enforcing forum selection clause because federal courts enforce "private
23  stipulations in securities fraud litigation, despite the anti-waiver provisions of the federal
securities laws").

24  [6] *See Topiwala v. Wessell*, No. WDQ-11-0543, 2012 WL 122411, at *9 (D. Md. Jan. 12, 2012)
(Maryland court denied defendant's motion to transfer California Corporate securities law case to
25  California or dismiss for improper venue); *see also In re Washington Mut., Inc.*, No. 08-1229,
2010 WL 2545415, at *9 (W.D. Wash. Dec. 20, 2011) (Delaware bankruptcy court held that
26  purchaser sufficiently alleged requisite control by debtor/holder company, as required to hold
debtor/holder company liable as control person for material misrepresentations allegedly made in
27  connection with sale of trust certificates in violation of California Corporation code section
25504); *see also Scholes v. Tomlinson*, 145 F.R.D. 485, 492-93 (N.D. Ill. 1992) (Illinois court
28  denied certification of class for California securities law claims); *see also Zions First Nat. Bank*,
688 F. Supp. at 1501 (rejecting defendants arguments that because the action is based on

1    MGA complains that France is not a convenient and effective location

2    because French law "imposes legal elements not required in plaintiff's securities

3    law claims, and does not provide adequate procedural processes for plaintiff's

4    claims." Opp. at 2. The grounds for this assertion are that "French law provides for

5    virtually no discovery, live witness testimony, or remedy for MGA's securities

6    fraud allegations." *Id*. None of these arguments withstands scrutiny.

7    MGA also contends that "[France] must provide the ***same relief*** as

8    California to be an adequate alternative for [MGA's] claims." *See* Opp. at 15

9    (emphasis added). Plaintiff misstates the applicable standard. Contrary to

10   Plaintiff's assertion, a plaintiff may not avoid dismissal merely by showing that the

11   substantive law in the alternative forum is less favorable. *Piper*, 454 U.S. at 247.[7]

12   Here, French law provides adequate remedies for each and every one

13   of Plaintiff's claims. French law provides a remedy in damages for fraud. *See*

14   Bermann Decl. ¶ 25. Under French law, a cause of action can also be brought for

15   aiding and abetting and conspiracy. *See id.* at 28-33. Additionally, a securities-

16   fraud claim can be brought under general French tort law. *See* Second Bermann

17   Decl. dated Feb. 10, 2012 ("Second Bermann Decl.") ¶ 17, filed concurrently

18   herewith and incorporated herein. **Indeed, courts have found France to be an**

19   **alternative available forum for securities-fraud cases.**[8] Thus, Plaintiff's

20

21   California securities law, it should be tried in California); *see also Equitable Bank v. Finn*, 671 F. Supp. 374, 380 (D. Md. 1987) (rejecting defendant's request to transfer case involving alleged violations of California securities law to California).

22   [7] *Accord Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225-1226 (9th Cir. 2011) (holding Peru was adequate alternative forum because "the requirement that the alternative forum

23   provide some remedy for plaintiff's complained of wrong is easy to pass; typically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is

24   no remedy at all") (internal quotations omitted).

25   [8] *See Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998) (holding France is adequate alternative forum in securities fraud case); *Otor S.A., v. Credit Lyonnais, S.A.*, No. 04 CV 6978 (RO), 2006

26   WL 2613775, at *4 (S.D.N.Y. Sept. 11, 2006) (same); *see also Harris v. France Telecom, S.A.*, No. 11 CV 357, 2011 WL 3705078, at *3 (N.D. Ill. Aug. 22, 2011) (same). Plaintiff cites

27   *Derensis v. Coopers & Lybrand Chtd. Accountants*, 930 F. Supp. 1003, 10011 (D.N.J. 1996) to support its assertion that because France does not have a separate private securities cause of

28   action, France is not an adequate forum. *See* Opp. at 15. In *Derensis*, the court held that Canada was not an adequate forum in part because "Canada does not have a well-developed class action

1  complaints about the substantive law fail.

