CARRIE A. MCQUAID (SBN 254066)
cmcquaid@mgae.com
**MGA ENTERTAINMENT INC.**
**LEGAL DEPARTMENT**
16380 Roscoe Boulevard
Van Nuys, California 91406
Telephone:  818-892-2525
Facsimile:   818-895-0771

Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a corporation,<br><br>              Plaintiff,<br>    vs.<br><br>DEUTSCHE BANK AG, a German Company; BARCLAYS BANK PLC, a British Corporation; CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, DBA CALYON, a French Public Limited Company; CAISSE REGIONALE DE CREDIT AGRICOLE DE FRANCHE COMPTE, a French Cooperative Company; COMMERZBANK AKTIENGESELLSCHAFT, a British Corporation; DEUTSCHE BANK LUXEMBOURG SA, a Luxembourger Company; SOCIETE GENERALE, a French Public Limited Company; and DOES 1 through 100, inclusive,<br><br>              Defendants. | Case No.: CV 11-04932 GW (RZx)<br><br>**MGA ENTERTAINMENT, INC.'S NOTICE OF APPEAL AND REPRESENTATION STATEMENT** |

1  NOTICE IS HEREBY GIVEN that MGA ENTERTAINMENT, INC., plaintiff in
2  the above named case, hereby appeal to the United States Court of Appeals for the Ninth
3  Circuit from an order granting Defendants' Motion to Dismiss Plaintiff's Second
4  Amended Complaint, entered in this action on January 29, 2015 (Docket No.198)
5  attached as Exhibit A.
6  Plaintiff's Representation Statement is attached to this Notice as required by the
7  Ninth Circuit Rule 3-2(b) and Federal Rule of Appellate Procedure 12(b).

Dated: February 27, 2015

**MGA ENTERTAINMENT, INC LEGAL**

By:_____
CARRIE A. MCQUAID
Attorney for Plaintiff
MGA ENTERTAINMENT, INC.

# REPRESENTATION STATEMENT

The undersigned represents Plaintiff-Appellant MGA Entertainment, Inc. and no other party. Pursuant to Rule 12(b) of the Federal Rules of Appellate Procedure and Circuit Rule 3-2(b), Plaintiff-Appellate submits this Representation Statement. The following list identifies all parties to the action and the parties' respective counsel by name, firm, address, telephone number, and email.

| Parties | Counsel of Record |
|---|---|
| MGA ENTERTAINMENT, INC, a California Corporation | **Carrie A. McQuaid**<br>MGA Entertainment, Inc. – Legal Dept.<br>16300 Roscoe Blvd<br>Van Nuys, CA 91406<br>Email: cmcquaid@mgae.com |
| DEUTSCHE BANK AG, a German Company | **Christopher J Cox**<br>Weil Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065-1175<br>650-802-3000<br>Fax: 650-802-3100<br>Email: chris.cox@weil.com<br><br>**T Ray Guy**<br>Weil Gotshal & Manges LLP<br>300 Crescent Court<br>Dallas, TX 75201<br>214-746-7872<br>Fax: 214-746-7777<br>Email: ray.guy@weil.com |
| BARCLAYS BANK PLC, a British Corporation | **Christopher J Cox**<br>Weil Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065-1175<br>650-802-3000<br>Fax: 650-802-3100<br>Email: chris.cox@weil.com<br><br>**T Ray Guy** |

| | |
|---|---|
| | Weil Gotshal & Manges LLP<br>300 Crescent Court<br>Dallas, TX 75201<br>214-746-7872<br>Fax: 214-746-7777<br>Email: ray.guy@weil.com |
| CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, DBA CALYON, a French Public Limited Company | **Christopher J Cox**<br>Weil Gotshal & Manges LLP<br>Silicon Valley Office<br>201 Redwood Shores Pkwy<br>Redwood Shores, CA 94065-1175<br>650-802-3000<br>Fax: 650-802-3100<br>Email: chris.cox@weil.com<br><br>**Daniel Schimmel**<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>212-808-7800<br>Fax: 212-808-7897<br>Email: dschimmel@kelleydrye.com<br><br>**Lee S Brenner**<br>Kelley Drye & Warren LLP<br>10100 Santa Monica Blvd., 23rd Floor<br>Los Angeles, CA 90067-4008<br>310-712-6100<br>Fax: 310-712-6199<br>Email: lbrenner@kelleydrye.com<br><br>**Marisa A Lorenzo**<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>212-808-7800<br>Fax: 212-808-7897<br>Email: mlorenzo@kelleydrye.com<br><br>**Sarah L Reid**<br>Kelley Drye & Warren LLP<br>101 Park Avenue |