2          Plaintiff's procedural complaints also lack merit.  No other legal

3  system in the world even approximates the U.S. in its tolerance of wide-ranging

4  party-driven pre-trial discovery.  *See* Second Bermann Decl. ¶ 11.  Were lack of

5  access to U.S.-style pre-trial discovery a valid basis for denying an otherwise

6  proper *forum non conveniens* motion, virtually none would ever be granted.  *See id.*

7  Yet, courts routinely hold that France is an adequate alternative forum.[9]  Although

8  France's discovery practices differ from the United States, courts have found them

9  sufficient such that France is considered an adequate forum.  In *Eurofins Pharma*

10  *US Holdings v. BioAlliance Pharma SA*  623 F.3d 147, 160 -161 (3rd Cir. 2010),

11  the Court held that "there are adequate discovery methods available to litigants

12  under French Law."   *See also Ernst v. Ernst,* 722 F. Supp. 61, 67–68

13  (S.D.N.Y.1989) (France is an adequate forum because "there are several perfectly

14  adequate discovery methods available under French law, albeit not as extensive as

15  those available in our courts.").  Further, Plaintiff can obtain extensive – and free –

16  discovery through the criminal proceedings pending against Mr. Breuil in France.

17  *See* Second Bermann Decl. ¶ 14.[10]

18

19

---

20  procedure" and therefore Plaintiffs would not have been able to proceed as a class against the
   defendants.  *Derensis* is therefore clearly distinguishable.

21  [9] *See, e.g., Alfadda*, 159 F.3d at 45; *Dattner v. Conagra Foods, Inc.*, 91 F. Appx. 179, 180 (2d

22  Cir. 2004); *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606-07 (10th Cir. 1998); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996); *Eurofins Pharma U.S. Holdings v.*

23  *BioAlliance Pharma SA.*, 623 F.3d 147, 163 (3d Cir. 2010); *Miles v. Paribas*, No. 94-56768, 1995
   WL 501357, at *2 (9th Cir. Aug 23, 1995); *Schmerzler v. Intercont'l Hotels Group Res., Inc.*, No.

24  3:11-cv-120 (CFD), 2011 WL 3652174, at *3 (D. Conn. Aug. 18, 2011).

25  [10] Plaintiff also alleges that the Commercial Court of Lons Le Saunier was biased.  *See* Opp. at 7-
   8.  As Plaintiff admits, the French Tort Action has been transferred to the commercial division of

26  the Tribunal de Grande Instance of Strasbourg.  *See* Decl. of Oliver Laude ¶ 21 (Dkt. 53-3);
   Second Bermann Decl. ¶ 16.  MGA has not alleged bias or unfairness with respect to the Tribunal

27  de Grande Instance of Strasbourg.  *See* Supp'l Malka Decl. dated Sept. 16, 2011 ("Supp'l Malka
   Decl.") ¶ 5, attached as Ex. 1 to the Second Declaration of Bambo Obaro ("Second Obaro Decl.")
   filed concurrently herewith and incorporated herein.  Thus, to the extent there was any merit

28  whatsoever to MGA's claims of bias, that issue is now moot.

## C.   PRIVATE AND PUBLIC FACTORS WEIGH HEAVILY IN FAVOR OF ADJUDICATING PLAINTIFF'S CLAIMS IN FRANCE

### 1.   Relevant Witnesses and Documents Are Located in France or Other Parts of Europe

Plaintiff argues that the "heart of [its] complaint is false representations made to [it] in the United States that induced it to purchase Smoby" and therefore "the most *material* evidence is located in America." *See* Opp. at 17. In this regard, Plaintiff contends that Mr. Breuil and EOS Partners made false representations to it regarding the financial status of Smoby. *See id.*  However, **neither of those actors are parties to this action**.[11]  Plaintiff merely alleges that Defendants should somehow be responsible for Breuil's conduct based upon Defendants' relationship with the Breuil family and Smoby, which arose from the Loan Agreements and Defendants' alleged conduct in France.[12]  *See* SAC ¶¶ 105, 133-148.