| | | |
|---|---|---|
| 1 | | New York, NY 10178 |
| 2 | | 212-808-7800 |
| 3 | | Fax: 212-808-7897 |
| | | Email: sreid@kelleydrye.com |
| 4 | COMMERZBANK AKTIENGESELLSCHAFT, a British Corporation | **Christopher J Cox**<br>Weil Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065-1175<br>650-802-3000<br>Fax: 650-802-3100<br>Email: chris.cox@weil.com<br><br>**T Ray Guy**<br>Weil Gotshal & Manges LLP<br>300 Crescent Court<br>Dallas, TX 75201<br>214-746-7872<br>Fax: 214-746-7777<br>Email: ray.guy@weil.com |
| 14 | SOCIETE GENERALE, a French Public Limited Company | **Rita M Haeusler**<br>Hughes Hubbard and Reed LLP<br>350 South Grand Avenue 36th Floor<br>Los Angeles, CA 90071-3442<br>213-613-2800<br>Fax: 213-613-2950<br>Email: haeusler@hugheshubbard.com<br><br>**Alex Edwin Spjute**<br>Hughes Hubbard and Reed LLP<br>350 South Grand Avenue 36th Floor<br>Los Angeles, CA 90071-3442<br>213-613-2800<br>Fax: 213-613-2950<br>Email: spjute@hugheshubbard.com<br><br>**Christopher J Cox**<br>Weil Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065-1175<br>650-802-3000<br>Fax: 650-802-3100<br>Email: chris.cox@weil.com |

|   |
|---|
| **Michael Luskin**<br>Luskin Stern and Eisler LLP<br>Eleven Times Square<br>New York, NY 10036<br>212-597-8200<br>Fax: 212-974-3205<br>Email: luskin@lsellp.com |

Dated:  February 27, 2015

MGA ENTERTAINMENT, INC LEGAL

By:_____
CARRIE A. MCQUAID
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-4932-GW(RZx) | | JS-6 | Date | January 29, 2015 |
|---|---|---|---|---|---|
| Title | MGA Entertainment Inc. v. Deutsche Bank AG, et al. | | | | |

Present: The Honorable GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Patricia Gomez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Peter Morris
Carrie McQuaid

Attorneys Present for Defendants:

Lee S. Brenner
Christopher J. Cox
Alex E. Spjute
Daniel S. Schimmel - by telephone

PROCEEDINGS:   MOTION TO DISMISS SECOND AMENDED COMPLAINT [83]
SCHEDULING CONFERENCE

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant's Motion to Dismiss Case Motion to Dismiss or Stay MGA's Second Amended Complaint for Forum Non Conveniens, or Alternataively to Dismiss for Improper Venue under Rule 12(b)(3), or Alternatively to Stay this Action under the Colorado River Doctrine is GRANTED. This action is DISMISSED WITHOUT PREJUDICE on forum-non-conveniens grounds, and DISMISSED WITH PREJUDICE on preclusion grounds.

: 34

Initials of Preparer   PG

<u>*MGA Entm't, Inc. v. Deutsche Bank AG, et al.*</u>; Case No. CV-11-4932-GW(RZx)
Ruling Following Supplemental Briefing on Banks' Motion to Dismiss Second Amended Complaint

MGA Entertainment, Inc. ("MGA") and the Banks[1] are here after submitting supplemental citations in support of their competing requests to have the Court reinstate or dismiss this previously-stayed action. The Court has reviewed those citations. They do not change its conclusion, nor do they convince the Court that it relied on inapposite authorities. But they do provide additional context, and suggest that the Court may have overly truncated its analysis of an (interesting) issue deserving more discussion.

That discussion proceeds in the following manner. First, the Court will situate itself and the parties regarding preclusion law, discussing MGA's first three cases in the process.[2] Second, the Court will discuss the relevant authorities directed to the key question: which law would California courts apply to determine the preclusive effect of a prior foreign judgment? Finally, the Court will turn that discussion to this case's facts, explaining why it believes that California courts would apply French preclusion law in this case to determine the preclusive effect of the French judgment.

### 1. Preclusion

Thankfully, everybody at least agrees on one thing: As a federal court sitting in diversity, this Court initially looks to California law to determine the preclusive impact of a prior judgment. *See Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002) (collecting cases). In effect, then, the Court is acting just like a state trial court facing the same question: How should a California court determine the preclusive effect of another court's prior judgment?

With respect to federal and sister-state judgments, California courts apply the preclusion rules of the court that issued the decision. *See Younger v. Jensen*, 26 Cal.3d 397, 411 (1980) ("A federal judgment has the same effect in the courts of this state as it would have in a federal court"); *Levy v. Cohen*, 19 Cal.3d 165, 172-73 (1977) ("[A federal] order or judgment has the same effect in the courts of this state as it would have in a federal court"); *Martin v. Martin*, 2 Cal.3d 752, 761 (1970) ("A federal court judgment has the same effect in the courts of this state as it would in a federal court"); **Butcher v. Truck Ins. Exch.**, 77 Cal.App.4th 1442, 1452 (2000) ("California follows the rule that the preclusive effect of a prior judgment of a federal court is determined by federal law, at least where the prior judgment was on the basis of federal question jurisdiction"); *Brinker v. Superior Court*, 235 Cal.App.3d 1296, 1300 (1991) ("Under California law, both the validity and effect of a foreign judgment are governed by the laws of the state in which it is rendered"); *Krofcheck v. Ensign Co.*, 112 Cal.App.3d 558, 564 (1980) ("It is well settled that both the validity and the effect of a judgment are governed by the laws of the state

---

[1] Defendants are Deutsche Bank AG ("Deutsche Bank"), Barclays Bank PLC ("Barclays"), Commerzbank Aktiengesellschafts ("Commerzbank"), Credit Agricole Corporate and Investment Bank ("Credit Agricole"), and Societe Generale ("SocGen"). This Tentative Order refers to the banks, collectively, as "the Banks."