With regard to the conduct of Defendants, Plaintiff has not and cannot dispute the fact that Defendants' witnesses are located overseas and the most material evidence related to the Loan Agreement and Defendants' conduct vis-à-vis

[11]  Plaintiff incorrectly contends that this Court has jurisdiction over Breuil and cites T*extor v. Board of Regents of No. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983) to support its assertion. *See* Opp. at 20.  In *Textor*, the court held that if the Plaintiffs allegations are true, the court can exercise jurisdiction over the defendants where the plaintiff alleged that "[Defendants] . . . engaged in annual and other conference meetings and discussions within Illinois, including DeKalb, Illinois, and . . . held meetings with the Council of Presidents and the Conference of Deans for such Conference in DeKalb, Illinois, and at such meetings and conferences, issued directives and requests regarding women's athletics."  *Id.  Textor* is clearly distinguishable from this action as MGA has not sufficiently demonstrated that Breuil had similar contacts with California.

[12]  Plaintiff contends that Deutsche Bank referred MGA to EOS Partners and Redwood Capital to negotiate on its behalf.  *See* Opp. at 4-5.  This contention misrepresents the nature of the relationship among Deutsche Bank, EOS Partners, and Redwood Capital.  *See* Supp'l Verlé Decl. dated Sept. 17, 2011 ("Supp'l Verlé Decl.") ¶¶ 6-9, attached as Ex. 2 to Second Obaro Decl. Neither EOS Partners nor Redwood Capital had authority to negotiate with MGA on behalf of the Defendants or to speak or make representations to MGA on behalf of the Defendants with respect to the Loans.  *See id.*  Regardless, even if this contention were accepted as true, it does not change the fact that all the remaining allegations against the Defendants involve conduct allegedly performed by the Defendants in France, and therefore, the *forum non conveniens* factors still favor adjudication in France.

Breuil, Smoby, or MGA is located in France and elsewhere in Europe.[13]  While

MGA contends that nearly 20 witnesses reside in the United States (*see* Opp. at 16-

17), those witnesses are peripheral to MGA's actual claims against the named

Defendants.  Only one of them, Mr. Cederholm, is alleged to have made any

statements to MGA on behalf of Defendants prior to MGA's acquisition of Smoby.

*See* Larian Decl. ¶¶ 12-13, 50.  Defendants dispute that this individual made any

statements on their behalf.  *Supra* note 12.  However, even accepting MGA's

charges as true, Mr. Cederholm merely expressed optimism about working with

MGA and suggested that the Defendants would discount the Smoby debt.  *See*

MGA's Omnibus Opposition to Defendants' Motion to Dismiss for Failure to State

Claim Upon Which Relief Can be Granted at 37.  That is not actionable conduct.

By contrast, the witnesses who could testify to the core issues as

framed by the pleadings—the Loan Agreement, the relationship between

Defendants and Smoby or Mr. Breuil, and Defendants' contacts with MGA—do not

reside in the United States.  The cost of having those witnesses attend trial will be

significantly lessened if this case is tried in France because the majority of these

witnesses are located there.[14]  Although Plaintiff complains that France is an

inadequate forum because of the lack of live witness testimony, compulsory process

is available in France to secure the live testimony of necessary foreign witnesses,[15]

and MGA could invoke the provisions of 28 U.S.C. § 1782, which authorizes

federal courts to collect testimonial and documentary evidence on U.S. territory for

---

[13] Plaintiff instead contends that because France allows for virtually no live witness testimony in civil actions, it would be virtually impossible to obtain testimony of any kind from the Defendants' witnesses unless the case proceeds in California.  *See* Opp. at 18-19.  As explained in more detail in the Second Bermann Declaration, courts in France are free to issue an order for live witness testimony at trial, therefore, Defendants' witnesses could be called upon to testify in a trial in France.  *See* Second Bermann Decl. ¶ 12.