[2] When discussed in the flow of the Tentative Order, the Court often identifies MGA's cases in **bold** so they are not overlooked.

1

where it is rendered"); *see also Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982) ("This Court has consistently recognized that, in order to fulfill [the] constitutional mandate [of full faith and credit], the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced"). The Court explained this in Note 7 of its last Tentative Ruling. But for further clarity, it sets forth a few additional examples below.

The easiest example is a sister-state judgment.[3] A sues B in Arizona and the Arizona court enters a final judgment (according to Arizona law) in B's favor. A then comes to California and sues B again. B asserts claim preclusion. The California court will look to Arizona law to determine the preclusive effect of the Arizona judgment. *See Brinker*, 235 Cal.App.3d at 1300; *R.S.*, 194 Cal.App. 4th at 198-203. As a result, this Court, sitting in diversity, would do the same. *See Shaffer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 10-CV-CRB, 2011 U.S. Dist. LEXIS 80478, at *9-*10 (N.D. Cal. July 25, 2011) ("Because this Court is sitting in diversity jurisdiction, it must follow California law. California law gives judgments from other states the same preclusive effect as the laws of the state in which those judgments were rendered. The FINRA award was rendered in Pennsylvania[.] It is as simple as that: Pennsylvania law governs.").

Federal preclusion is not much more complicated, except that federal preclusion standards incorporate state law for prior federal judgments issued by a court sitting in diversity. Federal-question cases are easiest, so the Court starts with one of those.

A sues B on a federal claim in this Court and this Court enters a final judgment (according to federal law) in B's favor. A then goes up the street and sues B on the same grounds in state court. The California court will look to federal law to determine the preclusive effect of this Court's judgment. *Younger*, 26 Cal.3d at 411; *Levy*, 19 Cal.3d at 172-73; *Louie v. BFS Retail & Commercial Operations, LLC*, 178 Cal.App.4th 1544, 1554 (2009) ("That [prior] federal complaint was based on federal question jurisdiction (28 U.S.C. § 1331), not diversity jurisdiction (28 U.S.C. § 1332). Thus, we look to the preclusive effect under federal law, though we observe federal law is consistent with California law in this case"). As a result, this Court, sitting in diversity, would do the same. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) ("[A] federal court sitting in diversity must apply the res judicata law of the state in which it sits. Hence California's law of res judicata dictates what preclusive effect is to be accorded to the prior judgment against appellant. That California law, however, determines the res judicata effect of a prior federal court judgment by applying federal standards. Therefore, those federal standards are applicable here to determine the preclusive effect of the prior judgment.").

A prior federal judgment issued by a court sitting in diversity adds a slight wrinkle, but this is due largely to terminology. When faced with a prior judgment issued by a federal court sitting in diversity, state courts *still apply federal law* to determine that judgment's preclusive effect. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) ("In short, federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity"). However, because federal preclusion law incorporates state preclusion standards for judgments issued by a federal court sitting in diversity, in effect, the state court applies state law

---

[3] The Court directs MGA to *R.S. v. Pacificare Life & Health Ins. Co.*, 194 Cal.App.4th 192 (2011), for a comprehensive recent application.

2

(as incorporated into the federal law). *Id.* ("This [is] a classic case for adopting, *as the federally prescribed rule of decision*, the law that would be applied by state courts in the State in which the federal diversity court sits") (emphasis added). Courts sometimes misleadingly refer to this as applying "state law,"[4] but really, it is only state law *as incorporated into* federal preclusion law. **Hardy v. America's Best Home Loans**, 181 Cal.Rptr. 3d 685 (Ct. App. 2014)[5] ("While *federal common law also governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity*, the federal Supreme Court concluded there was no need to establish a uniform federal rule since state, not federal, substantive law was at issue, explaining: . . . 'This is . . . a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits'") (citing and quoting *Semtek Int'l*, 531 U.S. at 508).

The example here would be as follows. A sues B in this Court, with this Court sitting in diversity. This Court enters a final judgment in B's favor. A then goes up the street and sues B on the same grounds in state court. The California court will look to federal law to determine the preclusive effect of this Court's judgment. When it does this, it will see that federal law incorporates state preclusion law for federal judgments issued by a court sitting in diversity. As a result, it will apply state preclusion law as incorporated into federal law. *Semtek Int'l*, 531 U.S. at 509.

As Judge Breyer put it: "It is as simple as that." *Shaffer*, 2011 U.S. Dist. LEXIS 80478, at *10. Indeed, MGA's authorities are not to the contrary.