[14] *See, e.g.*, *Alfadda*, 159 F.3d at 47 (finding that France is a more convenient forum where "the cost for witnesses to attend trial will be significantly lessened if trial is held in France because almost all the entities involved are based there").

[15] *See Alfadda*, 159 F.3d at 47-48 (dismissing on *forum non conveniens* grounds in part because "compulsory process is available in France to secure the live testimony of necessary foreign witnesses outside the reach of the United States process.").

use in foreign judicial proceedings.[16]  *See* Second Bermann Decl. ¶ 13.

Plaintiff argues that it would not seriously inconvenience Defendants to litigate this case in the United States because Defendants "have a significant presence in the United States, generate substantial revenues here, and maintain permanent branches here."  *See* Opp. at 18.  However, whether Defendants maintain branches in the United States is irrelevant to the question of whether this case is more appropriately heard in France.  In determining whether a forum is convenient, the court examines the ***"ease of access to sources of proof"*** and not whether the defendant has any branch offices in the United States.  *See Piper*, 454 U.S. at 241 n.6 (emphasis added).  While Defendants might have offices in the United States, these offices do not house witnesses or documentary evidence related to MGA's claims; indeed, as stated, these witnesses and documents are mostly located abroad[17].  *See* Obaro Decl. Ex. 9 ¶ 7; Ex. 10 ¶ 3; Ex. 11 ¶ 3; Ex. 12 ¶ 3; Second Obaro Decl. Ex. 2 ¶¶ 3-5.

### 2.     The Existence of a Parallel Action in France also Supports Dismissal

Plaintiff does not dispute that there are at least three matters currently pending in France involving the same parties.  On July 4, 2008, Defendants initiated a tort action against MGA before the Commercial Court of Lons Le

---

[16] Also, to the extent MGA has important documents within its possession in the United States, those documents can be produced in France.  Indeed, Mr. Larian has already voluntarily submitted an affidavit in the criminal proceeding against Mr. Breuil in France.  *See* Larian Decl. ¶¶ 45-46.  Accordingly, MGA can produce whatever documents it deems material to its claims in France.

[17] Plaintiff alleges that "Defendants acknowledge that much of the documentary proof is located in California." Opp. at 3.  In support of this bogus assertion, Plaintiff cites Defendant Deutsche Bank AG's Objections and Responses to Plaintiff MGA Entertainment Inc.'s Request for Production, Response to Request for Production No. 1.  *See* Opp. at 3.  In MGA's Request For Production No. 1, MGA requested "all documents which refer or relate in any way to any email communication sent from or to any of Plaintiff's United States email addresses. . .."  Defendant Deutsche Bank AG objected to Request No.1 on the basis that it was unduly burdensome to the extent it sought information already in MGA's possession or information to which MGA had equal or superior access.  This hardly constitutes an acknowledgement by Deutsche Bank AG that "much of the documentary proof is located in California."

Saunier in France requesting that MGA repay the full amounts for both the Syndicated Loan and the Bridge Loan after MGA failed to comply with its undertaking to submit a safeguard plan that provided, *inter alia*, for a repayment of the Syndicated Loan over a ten-year period.  MGA challenged the jurisdiction of the Commercial Court of Lons-Le-Saunier and lost.  MGA then filed this case and, in parallel, appealed that decision to the Court of Appeal of Colmar.  On August 25, 2011, the Court of Appeal of Colmar confirmed the denial of MGA's motion to dismiss for lack of personal jurisdiction.  *See* Obaro Decl. Ex. 8.  The Court of Appeal of Colmar held that Defendants' claims were based on MGA's purported tort liability, and therefore, under French law, the court sitting where MGA's obligation was supposed to be satisfied has jurisdiction over the French Tort Action.  *See id.* at 5.  The Court of Appeal also held that MGA's purported wrongful conduct in failing to submit a safeguard plan to the French court and any related injury sustained by Defendants both occurred in France.  *See id.*

Rather than asking this Court to make potentially inconsistent findings of law or fact, MGA should raise its claims in this matter as counterclaims or defenses in the already filed French Tort Action.  Plaintiff's suggestion that it cannot do so is wrong.  *See* Malka Decl. ¶ 17.  French judges enjoy wide discretion in deciding whether related cases are sufficiently connected to warrant consolidation, and consolidation in the present situation would be very likely.  *See* Second Bermann Decl. ¶¶ 5-9.