MGA cites **Butcher** for the proposition that "California's law of res judicata applies not only in diversity cases, but also in federal question cases." *See* Docket No. 196, MGA's Supp'l List of Authorities ("MGA Supp. List") at 1:8-2:3. But, actually, *Butcher* says the opposite: "California follows the rule that the preclusive effect of a prior judgment of a federal court is determined by federal law, at least where the prior judgment was on the basis of federal question jurisdiction." 77 Cal.App.4th at 1452. In the section where *Butcher* says that California law applies, it is only because the *Butcher* court believes the federal courts would apply California law to determine the preclusive effect of the prior federal judgment. *See Butcher*, 77 Cal.App.4th at 1455 ("If . . . our Supreme Court would apply the rule of *Levy* and *Martin* to both diversity and federal question situations, *the law to be applied would be federal law*, which in this case would be the law followed by the Ninth Circuit. *That law, in turn*, as we have seen, *is the law of the forum state*, which in this case is California.").[6] In addition, *Butcher* pre-dates

---

[4] *See, e.g., Burdette v. Carrier Corp.*, 158 Cal.App.4th 1668, 1681 (2008) (citing *Semtek* for the proposition that: "The claim-preclusive effect of the prior federal judgment is determined by California law"; but then clarifying: "[*Semtek*] held the dismissal on the merits was governed by a federal rule that in turn incorporates the state law"). Indeed, looking back at the last Tentative Order, the Court sees that it even used this imprecise shorthand! The Court also notes that this terminology issue might be part of the confusion. While, as *Jacobs* instructs, this Court looks to *and applies* California law to determine the preclusive effect of a prior judgment when sitting in diversity, California law, itself, may incorporate another jurisdiction's preclusion law. (Courts sometimes refer to this as a conflict-of-laws scenario, but it does not follow a typical conflict-of-laws analysis.)

[5] *Hardy* has not yet received official reporter page numbers.

[6] *Butcher* is actually wrong about federal law (which it is ostensibly applying), although it can hardly be blamed since the leading modern cases post-dated it. As explained above, federal courts apply federal preclusion law to prior judgments issued by a federal court exercising federal question jurisdiction; they also apply federal preclusion

3

*Semtek*, which really clarified the law in this area, as recognized by later California decisions. *See, e.g., Burdette*, 158 Cal.App.4th at 1681.

Indeed, one of those later decisions was ***Hardy***, MGA's next citation. MGA cites *Hardy* for the proposition that "under *Semtek* . . . California law of res judicata . . . determine[s] the preclusive effect of a prior federal decision." MGA Supp. List at 2:6-12. Again, however, *Hardy* and *Semtek* say the opposite: "While *federal common law also governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity*, the federal Supreme Court concluded there was no need to establish a uniform federal rule since state, not federal, substantive law was at issue, explaining: . . . 'This is . . . a classic case for adopting, *as the federally prescribed rule of decision*, the law that would be applied by state courts in the State in which the federal diversity court sits.'" *Hardy*, 181 Cal.Rptr. 3d 685 (quoting *Semtek Int'l*, 531 U.S. at 508) (emphasis added).

MGA's next citation is ***Jacobs***. If *Butcher* and *Hardy* can be thought of as "step two" cases – asking what law the California courts would apply to determine the preclusive effect of a prior judgment – *Jacobs* is a "step one" case – telling this Court, as an initial matter, to look to California law when sitting in diversity. Once the Court looks to California law, however, it must move on to step two, which asks: How should a California court determine the preclusive effect of a prior judgment? Indeed, the cases upon which *Jacobs* relies follow just this path. *E.g., Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) ("Because this is a diversity case, we apply the collateral estoppel rules of the forum state, in this case Washington. *Washington applies federal law to determine the preclusive effect of a prior federal judgment. Under federal law . . .*"); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) ("[A] federal court sitting in diversity must apply the res judicata law of the state in which it sits. Hence California's law of res judicata dictates what preclusive effect is to be accorded to the prior judgment against appellant. *That California law, however, determines the res judicata effect of a prior federal court judgment by applying federal standards. Therefore, those federal standards are applicable here to determine the preclusive effect of the prior judgment*."). Again, this is all in Note 7 of the prior Tentative Order.

To that end, the Court is not entirely sure why MGA cited these first three cases.[7] They do not address the question of how California determines the preclusive effect of prior foreign judgments, nor do they tell the Court anything it did not already tell the parties. As the Court explained before, a federal court sitting in diversity looks first to California law. (*Jacobs, Pardo, Constantini*). When it gets there, it sees that California law applies the preclusion rule of the court that issued the first judgment. (*Younger, Levy, Martin, Butcher, Brinker, Krofcheck, Hardy, R.S., Louie, Semtek, Pardo, Constantini*). Sometimes, that rule, while actually a federal

---

law to prior judgments issued by a federal court exercising diversity jurisdiction, but that federal law incorporates state law. *See Taylor v. Sturgell*, 553 U.S. 880, 891 & n.4 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law. For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of res judicata, which this Court has ultimate authority to determine and declare . . . . For judgments in diversity cases, federal law *incorporates the rules of preclusion applied by the State* in which the rendering court sits.") (relying on *Semtek*, 531 U.S. 497, 506-09 (2001)).

[7] The Court suspects that MGA may have been trying to demonstrate that the Court made a mistake in explaining how preclusion doctrine works, as if that might be the string unraveling the decision. It did not.

rule, looks back to the state law; courts may call this "applying state law," but they really mean, "applying state law as incorporated into federal law." (*Hardy, Burdette, Semtek*).

To be absolutely clear: nobody disputes that this Court initially looks to California law to determine the preclusive impact of the prior French judgment. The crucial question is: what then?[8]

### 2. The Key Question

Last time the Court answered this question, MGA *adamantly* insisted that no case applying California law had ever relied on foreign law to determine the *preclusive effect* of a prior foreign judgment. Having had a chance to review the cases the Court cited, the Court expects MGA may have revisited that position.