Accordingly, allowing the case to proceed in France will advance judicial and private interests of economy.  Proceeding in France will avoid duplicate proceedings and possible inconsistent judgments and will allow the parties to resolve all issues between them in an efficient, single more advanced proceeding.  *BCCI Holdings (Luxembourg), Societe Anonyme v. Mahfouz*, 828 F. Supp. 92, 98 (D.D.C. 1993) (dismissing in favor of "virtually identical proceeding in England" where "English litigation clearly will relieve the defendants of the

1   burdens of litigating parallel proceedings and will negate the possibility of

2   inconsistent judgments"); *Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.*, 61 F.3d 696,

3   703 (9th Cir. 1995) (affirming dismissal based in part on the fact the "parallel

4   action in the High Court of Singapore was further advanced than the United States

5   action").[18]

6   ### 3.      France Has the Greater Interest in Resolving this Dispute

7          Plaintiff contends that California has a "compelling interest in

8   adjudicating the withdrawal of huge sums of money out of its economy."  *See* Opp.

9   at 21.  Notably, all of the alleged conduct in the United States recited in Plaintiff's

10  Opposition were committed by non-parties and relate to a contract that did **not**

11  include Defendants.  Whatever wrongful conduct MGA alleges **Defendants**

12  committed all occurred in Europe and a significant portion of that conduct occurred

13  in France.  France is also where most of the Defendants are incorporated, where a

14  significant portion of the documentary evidence and potential witnesses are located,

15  and where at least three actions are already pending between the parties—in

16  addition to an ongoing criminal proceeding against Mr. Breuil, the "principal

17  fraudster" as alleged by MGA.  Additionally, MGA's offer to acquire control of

18  Smoby and its offer to present a safeguard plan were made within the framework of

19  a French bankruptcy proceeding.  *See* Larian Decl. ¶ 17 & Exhibit A thereto; *see*

20  *also* Malka Decl. ¶¶ 5-6.  Because of these factors, France has the overwhelming

21  interest in this litigation.[19]

---

22  [18] Plaintiff also contends that California law applies to this dispute because under *Hall*, California
    law applies to MGA's California securities law claims.  *See* Opp. at 11-21.  Even if Plaintiff

23  establishes that California law applies to all or majority of its claims—which it cannot—the Ninth
    Circuit has held that applicability of California law to the plaintiff's claims should not be given

24  conclusive or even substantive weight in a forum non conveniens analysis.  *See Gemini Capital
    Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1092 (9th Cir. 1998) ("The applicability of

25  United States law to the various causes of action should ordinarily not be given conclusive or
    even substantive weight.") (internal quotations and citations omitted).

26  [19] *See Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1045-46

27  (N.D. Cal. 1993) (holding Hong Kong had greater interest than United States with respect to
    plaintiff's claims that defendants violated the Racketeer Influenced and Corrupt Organizations

28  Act where alleged co-conspirator was subject to criminal proceedings in Hong Kong); *see also
    Mediterranean Golf, Inc. v. Hirsh*, 783 F. Supp. 835, 850-52 (D.N.J. 1991) (dismissing action