As the Court explained before, several courts examining this precise issue have held or stated that California looks to foreign preclusion law to determine the preclusive effect of a prior foreign judgment. For example, in *Estate of Cleland*, the California Court of Appeal looked to Mexican law to determine the preclusive effect of a prior Mexican divorce decree. *In re Cleland's Estate*, 119 Cal.App.2d 18, 20 (1953) ("The decree of the court of the state of Chihuahua should be given only such effect as it had by the laws of that state"). In so doing, it cited *Gilmer v. Spitalny*, 84 Cal.App.2d 39 (1948), where, according to the framework described above, the Court of Appeal explained that Arizona law applied to determine the preclusive effect of a prior Arizona judgment, *id.* at 44 ("It is well settled that both the validity and the effect of a judgment is governed by the laws of the state where it is rendered").[9] The implication from this citation is that, as with a sister-state judgment (*Gilmer*), California courts should look to foreign law to determine preclusive effect or a prior foreign judgment (*Estate of Cleland*).

In *Bank of Montreal v. Kough*, 430 F.Supp.1243 (N.D. Cal. 1977), a California federal court sitting in diversity applied Canadian law to determine the preclusive impact of a prior Canadian judgment, *id.* at 1251 ("The parties agree that the res judicata effect given the British Columbia judgment sued upon here is to be determined by reference to Canadian laws") (citing *Estate of Cleland*). When *Kough* went up on appeal, the Ninth Circuit independently reviewed the issue *and adopted the district court's approach. Bank of Montreal v. Kough*, 612 F.2d 467, 472 (9th Cir. 1980) ("According to the trial judge's analysis, *which we adopt*, all of appellant's counterclaims were so intimately intertwined with plaintiff's cause of action on the guarantee agreement that they fell within [a case decided under the foreign law] and were Res judicata") (emphasis added). Though in dicta, the California Court of Appeal recently re-affirmed this approach in *Beroiz v. Wahl*, 84 Cal.App.4th 485 (2000), writing: "Generally, a foreign judgment will be res judicata in an American court if it has that effect in its country of rendition, and if it

---

[8] Although MGA's leading citations do nothing to address this key question, they do illustrate a couple relevant points about California law. First, they show that California courts strongly favor applying the rendering court's preclusion rules. Second, they indicate a policy reason: applying the second court's preclusion rules undermines the finality of the first judgment and invites forum shopping and jurisdictional arbitrage. The Court returns to the policy considerations below.

[9] Interestingly, in light of the prior argument's enforcement-vs.-preclusion discussion, *Gilmer* seems to say that preclusion and enforcement should adhere to similar rules: "No good reason appears why this same rule should not apply in a case where a direct enforcement of such a judgment is sought." See *Gilmer*, 84 Cal.App.2d at 45.

5

meets the American standard of fair trial before a court of competent jurisdiction," *id.* at 494 (citing 7 Witkin, Cal. Proc. (4th ed. 1997) Judgment, § 299, p. 846[10]).

So, as this Court explained before, judges applying California law *have* looked to foreign law to determine the preclusive effect of a prior foreign judgment.

Nonetheless, as ***Vedatech K.K. v. Crystal Decisions, Inc.***, 03-CV-4578-RMW, 2009 U.S. Dist. LEXIS 40012 (N.D. Cal. Apr. 28, 2009), points out, *Estate of Cleland*, upon which *Kough* relied, applied now-repealed Cal. Civ. Proc. Code § 1915, which stated: "a final judgment of any tribunal of a foreign country having jurisdiction, according to the laws of such country, to pronounce the judgment, shall have the same effect as in the country where rendered, and also the same effect as final judgments rendered in this state." Although *Kough* (at both levels) and *Beroiz*, all post-dated § 1915's repeal and the legislature's initial enactment of the Uniform Foreign Money Judgment Act ("UFMJA"),[11] for the sake of argument, the Court will *assume* that *Estate of Cleland*, *Kough*, and *Beroiz* (the last of which did not even cite *Estate of Cleland*) rest on shaky footing. As such, the Court will explore other sources of law in order to see if they alter the Court's initial answer to the key question.[12]

In exploring these sources, the Court looks first to UFMJA. As the name suggests, that act provides for the recognition and enforcement of foreign money judgments. As the California Supreme Court explained in ***Manco Contracting Co. (W.W.L.) v. Bezdikian***, a foreign judgment entitled to recognition "may [be relied] on [for] res judicata or collateral estoppel principles unrelated to enforcement of a money judgment." 45 Cal.4th 192, 205-06 (2008) (citing Restatement (Third) of Foreign Relations Law § 481, cmt. b. (1987)); *see also Renoir v. Redstar Corp.*, 123 Cal.App.4th 1145, 1150 & n.1 (2004). The prerequisites to recognition are straightforward and have not been questioned here. *See* Cal. Civ. Proc. Code § 1716. Still,

---

[10] Witkin has since moved this section. *See* 7 Witkin, Cal. Proc. (5th ed. 2008) Judgm., § 356, p. 973.

[11] At the time, it was called the Uniform Foreign Money-Judgments Recognition Act of 1967.