### 4.  California Should Not Be Unduly Burdened with Adjudicating this Matter

Plaintiff contends that it is not an "undue burden for a California court to hear this case, merely because the perpetrators – who do business in the United States – reside in foreign countries." *See* Opp. at 22.  The fact that Defendants all reside in foreign countries is not the only reason why litigating this case in California would be unduly burdensome to California: it is also because **the United States has no connection with the vast majority of operative facts in this litigation,** except that MGA is a California corporation and alleges that it received solicitations for the sale of securities from non-parties while it was in California. The Ninth Circuit has previously held that such ties are insufficient.[20]  What is abundantly clear from the operative pleading is that the more important conduct which gives rise to the litigation – the Defendants' Loans to Smoby, the Defendants' interactions with Smoby and Breuil, MGA's offer to acquire control of Smoby, MGA's offer to present a safeguard plan, and Defendants' attempts to collect on the Loans – all occurred in France.

### III.

### PLAINTIFF'S CLAIMS SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(3) BECAUSE A VALID FORUM SELECTION CLAUSE REQUIRES THAT CLAIMS ARISING UNDER THE CONTRACT BE BROUGHT IN FRANCE

As discussed in Defendants' opening brief, MGA's choice of forum is improper because it does not comply with the valid forum selection clause in the Credit Agreement to which Plaintiff's claims are based.  Plaintiff contends that the forum selection clause does not cover its claims because the clause is limited to

---

where France was the locus of dispute, given that "the conduct occurring in France is more important to and gives rise to this litigation . . . .")

[20] *See Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (holding England was proper forum for plaintiff's allegations of securities fraud even where plaintiff alleged solicitations for sale of securities were received in the U.S.).

disputes relating to the "interpretation and execution" of the contract.  *See* Opp. at 12.  However, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract."  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).  Here, whether the Credit Agreement conferred upon Defendants control of Smoby or an affirmative duty to protect third parties from torts committed by Smoby is squarely in issue under MGA's SAC.[21]

Plaintiff also contends that Defendants are estopped from enforcing the forum selection clause because Defendants purportedly declined to abide by it themselves, as Defendants pursued their claims in the Commercial Court of Lons-le-Saunier, and not in the Tribunal de Commerce in Paris.  *See* Opp. at 13-14.  But the French Action is not based on the Loan Agreement; rather, it is based on MGA's failure to abide by its promise to present a safeguard plan.  *See* Obaro Decl. Ex. 8 at 4 ("[T]he damage alleged by the banks results from the infringement of a supposed unilateral commitment of MGA to submit a safeguard plan for the Smoby Group companies to the Commercial Court of LONS-LE-SAUNIER and does not result from the breach of a contractual obligation, the commitment was not made to the banks but as part of the safeguard procedure of the Smoby group companies.").  Therefore, the Defendants' claims in the French Action are not subject to the forum selection clause contained in the Loan Agreement.

---

[21] Plaintiff cites a string of cases, which hold that the phrase "interpretation and execution" of the contract does not encompass fraud in the inducement claims or statutory claims.  *See* Opp. at 12. However, MGA does not make a fraud in the inducement claim in this case and those claims can be distinguished from MGA's claims because unlike MGA's claims, a fraud in the inducement claim does not relate to interpretation of the particular contract.

# IV.

## ALTERNATIVELY, PLAINTIFF'S CLAIMS SHOULD BE STAYED UNDER THE COLORADO RIVER DOCTRINE, AS DOING SO WILL SERVE THE INTERESTS OF WISE JUDICIAL ADMINISTRATION

### A.   THE FRENCH TORT ACTION AND THIS ACTION ARE SUFFICIENTLY SIMILAR TO JUSTIFY STAYING THIS ACTION

Plaintiff contends that this "case **has nothing to do with** whether [MGA] is liable under the terms of the Bank loans to Smoby." *See* Opp. at 23 (emphasis added).  MGA's assertion is baseless.  In the French Tort Action, Defendants seek repayment of both the Syndicated and Bridge Loans.  Defendants also assert that MGA is required to compensate them for damages suffered as a result of MGA's failure to present a safeguard plan to the Commercial Court of Lons-Le-Saunier.  In the instant Action, MGA, in turn, argues that it should not be required to repay the loans to Defendants because of Defendants' purported wrongful conduct.  *See generally* SAC.  Both cases are parallel because they both involve the same parties and the principal issue of whether MGA is liable to Defendants for the Syndicated and Bridge Loans.