[12] The *Erie* doctrine requires that federal courts exercising diversity jurisdiction over state-law claims apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law"). In ascertaining state law, federal courts must look to statutes and decisions from the state's highest court. *Erie*, 304 U.S. at 78. If the issues involved are ones upon which the state supreme court has not yet ruled, federal courts must attempt to predict how the state supreme court would rule on an issue. In so doing, federal courts may look to state supreme court dicta and the opinions of lower state courts, as well as decisions from other jurisdictions, statutes, treatises, and restatements. *See Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996) ("When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. [W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.") (citations and quotations omitted); *see also Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) (same); *Tenneco W., Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir. 1985) ("State law includes the decisions of state courts. Where an intermediate appellate state court has decided an issue of state law, that decision is not to be disregarded by a federal court unless it is convinced that the highest court of the state would decide otherwise particularly where the highest court has refused to review the lower court's decision") (citations and quotations omitted, punctuation altered). Ultimately, the net result is that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).

6

however, that does not answer the key question: when relying on a recognized foreign judgment for preclusion principles, which jurisdiction's preclusion principles apply – California's, or the foreign court's?

If not providing definitive guidance, the UFMJA does provide some serious insight. Cal. Civ. Proc. Code § 1719(a) states that a foreign money judgment is: "Conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive[.]" This section is clearly an homage to the full-faith-and-credit clause/statute. *See Andes v. Versant Corp.*, 878 F.2d 147, 149 (4th Cir. 1989) ("The antecedent of this is certainly the Full Faith and Credit Clause[.]"). As the Court explained before, under the full-faith-and-credit framework, California courts apply sister-state preclusion law to determine the preclusive impact of a prior sister-state judgment, and federal law to determine the preclusive effect of a prior federal judgment (which sometimes incorporates state law). In other words, under the full-faith-and-credit framework, California courts apply the judgment-rendering court's preclusion law to determine the preclusive effect of a prior judgment. By using this full-faith-and-credit language, the UFMJA indicates (consistent with *Estate of Cleland*, *Kough*, and *Beroiz*) that California law looks to foreign law to determine the preclusive effect of a prior foreign judgment.

Legislative materials also support this view. For example, the Assembly Committee's analysis[13] of the most recent UFMJA revision explains that the act: "specif[ies] that recognition of the foreign-country judgment has . . . a conclusive effect between the parties as a sister state judgment entitled to full faith and credit[.]" *See* CA. B. An., S.B. 639 Assem., 7/3/2007. The analysis continues:

> Recognition of a foreign-country judgment is essential before the judgment can be given preclusive effect under res judicata and collateral estoppel principles. Recognition of a foreign judgment occurs to the extent the forum court gives the judgment "the same effect with respect to the parties, the subject matter of the action and the issues involved that it has in the state where it was rendered."

*Id.* That last quotation cites and parrots language from the Restatement (Second) of Conflicts of Laws, indicating that the legislature looked to the Restatement when adopting the now-operative UFMJA. At § 98, that Restatement says:

> A foreign nation judgment which meets the conditions specified in Comment *c* will be given the same degree of recognition as a sister State judgment, subject to the qualification discussed in Comment *e*, so far as the immediate parties and the underlying cause of action are concerned.

*Id.* § 98, cmt. f. The commentary to the 1988 Revision further provides:

> A foreign nation judgment which meets the conditions specified in Comment *d* will be given the same degree of recognition as a sister State judgment, subject to the qualification discussed in Comment *f*, so far as the immediate parties and the underlying claim are concerned. It is uncertain, however, whether an American court will always give similar effect to the foreign rules of privity in determining what persons, other than the parties, are bound by the judgment (compare § 94, Comment *d*) and to the foreign rules as to splitting a claim or as to collateral

---

[13] California courts often look to legislative committee analyses when interpreting statutes. *See, e.g., People v. Allegheny Cas. Co.*, 41 Cal.4th 704, 711-12 (2007).

7

> estoppel (compare § 95, Comments *e* and *g*). Normally, an American court would apply the foreign rules as to these matters if these rules are substantially the same as the rules of the American court.

Restatement (Second) of Conflict of Laws § 98 (1988 rev.), cmt. g. Thus, the Restatement (Second) of Conflict of Laws indicates that the general rule is to apply foreign law to determine the preclusive effect of a prior foreign judgment, with the caveat that some courts *might* apply local law to determine privity and issue preclusion (though not claim preclusion).

Still there is more. *Estate of Cleland* rested (at least partly) on now-repealed Cal. Civ. Proc. Code § 1915. The Law Revision Commission comments to § 1915 indicate that the UFMJA supplanted § 1915's impact on the recognition of foreign nation money judgments. *See* Cal. Civ. Proc. Code § 1915, Law Revision Commission Comments ("The effect of Section 1915 was even further diminished upon the enactment of the Uniform Foreign Money-Judgments Recognition Act (Sections 1713-1713.8) in 1967, which removed foreign nation money judgments entitled to recognition under that act from the effect of Section 1915"). As mentioned above, § 1719(a) and the UFMJA's legislative history indicate that the UFMJA directs California courts to apply foreign law to determine the preclusive effect of a recognized foreign judgment. In addition, the Law Revision Commission comments, like the Assembly Committee's analysis, cite the Restatement (Second) of Conflicts of Laws § 98. Again, § 98 indicates that the general rule is to apply foreign law to determine the preclusive effect of a prior foreign judgment (with the caveat that the propriety of applying foreign rules of privity and issue preclusion, though not claim preclusion, might be less clear).