### B.   THE COLORADO RIVER FACTORS WEIGH IN FAVOR OF STAYING OR DISMISSING THIS ACTION IN FAVOR OF THE FRENCH TORT ACTION

As discussed above, if both this case and the French Tort Action are allowed to proceed simultaneously, each forum will be determining whether MGA is required to repay both the Syndicated and Bridge Loans, creating a substantial risk of inconsistent outcomes and duplication of efforts.  Plaintiff offers no persuasive response to this point.  Instead, Plaintiff contends that, if this case is dismissed or stayed, it would not reduce duplication of legal efforts, because Plaintiff would be required to pursue its claims in the Commercial Court of Paris under the forum selection clause.  *See* Opp. at 24 -25.  This argument misses the mark as Defendants' arguments to enforce the forum selection clause under Rule

12(b)(3) and their arguments under *Colorado River* are made in the alternative. In other words, this Court could find that MGA's claims may be asserted as counterclaims or defenses in the French Tort Action, and stay this case under *Colorado River*, without reaching the issue of whether the forum selection clause is enforceable. Defendants' arguments are consistent: the parties' claims should be litigated only once, and **France** is the more appropriate forum to litigate MGA's claims.

Plaintiff also contends that "while the [French Tort Action] has been pending for three years, it is still in its infancy on the merits." *See* Opp. at 25. However, what Plaintiff fails to mention is that the reason the French Tort Action has not proceeded to the merits is because Plaintiff has delayed the proceedings through numerous procedural motions. As discussed above, the Court of Appeal of Colmar has denied Plaintiff's appeal on its motion to dismiss for lack of jurisdiction over MGA. Thus, the French court is now in a position to resolve Defendants' claims against MGA on the merits. *See* Obaro Decl. Ex. 8. Given the procedural posture, MGA still has an opportunity to bring its current claims as counterclaims and defenses in the French Tort Action. *See* Malka Decl. ¶ 17.

# V.

## CONCLUSION AND REQUESTED RELIEF

For the reasons set forth in their Motion and in this Reply, Defendants respectfully request that the Court grant the Motion, dismiss or stay the Action on *forum non conveniens* grounds, or dismiss under Rule 12(b)(3), or stay the action under the *Colorado River* doctrine. Defendants respectfully request any such other and further relief as this Court deems just and necessary.

Filing counsel hereby attests that concurrence in the filing of this document has been obtained from the other signatories of this document.

1   Dated:  February 13, 2011

2                                              WEIL, GOTSHAL & MANGES LLP

3                                              By:_____/s/ Christopher J. Cox_____
                                                       Christopher J. Cox
4                                                   Attorneys for Defendants
                                                   Deutsche Bank AG, Barclays
5                                                  Bank PLC. and Commerzbank
                                                       Aktiengesellschaft
6

7   -and-                                      -and-

8   KELLEY DRYE & WARREN LLP                   HUGHES HUBBARD & REED LLP

9

10  By:__/s/Lee S. Brenner_____        By:_____/s/ Rita M. Haeusler_____

11      Lee S. Brenner (Bar No. 180235)            Rita M. Haeusler (Bar No. 110574)
        10100 Santa Monica Blvd, 23rd Flr.         350 South Grand Avenue, 36th Flr.
12      Los Angeles, CA 90067                      Los Angeles, CA 90071
        Telephone: (310) 712-6125                  Telephone: (213) 613-2896
13      Facsimile: (310) 712-6199                  Facsimile: (213) 613-2950

14      Attorneys for Defendant                    Attorneys for Defendant
        Crédit Agricole Corporate and             Société Générale
15      Investment Bank f/k/a Calyon

16

17

18

19

20

21

22

23

24

25

26

27

28