The Assembly and Law Revision Committees are not the only sources citing the Restatements in this context. In addition to the Restatement (Second) of Conflicts of Laws, courts have repeatedly cited the Restatement (Third) of the Foreign Relations Law of the United States ("Restatement (Third) of the Foreign Relations Law). *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1213 (9th Cir. 2006) ("We may appropriately consult the Restatement (Third) of the Foreign Relations Law of the United States ('Third Restatement' or 'Restatement'), given that California courts frequently cite the Restatement, as well as earlier Restatements, as sources of law") (collecting cases).[14]; *see also Manco Contracting*, 45 Cal.4th at 206. The Restatement (Third) of the Foreign Relations Law provides:

> A foreign judgment is generally entitled to recognition by courts in the United States to the same extent as a judgment of a court of one State in the courts of another State. As in the case of a sister-State judgment, a judgment of a foreign country ordinarily has no greater effect in the United States than in the country where the judgment was rendered.

---

[14] The Court notes that the Ninth Circuit looked to the Restatement in *Yahoo!* only because "the [UFMJA] does not cover injunctions." 433 F.3d at 1213. *Vedatech* was similarly an injunction case. In explaining why it looked beyond the UFMJA, the *Vedatech* court cited *Yahoo!* at page 1213 for the proposition that: "California has adopted the Uniform Foreign Money-Judgments Recognition Act, but no state statute governs the enforcement of legal conclusions or injunctions of foreign courts." 2009 U.S. Dist. LEXIS 40012, at *10. While this Court agrees with much of that sentence, it respectfully disagrees with *Vedatech*'s suggestion that *Yahoo!* supports the proposition that "no state statute governs the enforcement of legal conclusions," at least insofar as "legal conclusions" is coordinate with "preclusion." *Yahoo!* does not say anything about whether California has state statutes governing the "enforcement of legal conclusions."

8

*Id.* § 481 cmt. c. In so stating, the Restatement (Third) of the Foreign Relations Law, once again, cites Restatement (Second) of Conflicts of Laws § 98 and points directly to comment f.

The Reporters' Notes further indicate that applying foreign law to determine the preclusive effect of a prior foreign judgment is the general rule, while applying the forum state's preclusion law is the exception:

> It is generally stated that a judgment will not be given greater effect in other states than it has in the state of origin, Comment c. However, some American courts have applied their own concepts of res judicata to foreign country judgments without inquiring whether the state of the rendering court would apply these concepts in the same ways.

Restatement (Third) of the Foreign Relations Law, note 3. In this Court's view, the California authorities and Restatements clearly indicate that, generally, a California court would apply foreign law to determine the preclusive effect of a prior foreign judgment.

Moving beyond California authorities and the Restatements, other courts have also indicated that foreign law determines the preclusive impact of a prior foreign judgment. For example, in *Kohn v. Am. Metal Climax, Inc.*, 458 F.2d 255 (3d Cir. 1972), *over'd in part on other grounds by Kershner v. Mazurkiewicz*, 670 F.2d 440 (3d Cir.1982), the Third Circuit looked to Zambian law to determine the preclusive effect of a prior Zambian judgment, with the partial concurrence emphasizing that this result was consistent with guidance from comment f. to § 98 of the Restatement (Second) of Conflicts of Laws, *id.* at 305-06 (Adams, J., concurring and dissenting).

Similarly, in *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270 (1970), the New York Court of Appeals indicated that courts should apply "the law of the rendering jurisdiction" to determine the preclusive impact of a prior foreign judgment, *id.* at 275. *See also Kim v. Co-op. Centrale Raiffeisen-Boerenleebank B.A.*, 364 F.Supp.2d 346, 349 (S.D.N.Y. 2005) ("In this diversity action this Court must apply New York choice of law rules. In determining the preclusive effect of the Singapore dismissal, a New York court would look to the law of Singapore and would give that order the same preclusive effect that it would enjoy in Singapore."); *Kirch v. Liberty Media Corp.*, No. 04-CV-667-NRB, 2006 U.S. Dist. LEXIS 82175, at *31 (S.D.N.Y. Nov. 8, 2006) ("If this case were to proceed in this Court, we would be faced with the complicated task of determining the preclusive effect of the first German action. As jurisdiction here is based on diversity, we would be required to apply New York law regarding recognition of a foreign nation's judgment, which in turn would require a determination of the preclusive effect that the foreign jurisdiction would give its own judgment.").

More recently, Judge Posner indicated that courts should apply foreign preclusion law to prior foreign decisions unless doing so would offend strong domestic policy. *United States v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011) ("When the foreign judiciary is respected, as in the case of the United Kingdom's judiciary, and the rule on which the finding sought to be given preclusive effect is based doesn't offend a strong U.S. policy, the federal courts should defer to that finding. This suggests that the district court should have applied the United Kingdom's concept of collateral estoppel in deciding what weight to give the ruling of the English magistrate, provided that concept does not offend U.S. policy."); *see also, e.g., Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 12-CV-1851-RMD, 2014 U.S. Dist. LEXIS 36519, at *33-*34 (N.D. Ill. Mar. 20, 2014) ("Because this is increasingly one world . . . there is no persuasive reason that the usual and by no means stringent rules for limiting duplicative litigation

9

should stop at international boundaries. Although there is no consensus as to which preclusion rules apply in cases involving foreign sovereign states . . . several cases suggest, sensibly . . . that the U.S. court should generally give preclusive effect to the foreign court's finding[.]") (citations and quotations omitted, punctuation altered).[15]

These decisions are consistent with *Estate of Cleland*, *Kough*, and *Beroiz*, as well as § 1719(a) and the Restatements. In sum, then, while this Court recognizes that alternative approaches are possible, *e.g.*, 18B Wright & Miller, Fed. Prac. & Proc. Juris. (2nd ed. 2002), at 488-09 & nn. 12-13, there is ample authority for predicting that California courts would apply foreign law to determine the preclusive effect of a prior foreign judgment.[16]

### 3. Application to This Case

The previous discussion is particularly apt in the context of this case. As stated above, this Court believes that California courts would ordinarily apply foreign law to determine the preclusive effect of a prior foreign judgment. But even accepting that California courts might adopt a case-by-case approach, applying French preclusion law here is appropriate.

This action finds its origins in the acquisition of a French toy company allegedly propped up by a consortium of European lenders. As this Court related in its Order staying this case on *forum non conveniens* grounds, the parties had litigated several Smoby-related issues in France before MGA filed suit. *See* Docket No. 107 at 2-3 ("[A] number of proceedings between these parties and others related to MGA's acquisition of Smoby are (or were) pending in France [when MGA initiated this action]"). Indeed, so much about this case relates to France:

> MGA purchased a French company through approval of its purchase offer by the French employees of that company and the French courts, as the company was in pre-bankruptcy proceedings in France. All of the Defendants are European banks.

---

[15] Though not discussed by either party, the Court notes that many comity decisions support this approach as well.

[16] There are also sound policy reasons for this prediction. As the Eleventh Circuit wrote in *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512 (11th Cir.1994):

> While courts regularly permit parallel proceedings in an American court and a foreign court, once a judgment on the merits is reached in one of the cases . . . failure to defer to the judgment would have serious implications for the concerns of international comity. For example, [it raises] the prospect of "dueling courts," conflicting judgments, and attempts to enforce conflicting judgments raise major concerns of international comity.

*Id.* at 1521 (citations and quotations omitted). The prospect of dueling courts and conflicting judgments also raises forum-shopping concerns, as the failure to apply foreign preclusion rules creates an opportunity to re-litigate matters again and again in different countries, until, by chance, the preclusion rules in two jurisdictions are exactly coordinate. It goes without saying that applying foreign preclusion law also promotes finality and conserves judicial resources by ensuring that matters are decided to the greatest extent possible in a single action. *See generally Vella v. Hudgins*, 20 Cal.3d 251, 257 (1977) ("The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination") (quotations omitted); *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931) ("Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties"). For example, in this case, although the parties have already litigated factually-related claims to judgment in France, they would essentially be starting over from scratch in this Court.

> The loans which Plaintiff avers are at the center of the Defendants' control over Smoby and Breuil and provided Defendants with knowledge of the fraud were admittedly negotiated and entered into in France, and one of those loan agreements asserts that it is to be interpreted according to French law in French courts (as discussed in more detail *infra*). Financial documents related to the company and the defendant banks and at the center of the fraud charges are primarily in France. [And] [r]elated (if not parallel proceedings) [we]re currently pending in France between the same parties [at the time MGA filed suit].

*Id.* at 7. For these reasons, among others, this Court stayed the matter on *forum non conveniens* grounds – a holding that incorporated the conclusions that (1) France was an adequate alternative forum, and (2) that proceeding in this Court would entail "such oppression and vexation [to the] defendant as to be out of proportion to plaintiff's convenience." *Boston Telecomms. Group, Inc. v. Wood*, 588 F3d 1201, 1212 (9th Cir. 2009).

To be clear, the Court could have simply dismissed the matter. *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir. 1995) (affirming *forum-non-conveniens* dismissal). It stayed the matter instead to ensure that MGA had *some* opportunity to raise its Smoby-related claims. But now that MGA has had that opportunity in France, it makes little sense to let MGA undermine the French judgment by applying non-French preclusion rules. Indeed, As the Ninth Circuit has explained:

> In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

*Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1450 (9th Cir. 1990).

Though stated in the *forum-non-conveniens* context, the logic of this statement has equal force here. When MGA inserted itself into France, it exposed itself to the possibility that it would have its disputes determined by the French courts. Particularly given this Court's *forum-non-conveniens* ruling, it makes little sense to allow MGA to undermine the French court's decision by applying California preclusion law. Indeed, as Judge Cardozo wrote many years ago: "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." *Loucks v. Standard Oil Co. of New York*, 224 N.Y. 99, 111 (1918).

### 4. Conclusion

In sum then, the Court concludes that California courts would apply French preclusion law to determine the preclusive effect of the French judgment. Based on the present record, which the parties have had every chance to develop, French law counsels in favor of preclusion. *See* Docket No. 195 at 7. Therefore, this action would be DISMISSED WITHOUT PREJUDICE on *forum-non-conveniens* grounds, and DISMISSED WITH PREJUDICE on preclusion grounds.